1  Harvey L. Leiderman (SBN 55838)
   HLeiderman@ReedSmith.com
2  David S. Reidy (SBN 225904)
   DReidy@ReedSmith.com
3  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
4  San Francisco, CA  94111-3922

5  **Mailing Address:**
   P.O. Box 7936
6  San Francisco, CA  94120-7936

7  Telephone:     (415) 543-8700
   Facsimile:     (415) 391-8269
8
   Attorneys for Defendant
9  AMIT CHOUDHURY

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13  ELIZABETH GREWAL, an individual,        Case No.: C-07-4218 CRB

14            Plaintiff,                     **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF
15       vs.                                 DEFENDANT'S MOTION FOR SUMMARY
                                             JUDGMENT ON PLAINTIFF'S FRAUD
16  AMIT CHOUDHURY, an individual,           AND PROMISSORY NOTE CLAIMS**

17            Defendant.

18                                           Date:        May 9, 2008
    ─────────────────────────────────       Time:        10:00 a.m.
19  AMIT CHOUDHURY, an individual,           Place:       Courtroom 8, 19th Floor

20            Counter-Claimant,              Compl. Filed:  July 19, 2007
                                             Trial Date:    August 18, 2008
21       vs.
                                             *Honorable Charles R. Breyer*
22  ELIZABETH GREWAL, an individual,

23            Counter-Defendant.

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

─────────────────────────────────────────────────────────────
MEMORANDUM OF POINTS AND AUTHORITIES                Case No. C-07-4218 CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**Table of Contents**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF MOTION | 1 |
| III. | PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT | 2 |
| IV. | STATEMENT OF UNDISPUTED FACTS | 3 |
| V. | APPLICABLE LEGAL STANDARD | 5 |
| VI. | ARGUMENT | 6 |
|  | A.    Plaintiff Possesses No Evidence to Show Fraudulent Intent by Defendant | 6 |
|  | B.    Plaintiff's Claim to Enforce the Promissory Note Fails As a Matter of Law | 10 |
| VII. | CONCLUSION | 13 |

i

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 91 L. Ed. 2d 202 (1986)..........................................................6

4

*Annod Corp. v. Hamilton & Samuels,*
100 Cal. App. 4th 1286 (2002)...................................................................7

5

*Balint v. Carson City,*
180 F.3d 1047 (9th Cir.1999)....................................................................6

6

7

*Blue Ridge Insurance Co. v. Stanewich,*
142 F.3d 1145 (9th Cir. 1998)..................................................................6

8

*California v. Green,*
399 U.S. 149 (1970)............................................................................12

9

10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).....................................................................passim

11

*Conrad v. Bank of America,*
45  Cal. App. 4th 133 (1996)..............................................................8, 9

12

13

*Donovan v. BRL Corporation,*
26 Cal. 4th 261 (2001) ...............................................................10, 11, 12

14

*Dore v. Arnold Worldwide, Inc.,*
39 Cal. 4th 384 (2006) .......................................................................6

15

16

*Elsinore Union v. Kastorff,*
54 Cal. 2d 380 (1960) .......................................................................10

17

*Girard v. Ball,*
125 Cal. App. 3d 772 (1981) ................................................................6

18

19

*Jackson v. Bank of Haw.,*
902 F.2d 1385 (9th Cir. 1990)................................................................6

20

*Justheim Petroleum Company v. Hammond,*
227 F.2d 629 (10th Cir. 1955)............................................................8, 9

21

22

*Las Palmas Associates v. Las Palmas Center Associates,*
235 Cal. App. 3d 1220 (1991)................................................................8

23

*Lockwood v. Wolf Corp.,*
629 F.2d 603 (9th Cir. 1980)................................................................12

24

25

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir.2001).....................................................................9

26

*People v. Ashley,*
42 Cal. 2d 246 (1954) ......................................................................8

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

i

*T.W. Electric Serv., Inc. v. Pacific Electric Contractors Association*,
     809 F.2d 626 (9th Cir.1987) ......................................................................................... 6

*Tenzer v. Superscope*,
     39 Cal. 3d 18 (1985) ................................................................................................ 8, 9

*United Steel Workers of America v. Phelps Dodge Corp.*,
     865 F.2d 1539 (9th Cir), cert denied, 493 U.S. 809 (1989) ...................................... 6

*Villiarimo v. Aloha Island Air, Inc.*,
     281 F.3d 1054 (9th Cir. 2002) ................................................................................... 6

*Walker v. Armco Steel Corp.*,
     446 U.S. 740 (1980) ................................................................................................ 10

*Zuckerman v. Pacific Savings Bank*,
     187 Cal. App. 3d 1394 (1986) ................................................................................. 11

*Zurich General Acc. V. Industrial Acc.*,
     132 Cal. App. 101 (1933) ........................................................................................ 10

## STATUTES

Civ. Code §1550 ........................................................................................................... 10

Civ. Code §1565 ........................................................................................................... 10

Civ. Code §1567(5) ..............................................................................................10, 11, 12

Civ. Code §1568 ....................................................................................................... 10, 12

Civ. Code §1577 ....................................................................................................... 10, 12

## RULES

Fed. R. Civ. Proc. 56(b) .................................................................................................. 5

Fed. R. Civ. Proc. 56(c) ............................................................................................ 5, 9, 12

Fed. R. Civ. Proc. 56(e) .................................................................................................. 6

Fed. R. Evid. 201(b)(2) ................................................................................................... 12

Fed. R. Evid. 801(d)(12) ................................................................................................. 12

## OTHER AUTHORITIES

Witkin, 1 Contracts §116 (10th Ed. 2005) ..................................................................... 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSSFO-12510251.3-360757-60002

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    This is a case of "he said, she said" over some money that changed hands between Plaintiff

4    and Defendant over six years ago, based on an alleged oral promise.  Was it a "loan," as Plaintiff

5    now claims, or an "investment," as Defendant now recalls?  However characterized, this much is

6    known, and undisputed – when she gave Defendant Choudhury $880,000 in December of 2000,

7    Plaintiff Grewal expected to get the money back five years later, and Defendant expected to be able

8    to give it back.

9    Defendant has been unable to return Plaintiff's money, because it was invested and lost.  So

10    Plaintiff filed this case.  Instead of suing to just get the $880,000 back, however, Plaintiff larded up

11    her Complaint with charges of promissory fraud and breach of a written note for $1,000,000.  In

12    Defendant's initial Motion to Dismiss, we pointed out that Plaintiff had pled no prima facie facts to

13    evidence promissory fraud.  The Court agreed, and Plaintiff re-pled the barest of essentials as to the

14    circumstances surrounding alleged promises made and not kept.  What Plaintiff failed then to plead,

15    and since has failed to discover, was any evidence of a fraudulent intent.  Notwithstanding six

16    months of discovery, including the Plaintiff's and Defendant's lengthy depositions, Plaintiff

17    continues to fail to adduce any evidence that Defendant did not intend to return the money she

18    transferred to him, with earnings thereon if there were any.

19    This case is set for trial on August 18, 2008.  There are no triable issues of fact as to the first

20    and second "causes of action" of Plaintiff's Complaint – those trumped up claims for promissory

21    fraud and breach of a $1,000,000 written contract.  These two claims should be disposed at this time

22    on summary judgment and the case should proceed to trial only on the core allegations of an oral

23    promise not kept, which has been and continues to be the only viable dispute in this case.

24

## II.    SUMMARY OF MOTION

25    Plaintiff Grewal alleges that she lent Defendant Choudhury $880,000 in December, 2000,

26    and he has not repaid it.  She also alleges that Defendant later signed a promissory note for

27    $1,000,000 and now owes *that* amount, instead of the $880,000.  Plaintiff also alleges that Defendant

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

–1–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  promised to repay her either $880,000 or $1,000,000, but in fact never *intended* to repay anything,

2  thereby committing promissory fraud.

3      As a result, what should have been a simple case involving an alleged oral promise to repay

4  $880,000, has been inflated to include Plaintiff's "First Cause of Action" for Fraud and her "Second

5  Cause of Action" to enforce a promissory note in the amount of $1,000,000. Both of these

6  extraneous claims fail for lack of evidence. The only evidence adduced during discovery is that

7  Defendant has not paid any amount to Plaintiff – which courts in California and beyond have

8  uniformly held is insufficient to turn a contract claim into one for fraud. As a result, Plaintiff cannot

9  establish fraudulent intent, a necessary element of her fraud claim.

10      Similarly, Plaintiff's claim to enforce the promissory note fails for lack of an essential

11  element – mutual consent. Plaintiff admitted under oath that the principal amount of what she

12  claims to have lent Defendant was $880,000, not $1,000,000. She further admitted that the Note did

13  not reflect her understanding of the parties' agreement when she signed it. Moreover, Defendant

14  drafted the Note before he received any money from Plaintiff, at a time when he believed the amount

15  being transferred to him was $1,000,000. Neither party believes the Note reflects any actual

16  transaction they ever contemplated. The Note therefore lacks mutual consent as to the amount it

17  recites and does not constitute an enforceable contract.

18      Defendant is entitled to summary judgment on Plaintiff's Fraud and Promissory Note claims.

19  **III.    PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT**

20      The First Amended Complaint ("FAC") states that Defendant used his relationship with

21  Plaintiff "to convince plaintiff to lend him a large sum of money." (FAC ¶4.) Plaintiff alleges that

22  on September 1, 2000, Defendant promised that if Plaintiff loaned him money, he would repay the

23  money with interest that would "come back to her tax free." (*Id*. at ¶10.) The FAC also states that

24  Defendant guaranteed Plaintiff 4% interest, but that it "could be more." (*Id*.) Plaintiff alleges that

25  "when Defendant spoke to [her] on September 1, 2000, he had no intention of repaying money

26  plaintiff would lend him; no intention of paying plaintiff interest on the money; and no intention of

27  setting up an account or other loan vehicle that would allow plaintiff to earn interest 'tax free'."

28  (FAC ¶12.)

–2–

1   The FAC states that on December 13, 2000, Plaintiff "caused $880,000 to be wired from her

2   brokerage account to a bank account in the name of, or controlled by, [Defendant]." (*Id.* at ¶5.)

3   Plaintiff alleges that, on or about January 2, 2001, Defendant executed a Term Promissory Note

4   ("Note"), which recited that Defendant would repay Plaintiff the sum of $1,000,000 (not $880,000),

5   together with a fixed 4% rate of interest per annum, at maturity in five years. (*Id.* at ¶6, Ex. A.)

6       Plaintiff alleges that Defendant executed the Note in furtherance of a scheme to defraud her,

7   and that at the time he executed the Note, "he had no intention of paying plaintiff the amount stated

8   in the promissory note." (*Id.* at ¶13.)

9       Based on these allegations, Plaintiff asserts claims labeled "First Cause of Action, Fraud and

10  Deceit:  Promise Without Intent to Perform," and "Second Cause of Action, Promissory Note," in

11  addition to common counts.

12  **IV.    STATEMENT OF UNDISPUTED FACTS**

13      The following facts are not disputed, or disputable, by the parties:

14      1.     Before and after September, 2000, Plaintiff Grewal and Defendant Choudhury were

15  business associates and friends.  (Declaration of Amit Choudhury ("Choudhury Decl.") at ¶2; FAC

16  at ¶4.)  In or around September, 2000, Plaintiff informed Defendant that she had inherited a

17  substantial sum of money from her mother who had passed away.  (Choudhury Decl. at ¶2.)  Plaintiff

18  and Defendant discussed the possibility that Defendant might assist Plaintiff in investing part of her

19  money.  (*Id.*)  Defendant believed that Plaintiff intended to transfer $1,000,000 to him to invest, and

20  Defendant agreed to accept the funds.  (*Id.* at ¶3.)

21      2.     Defendant and Plaintiff did not agree to a fixed rate of return on the transferred funds,

22  but discussed the possibility that Plaintiff might receive "4 percent, possibly more." (*Id.*; Deposition

23  of Elizabeth Grewal ("Grewal Depo.") at 192:10-11).[1]  Plaintiff understood that the return, if any,

24  would be determined by the results of Defendant's "legal off shore investing."  (*Id.* at 199:11-14.)

25  In any event, Defendant always intended to return whatever funds were transferred to him.

26  (Choudhury Decl. ¶¶ 3, 8.)

27  ――――――――――――――
    [1]     Relevant portions of Plaintiff Elizabeth Grewal's deposition transcript are attached as Exhibit A to the
28  Declaration of David S. Reidy, filed concurrently herewith.

DOCSSFO-12510251.3-360757-60002

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    3.    Defendant prepared the Note before December 13, 2000. (Choudhury Decl. at ¶4;

2   Ex. A.) The Note recites that Defendant would repay Plaintiff the sum of $1,000,000, plus annual

3   interest at a rate of 4%, "for value received," upon maturity of the Note in five years. (*Id*.)

4   Defendant believed that the "value" referred to in the Note was the full sum of $1,000,000, which he

5   had not received when he prepared the Note. (*Id*.)

6    4.    On December 13, 2000, Plaintiff transferred to Defendant the sum of $880,000,

7   instead of the $1,000,000 as agreed. (Choudhury Decl. at ¶6; Grewal Depo. at 202:2-6.) At the time

8   he received the $880,000, Defendant expected to receive an additional $120,000 to make up the sum

9   of $1,000,000, as had been discussed. (Choudhury Decl. at ¶6.) Plaintiff admits that the amount she

10  discussed transferring to Defendant in September 2000 was $1,000,000. (Grewal Depo. at 186:6-19;

11  189:8-13.)

12   5.    When she wired only $880,000 to Defendant, Plaintiff knew and had not forgotten

13  that Defendant had asked for $1,000,000. (Grewal Depo. at 202:18-203:13.) Plaintiff's

14  understanding of Defendant's obligation to her when she transferred the money was that she

15  expected to get the principal back plus a "minimum" of 4 percent interest in five years. (*Id*. at

16  225:21-226:23.) At the time the transfer occurred, Plaintiff understood that the "principal" was

17  $880,000. (Grewal Depo. at 226:2-7.)

18   6.    The Note was dated January 2, 2001, but was not signed by either Defendant or

19  Plaintiff on that date; in fact, Defendant signed the Note in late December 2000, and Plaintiff signed

20  the Note after January 2, 2001. (Choudhury Decl. at ¶¶5, 7.) Defendant dated the Note January 2,

21  2001, for convenience, because that was the first business day of the new year. (*Id*. ¶7.)

22   7.    Plaintiff received and signed the Note in mid-January, 2001. (Grewal Depo. at

23  223:10-18; 224:10-14.) At the time she transferred the $880,000 to Defendant, therefore, Plaintiff

24  did not have the Note. (*Id*. at 224:15-18.) When she signed the Note, Plaintiff questioned Defendant

25  as to why it recited $1,000,000, instead of $880,000, and was told that the Note had been prepared

26  before Defendant received the $880,000. (*Id*. at 229:9-230:17; 240:2-11.)

27   8.    Plaintiff always believed she would receive back the $880,000 she had transferred to

28  Defendant – not $1,000,000 – plus some amount of interest thereon. (*Id*. at 226:2-7.)

–4–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

9.      In a Notice of Entry of Judgment dissolving Plaintiff's marriage to Hardev Grewal, filed with the San Mateo County Superior Court in Action No. 078582, Plaintiff listed the Note as an asset to be assigned to her as her separate property.  (*See* Declaration of David S. Reidy ("Reidy Decl."), ¶3, Ex. B, at 20008.)  She described the Note in papers she filed with the Court as follows: "Note due from Amit Choudhury, *with a balance of $880,000* due and payable in 2006."  (*Id.* [emphasis added].)  Plaintiff signed the dissolution notice on November 11, 2005.  (*Id.*)

10.      In personal notes prepared in the summer of 2007, before filing this lawsuit, Plaintiff "tracked" what she believed to be the terms of the Promissory Note.  Plaintiff expressly recorded the principal of the Note as $880,000.  (Grewal Depo. at 249:21-250:15; 251:16-252:13; Depo. Ex. 55.)

11.      At the time he signed the Note, Defendant intended to carry out his understanding with Plaintiff to return the principal amount she had transferred to him, plus any additional amounts earned at the end of five years, but he never received the full $1,000,000 that they had discussed. (Choudhury Decl. at ¶¶8-9.)

12.      At all times since December 2000, Defendant fully intended to repay Plaintiff any amount she transferred to him.  (*Id.* at ¶¶3, 10.)  Defendant has not repaid Plaintiff the $880,000, only because he has been unable to raise the money, despite his best efforts.  (*Id.* at ¶10.)  Defendant has continually informed Plaintiff of his efforts.  (*Id.*)

## V.    APPLICABLE LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows a defendant to move for summary judgment as to "all or any part" of the claims asserted against it.  Fed. R. Civ. Proc. 56(b).  Summary judgment must be entered where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Id.* subd. (c).

Thus, a party moving for summary judgment must establish that the opposing party does not possess evidence sufficient to raise an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Judgment is appropriate where, as here, the non-moving party is unable to establish an element necessary to a claim or defense, despite adequate opportunity for discovery, and will bear the burden of proof on that element at trial.  *Id.* at 322.  Once the moving party makes this showing, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a

1    "genuine issue for trial." *Id*. at 324, citing FRCP 56(e).  The court must "not weigh the evidence or

2    determine the truth of the matter, but only determines whether there is a genuine issue for trial."

3    *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir.1999) (citation omitted).

4         The substantive law governing a claim or defense determines whether a fact is material. *T.W.*

5    *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987).  As to material

6    facts, an issue of fact is genuinely triable "if the evidence is such that a reasonable jury could return

7    a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

8    Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202 (1986)).

9    Although the court must draw all reasonable inferences in favor of the nonmoving party, *id.*, a mere

10   disagreement about a material issue of fact, however, does not preclude summary judgment.

11   *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims

12   are factually implausible, that party must come forward with more persuasive evidence than

13   otherwise would be required.  *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)

14   (citation omitted).  A "scintilla of evidence," or evidence that is "merely colorable" or "not

15   significantly probative," is not sufficient to present a genuine issue of material fact.  *United Steel*

16   *Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir), cert denied, 493 U.S. 809

17   (1989).

18   **VI.    ARGUMENT**

19        **A.    Plaintiff Possesses No Evidence to Show Fraudulent Intent by Defendant**

20        A claim for fraud requires the plaintiff to establish each of the following elements: (1)

21   misrepresentation; (2) scienter (knowledge of falsity); (3) intent to induce reliance; (4) justifiable

22   reliance; and (5) damages.  *See Girard v. Ball*, 125 Cal. App. 3d 772, 783 (1981).[2]  When a plaintiff

23   fails to offer proof of any of these essential elements, summary judgment is appropriate.  *See Dore v.*

24   *Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006) (granting summary judgment on claim of fraud

25   where plaintiff failed to introduce evidence of justifiable reliance).

---

26

27   [2]     Because this Court has subject matter jurisdiction on the basis of diversity, California substantive law
applies to Plaintiff's claims in this case.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) (applying the

28   *Eire* doctrine.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    In support of her "First Cause of Action" for promissory fraud, Plaintiff alleges that on

2    September 1, 2000, Defendant promised that if Plaintiff loaned him money, he would repay her with

3    interest that would come back to her tax free.  (FAC at ¶10.)  Plaintiff also alleges that Defendant

4    "guaranteed" an interest rate (FAC at ¶10), but this allegation is contradicted by Plaintiff's own

5    admission that, even in her mind, the interest rate was not fixed, but could be "4 percent, possibly

6    more."  (Grewal Depo. at 192:10-13.)  In addition, Plaintiff's attempt to rely on "promises" allegedly

7    made in the Note (FAC at ¶13), misses the point:  the Note does not, and did not, reflect any

8    agreement between the parties, as will be shown in Section VI.B, below.  As such, the Note does not

9    constitute an actionable promise by Defendant and his intent with regard to the Note is therefore

10   irrelevant.  In essence, Plaintiff simply alleges that Defendant promised to pay her back whatever

11   money she claims to have lent.

12       Plaintiff alleges that "when Defendant spoke to [her] on September 1, 2000, he had no

13   intention of repaying money plaintiff would lend him; no intention of paying plaintiff interest on the

14   money; and no intention of setting up an account or other loan vehicle that would allow plaintiff to

15   earn interest 'tax free'."  (FAC ¶12.)  The gravamen of Plaintiff's "intent" allegation is that

16   Defendant never intended to repay her *anything*.  But Plaintiff has produced no evidence whatsoever

17   to support her allegation of fraudulent intent; in fact, the undisputed evidence shows that Defendant

18   *did* intend to repay Plaintiff.

19       At all times from December, 2000, to the present day, Defendant fully intended to repay

20   Plaintiff any amount she transferred to him.  (*Id*. at ¶¶3, 10.)  Defendant has not repaid Plaintiff the

21   $880,000, but this is only because he has been unable to raise the money despite his best efforts to

22   do so.  (*Id*. at ¶10.)  Defendant has informed Plaintiff of these efforts.  (*Id*.)

23       **Plaintiff's fraud claim fails because Plaintiff lacks any evidence to support the required**

24   **element of fraudulent intent.**  Without proof of fraudulent intent, summary judgment is appropriate

25   as to a fraud claim.  *Annod Corp. v. Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1294-1299

26   (2002) (upholding summary judgment of fraud claim on the grounds that evidence of fraudulent

27   intent was countered by evidence negating an inference of fraudulent intent, and that plaintiff

28   therefore failed to show a triable issue of material fact as to fraudulent intent).

–7–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1      It is well-established that to prove the element of fraudulent intent with regard to a promise,

2  "*something more than nonperformance is required* to prove the defendant's intent not to perform his

3  promise." *People v. Ashley*, 42 Cal. 2d 246, 263 (1954) (emphasis added).  Fraudulent intent must

4  be established as of the time the promise was made.  *See Justheim Petroleum Company v.*

5  *Hammond*, 227 F.2d 629, 637 (10th Cir. 1955).

6      In *Tenzer v. Superscope*, 39 Cal. 3d 18 (1985), the California Supreme Court expressly

7  repudiated the notion that "subsequent failure to perform as promised warrants the inference that

8  defendant did not intend to perform when she made the promise," holding that "this is not, and has

9  never been the law." *Id*. at 30-31.  The *Tenzer* Court recognized that although fraudulent intent must

10  often be established by circumstantial evidence, nonetheless "*if plaintiff adduces no further evidence*

11  *of fraudulent intent than proof of nonperformance* of an oral promise, *he will never reach a jury*."

12  *Id*. (emphasis added).  Indeed, this rule is broadly recognized.  In *Justheim Petroleum*, *supra*, for

13  instance, the only evidence of fraudulent intent in the formation of a drilling contract was the

14  defendants' subsequent failure to perform that contract.  *Justheim Petroleum*, 227 F.2d at 637.

15  There, the Tenth Circuit Court of Appeals remanded the case with instructions to the District Court

16  to enter judgment in favor of the defendants on the fraud claim, holding that the failure to perform

17  was "not a circumstance from which an inference may be drawn that the defendants did not intend to

18  perform at the time they executed the contract." *Id*. at 637-638.

19      Here, Plaintiff's only "evidence" of fraudulent intent is Defendant's nonperformance; in

20  other words, the very kind of evidence that courts have found to be insufficient as a matter of law.

21  As such, Plaintiff's fraud claim fails for lack of evidence on the necessary element of intent, and

22  Defendant is therefore entitled to summary judgment on that claim.  *Celotex*, 477 U.S. at 322-323.

23      It is also worth noting that Plaintiff's effort to turn a contract claim into a fraud claim, by

24  simply alleging that Defendant never intended to perform his agreement, is a disfavored practice.

25  The California Court of Appeal has noted "the danger of grafting tort liability on what ordinarily

26  should be a breach of contract action." *Las Palmas Associates v. Las Palmas Center Associates*, 235

27  Cal. App. 3d 1220, 1238 (1991).  In fact, this policy underlies the very requirement that fraudulent

28  intent be proven beyond mere nonperformance of a promise. *See Conrad v. Bank of America*, 45

–8–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Cal. App. 4th 133, 156-157 (1996) ("fraud cannot be permitted to serve simply as an alternative

2  cause of action whenever an enforceable contract is not formed") (citing *Tenzer,* 39 Cal. 3d at 30-31

3  [proof of nonperformance alone not sufficient to support promissory fraud claim]).

4        From the outset, Defendant has challenged Plaintiff's attempt to turn this contract dispute

5  into a fraud case.  Plaintiff initially tried to assert claims sounding in fraud not only against

6  Defendant Choudhury, but also against a corporate defendant, Amisil Holdings.  On October 25,

7  2007, this Court granted defendants' motion to dismiss all of the fraud claims on the basis that the

8  complaint failed to specify the "times, dates, places, benefits received, and other details of the

9  alleged fraudulent activity."  Doc. 16 (citing *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th

10  Cir.2001)).  Plaintiff was granted leave to amend, but dropped Amisil Holdings from the case.  Her

11  allegations against Defendant Choudhury, stated above, averred boilerplate fraudulent intent without

12  any supporting facts.  Six months into far ranging discovery, Plaintiff still has failed to come up with

13  any evidence to support that allegation.[3]

14        Indeed, Plaintiff's *only* evidence of anything is the fact that Defendant has not returned the

15  $880,000 she sent him based on an alleged oral understanding.  Defendant's failure to pay is based

16  on his inability to pay, as set forth above, not on any fraudulent intent.  His failure to pay is

17  insufficient as a matter of law to support a finding of fraudulent intent.  *See Justheim Petroleum*, 227

18  F.2d at 637-638.

19        Plaintiff alleges that she gave Defendant $880,000 and did not get it back when she alleges

20  she was entitled to reimbursement.  Although Defendant contests Plaintiff's characterization of

21  events, and therefore triable issues of fact may exist on Plaintiff's common counts related to the

22  $880,000, no such triable issue of fact exists as to the element of fraudulent intent, and Defendant is

23  therefore entitled to summary judgment on Plaintiff's "First Cause of Action" for Fraud.  Fed. R.

24  Civ. Proc. 56(c); *Celotex*, 477 U.S. at 322-323.

25

26

27  [3]    Over the course of this action, Plaintiff has propounded and Defendant has responded to extensive discovery including four sets of Requests for Production of Documents and six sets of Requests for Admissions ("RFAs"). Defendant has responded to 34 document demands, 40 RFAs and 25 Interrogatories.  In addition, both parties'

28  depositions have been taken and, in each case, the depositions lasted at least 7 hours. *See* Reidy Decl., ¶4.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Plaintiff's Claim to Enforce the Promissory Note Fails As a Matter of Law**

Plaintiff's "Second Cause of Action," to enforce the Note, fails as a matter of law because the Note itself lacks mutual consent, an element essential to the formation of any contract.

Fundamentally, all contracts require mutual consent, or a "meeting of the minds" as to the object of the contract.  Civ. Code §§ 1550, 1565; *Zuckerman v. Pacific Savings Bank*, 187 Cal. App. 3d 1394, 1405 (1986).  A lack of mutual consent provides a basis for summary adjudication of a claim upon the contract.  *See e.g., id.*; *Donovan v. BRL Corporation*, 26 Cal. 4th 261, 270-271 (2001).  Mutual consent is gathered from the reasonable meaning of the express words and acts of the parties, and not from unexpressed intentions or understandings; this has been termed the *objective* rather than the subjective test.  Witkin, 1 Contracts §116 (10th Ed. 2005); *Zurich General Acc. V. Industrial Acc.*, 132 Cal. App. 101, 104 (1933).

Consent to a contract is not real or free when obtained through mistake.  *See* Civ. Code §1567(5).  Consent is deemed to have been obtained by mistake if the consent would not have been given had the mistake not existed.  *See* Civ. Code §1568; *Donovan*, 26 Cal. 4th at 278.  Mistake of fact is defined as follows:

> Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An *unconscious ignorance or forgetfulness of a fact past or present, material to the contract*; or, 2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.
>
> Civ. Code §1577 (emphasis added).

Thus, the unconscious ignorance of a fact material to the contract precludes a finding of mutual consent under the objective test, and it is well-settled that a mistake as to the price or amount at issue in a contract satisfies this requirement.  *Id.*; *see, e.g., Elsinore Union v. Kastorff*, 54 Cal. 2d 380 (1960) (contractor's bid rescinded on grounds that bid erroneously stated an inaccurate, lower price, even though bidding agency had accepted bid and contractor had verified the amount); *Zuckerman*, 187 Cal. App. 3d at 1405 (summary judgment granted to lender where lender's delinquency notice to property owner stated an incorrect amount owed by owner, and owner tendered the stated amount, which was less than owed; held: property owner could not establish that

−10−

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the delinquency notice created an accord and satisfaction allowing property owner to satisfy his

2  obligation by paying the lower amount).

3          In *Donovan*, *supra*, the California Supreme Court considered the question of whether the

4  plaintiff could establish formation of a contract where he offered to purchase a car for the exact price

5  listed by the dealership in an advertisement, but where the price listed by the dealership was in error

6  and was meant to be higher. *Donovan*, 26 Cal. 4th at 278. The Court held that the dealership's

7  ignorance of the fact that the advertisement listed the wrong price constituted a mistake of fact as to

8  a material term, thereby precluding the formation of a contract for lack of mutual consent as to that

9  term. *Id.* at 279-280; *see* Civ. Code 1567(5).

10         The Note at issue here purports to reflect a transaction whereby Plaintiff loaned $1,000,000

11  to Defendant, but Plaintiff admits that only $880,000 was transferred. (FAC, ¶11; Grewal Depo. at

12  202:2-6.) When she wired $880,000, Plaintiff knew and had not forgotten that Defendant had asked

13  for $1,000,000. (*Id.* at 202:18-203:13.) When she signed the Note, moreover, Plaintiff even

14  questioned Defendant as to why it stated $1,000,000, instead of $880,000. (*Id.* at 229:9-230:17;

15  240:2-11.) In her own handwritten notes made in the summer of 2007, Plaintiff also described the

16  principal on the Note as $880,000. (Grewal Depo. at 249:21-250:15; 251:16-252:13; Deposition Ex.

17  55.) Clearly, the Note did not evidence Plaintiff's understanding of the key term of the parties'

18  alleged agreement.

19         From Defendant's perspective, the Note also did not reflect the parties' agreement. At the

20  time he received the $880,000, Defendant expected to receive an additional $120,000 to make up the

21  sum of $1,000,000, as had been discussed. (Choudhury Decl. at ¶6.) Defendant prepared the Note

22  before he received any money, and believed that the "value" referred to in the Note was the full sum

23  of $1,000,000, which he had not yet received. (*Id.* ¶4.) Furthermore, although Note is dated January

24  2, 2001, it was signed by Defendant in late December 2000, when he still expected to receive

25  $1,000,000, and was signed by Plaintiff after January 2, 2001. (*Id.* at ¶¶5, 7; Grewal Depo. at

26  223:10-18; 224:10-14.)

27         The undisputed evidence establishes that Defendant's consent to pay $1,000,000, as reflected

28  in the Note, was premised on the understanding that Plaintiff would provide that amount. Plaintiff,

–11–

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   in turn, admits that the Note did not reflect her understanding of the transaction either.  In fact,

2   Plaintiff admitted in her filing with the San Mateo County Superior Court that the "Note" obligation

3   was $880,000 – not $1,000,000.  This statement constitutes a binding admission against interest

4   under Rule 801(d)(2), Federal Rules of Evidence, which may be used to support a motion for

5   summary judgment.  *California v. Green*, 399 U.S. 149, 164-165 (1970); *Lockwood v. Wolf Corp.*,

6   629 F.2d 603, 611 (9th Cir. 1980).  The admission is further subject to judicial notice under Rule

7   201(b)(2).

8          Defendant's consent to the Note would not have been manifested if, at the time the Note was

9   drafted, Defendant and Plaintiff had agreed that the sum would be $880,000 only.  *See* Civ. Code

10  §1568; *Donovan*, 26 Cal. 4th at 278.  The evidence therefore demonstrates that Defendant's consent

11  to the Note was based on a mistake of fact concerning the amount at issue and, therefore, was "not

12  real or free."  Civ. Code §1567(5).  As such, the Note does not reflect the parties' mutual consent to

13  create a $1,000,000 obligation and is unenforceable.  *See* Civ. Code §§1567(5); 1568; 1577.

14  Because Plaintiff cannot establish mutual consent to the Note, an essential element to her claim to

15  enforce its terms, Defendant is therefore entitled to summary judgment on Plaintiff's "Second Cause

16  of Action" to enforce the "Promissory Note."  Fed. R. Civ. Proc. 56(c); *Celotex*, 477 U.S. at 322-

17  323.  Further, since the Note is a nullity, it cannot form the basis of a tort claim for promissory fraud

18  under Plaintiff's "First Cause of Action," for the reasons stated in Section VI.A, above.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**VII.**  **CONCLUSION**

2          Defendant respectfully requests that his motion be granted and that judgment be entered

3  against Plaintiff and in Defendant's favor on Plaintiff's First and Second Causes of Action for Fraud

4  and to enforce the Note.

5

6          DATED:  April 3, 2008

                                                        REED SMITH LLP

7

8                                                       By_____/s/_____

9                                                            Harvey L. Leiderman
                                                            David S. Reidy
                                                            Attorneys for Defendant

10                                                          AMIT CHOUDHURY

11  DOCSSFO-12510251.3-360757-60002

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

−13−