# EXHIBIT A

RECEIVED JAN 1 8 2008

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| ELIZABETH GREWAL, an individual, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | )Case No. |
| vs. | )C-07-4218 CRB |
| | ) |
| AMIT CHOUDHURY, an | ) |
| individual; AMISIL HOLDINGS, | ) |
| LTD, a Cyprus corporation; and | ) |
| DOES ONE to FORTY, | ) |
| | ) |
| Defendants. | ) |
| ———————————————— | ) |
| | ) |
| AND RELATED COUNTER CLAIM | ) |
| ———————————————— | ) |

CERTIFIED COPY

VIDEOTAPED DEPOSITION OF

ELIZABETH GREWAL

Friday, January 11, 2008

REPORTED BY: SHERRI STARR, CSR# 10245 (01-404617)

**M E R R I L L   L E G A L   S O L U T I O N S**

135 Main Street, 4th Floor
San Francisco, CA 94105

415.357.4300

www.merrillcorp.com/law

ELIZABETH GREWAL        January 11, 2008

```
 1                    I N D E X
 2              INDEX OF EXAMINATIONS
 3                                              Page
 4    EXAMINATION BY MR. LEIDERMAN.................    7
 5
 6
 7          EXHIBITS MARKED FOR IDENTIFICATION
 8    Exhibit No.          Description          Page
 9
      Exhibit 44    Notice of Entry of Judgment dated   72
10                  December 6, 2005, Bates AC-012 - AC
                    -015
11
      Exhibit 12-A  Color-copied version of previously 112
12                  marked Exhibit 12, Schwab One Trust
                    Account, Bates AC-100003 - AC-100006
13
      Exhibit 45    Declaration of Elizabeth Eilert     132
14                  Grewal in Further Support of
                    Defendants' Motion to Dissolve or to
15                  Modify Preliminary Injunction, Bates
                    AC-034 - AC-038
16
      Exhibit 46    Finexa Executive Summary, no Bates 146
17                  stamps (3 pages)
18    Exhibit 47    Printout of page from               157
                    finance.yahoo.com depicting a
19                  graph of the NASDAQ performance
                    from 1998 to 2004, no Bates stamps
20                  (1 page)
21    Exhibit 48    Declaration of Elizabeth Eilert     173
                    Grewal in Support of Defendants'
22                  Motion to Dissolve or to Modify
                    Preliminary Injunction, Bates AC-021
23                  - AC-033
24    Exhibit 49    Memo dated December 13, 2000 to     206
                    Elizabeth Eilert Trust from Charles
25                  Schwab, Bates 100007
```

2

ELIZABETH GREWAL      January 11, 2008

```
 1        EXHIBITS MARKED FOR IDENTIFICATION CONTINUED
 2    Exhibit No.           Description                Page
 3
 4    Exhibit 50    Schwab One Account dated December    18
                    1 - December 31, 2000, Bates 100010
 5                  - 100009
 6    Exhibit 51    Photocopied pages from Ms.          241
                    Grewald's personal calendar, no
 7                  Bates stamp on first page; second
                    page 100038
 8
      Exhibit 52    Photocopied pages from Ms.          242
 9                  Grewald's personal calendar, no
                    Bates stamp on first page; second
10                  page 100039
11    Exhibit 53    Photocopied pages from Ms.          244
                    Grewald's personal calendar, .no
12                  Bates stamp on first page; second
                    page 100040
13
      Exhibit 54    Photocopied pages from Ms.          246
14                  Grewald's personal calendar, no
                    Bates stamp on first page; second
15                  page 100042
16    Exhibit 55    Handwritten document entitled,      249
                    "Loan to Amit Choudhury," Bates
17                  100008
18    Exhibit 56    Handwritten document entitled,      259
                    "Loan to Amit Choudhury, debtor,"
19                  Bates 100046
20                         --oOo--
21
22
23
24
25
```

                                                              3

ELIZABETH GREWAL      January 11, 2008

| 1 | EXHIBITS REFERRED TO WHICH WERE PREVIOUSLY MARKED | |
|---|---|---|
| 2 | Exhibit No. | Page |
| 3 | 12 | 64 |
| 4 | 6 | 181 |
| 5 | 20 | 285 |
| 6 | 21 | 285 |
| 7 | 23 | 285 |
| 8 | 26 | 285 |
| 9 | 40 | 285 |
| 10 | 42 | 285 |
| 11 | 43 | 285 |
| 12 | 11 | 290 |
| 13 | | |
| 14 | | |
| 15 | --oOo-- | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

4

```
 1                        --oOo--
 2            Deposition of ELIZABETH GREWAL, taken by
 3    the Defendants at the law office of Reed Smith LLP,
 4    Two Embarcadero Center, Suite 2000, San Francisco,
 5    California, commencing at 10:10 a.m., on Friday,
 6    January 11, 2008, before SHERRI STARR, RPR, CRR, CSR
 7    10245, pursuant to Notice.
 8                        --oOo--
 9
10                 A P P E A R A N C E S
11
12    FOR THE PLAINTIFF:
13            KASTNER BANCHERO LLP
              20 California Street, 7th Floor
14            San Francisco, CA 94111
              (415)398-7000
15            By:  E. JEFFREY BANCHERO, Attorney at Law
16
17    FOR THE DEFENDANTS:
18            REED SMITH LLP
              Two Embarcadero Center, Suite 2000
19            San Francisco, CA 94111
              (415)543-8700
20            By:  HARVEY L. LEIDERMAN, Attorney at Law
21
      VIDEOGRAPHER:
22            Robert Bazydlo
              Robb Mueller
23
24    ALSO PRESENT:
              AMIT CHOUDHURY
25
```

Merrill Legal Solutions
(800) 869-9132

ELIZABETH GREWAL    January 11, 2008

1    SAN FRANCISCO, CALIFORNIA; FRIDAY, JANUARY 11, 2008

2                    10:10 A.M.

3                    --oOo--

4              ELIZABETH GREWAL

5              _____

6  . called as a witness, who, having been first duly

7    sworn, was examined and testified as follows:

8                    --oOo--

9              THE VIDEOGRAPHER:  Here begins Volume 1,

10:10:44    10    Videotape Number 1 in the deposition of Elizabeth

10:10:50    11    Grewal in the matter of Grewal versus Choudhury,

10:10:54    12    Case Number C074218.  Today's date is January 11th,

10:11:00    13    2008.  The time on the video monitor is 10:10.  The

10:11:05    14    video operator today is Bob Bazydlo and Robb Mueller

10:11:10    15    employed by Merrill Legal Solutions, San Francisco,

10:11:11    16    California.  This deposition is taking place at Reed

10:11:15    17    Smith, San Francisco.

10:11:16    18              Counsel, please identify yourselves and

10:11:18    19    state whom you represent.

10:11:20    20              MR. LEIDERMAN:  Please.

10:11:21    21              MR. BANCHERO:  Thank you.  Jeff Banchero

10:11:23    22    from Kastner Banchero LLP.  I represent the

10:11:27    23    plaintiff, Elizabeth Grewal.

10:11:29    24              MR. LEIDERMAN:  Good morning.  Harvey

10:11:31    25    Leiderman from Reed Smith LLP for the defendant and

6

| | | |
|---|---|---|
| 10:11:34 | 1 | counterclaimant, Amit Choudhury. |
| 10:11:39 | 2 | THE VIDEOGRAPHER:  Would all others please |
| 10:11:40 | 3 | state your name for the record. |
| 10:11:42 | 4 | MR. CHOUDHURY:  Amit Choudhury. |
| 10:11:45 | 5 | THE WITNESS:  Elizabeth Grewal. |
| 10:11:47 | 6 | THE VIDEOGRAPHER:  Would the reporter |
| 10:11:47 | 7 | please swear in the witness. |
| 10:11:47 | 8 | (Whereupon, the witness was duly sworn.) |
| 10:11:56 | 9 | --oOo-- |
| 10:11:56 | 10 | EXAMINATION BY MR. LEIDERMAN |
| 10:11:57 | 11 | MR. LEIDERMAN:  Q.  Good morning, |
| 10:11:58 | 12 | Ms. Grewal.  By the way, would you be kind enough to |
| 10:12:02 | 13 | tell me exactly how you prefer your name to be |
| 10:12:04 | 14 | pronounced, your last name. |
| 10:12:07 | 15 | A.   Elizabeth Grewal, it sounds like a V. |
| 10:12:13 | 16 | Q.   Those of us with names that aren't Smith, |
| 10:12:15 | 17 | or something like that, get sensitive to it, and I |
| 10:12:18 | 18 | want to make sure I'm pronouncing it properly.  I'll |
| 10:12:22 | 19 | try to use the correct pronunciation. |
| 10:12:25 | 20 | You were present during Mr. Choudhury's |
| 10:12:28 | 21 | deposition yesterday; were you not? |
| 10:12:30 | 22 | A.   Yes. |
| 10:12:30 | 23 | Q.   So you're generally familiar with the way |
| 10:12:31 | 24 | a deposition proceeds? |
| 10:12:34 | 25 | A.   If yesterday was regular, yes. |

7

| | | |
|---|---|---|
| 15:35:44 | 1 | A.    I don't recall a fight. |
| 15:35:46 | 2 | Q.    Was there an attempt to share the bill? |
| 15:35:49 | 3 | A.    I don't recall. |
| 15:35:50 | 4 | Q.    What do you recall about that dinner |
| 15:35:52 | 5 | meeting conversation that took place? |
| 15:35:56 | 6 | A.    I recall that Amit said that he was here |
| 15:36:01 | 7 | in this country on an investor visa, and therefore |
| 15:36:05 | 8 | that he could legally put money offshore, outside |
| 15:36:10 | 9 | the country.  And he said that if I loaned him |
| 15:36:14 | 10 | money, the interest could come back tax-free because |
| 15:36:17 | 11 | he said that there were tax treaties amongst |
| 15:36:20 | 12 | different countries such that individuals in those |
| 15:36:23 | 13 | countries who were non-US citizens could gift money |
| 15:36:27 | 14 | legally back into the country tax-free. |
| 15:36:32 | 15 | Q.    And was this of interest to you? |
| 15:36:37 | 16 | A.    We asked him lots of questions about it, I |
| 15:36:39 | 17 | remember.  And I remember he said, kind of |
| 15:36:41 | 18 | offhandedly, "It's not worth doing if you don't do |
| 15:36:45 | 19 | about a million." |
| 15:36:47 | 20 | Q.    And were you interested in that? |
| 15:36:50 | 21 | A.    We asked a lot of questions. |
| 15:36:52 | 22 | Q.    Uh-huh.  What did you think about that |
| 15:36:56 | 23 | when you heard it? |
| 15:36:58 | 24 | A.    I don't know what I thought at the time. |
| 15:37:07 | 25 | Q.    And you believe he was asking you |

186

ELIZABETH GREWAL    January 11, 2008

15:39:39    1    Please take me through that again so I understand

15:39:41    2    it.

15:39:42    3        A.    He said that a non-US citizen from certain

15:39:46    4    countries, he said there were certain countries that

15:39:49    5    have tax treaties with the United States such that

15:39:52    6    individuals from those countries can gift money

15:39:55    7    legally tax-free back to an American citizen.

15:40:00    8        Q.    Okay.  And tie that for me then to what he

15:40:04    9    said would happen to the million dollars, if you

15:40:09    10   gave him a million dollars.  I'm not following the

15:40:13    11   circle as you describe it.

15:40:16    12       A.    He said the interest on any loan I gave

15:40:19    13   him could come back to me tax-free.

15:40:25    14       Q.    Okay.  And did he indicate how that

15:40:27    15   interest would be generated?

15:40:32    16       A.    I don't recall.  I believe he said that

15:40:37    17   the loan, my loan to him, he would give me a certain

15:40:41    18   interest rate.  And I believe he said 4 percent that

15:40:44    19   night.

15:40:48    20       Q.    You talk about it being in the complaint.

15:40:50    21   It says September 1 of 2000.  Was this the first

15:40:53    22   time you had heard of -- had been presented with

15:40:57    23   this pitch, as you call it?

15:40:59    24       A.    Yes.

15:41:01    25       Q.    There hadn't been any discussion of a loan

189

ELIZABETH GREWAL      January 11, 2008

| | | |
|---|---|---|
| 15:43:27 | 1 | various jobs at Applied Materials.  He did not have |
| 15:43:29 | 2 | any investing experience. |
| 15:43:31 | 3 | Q.  I see.  But you did? |
| 15:43:33 | 4 | A.  A little.  My mother had been the steward |
| 15:43:37 | 5 | of the money.  I remember my husband and I |
| 15:43:42 | 6 | discussing that we would probably be having a child |
| 15:43:48 | 7 | in the next year or two, and I had never -- my |
| 15:43:57 | 8 | mother had always managed the money. |
| 15:43:58 | 9 | And I trusted Amit and I thought this |
| 15:44:01 | 10 | might be a good idea as a place to park it.  And |
| 15:44:04 | 11 | Amit said he would give me 4 percent, possibly more. |
| 15:44:09 | 12 | And the "possibly more" he was implying, it sounded |
| 15:44:14 | 13 | like he would do his offshore thing. |
| 15:44:18 | 14 | Q.  So the money could grow? |
| 15:44:22 | 15 | A.  My thought was that I was parking it and I |
| 15:44:25 | 16 | would get my 4 percent. |
| 15:44:27 | 17 | Q.  Whatever happened. |
| 15:44:29 | 18 | A.  At least.  And I trusted Amit. |
| 15:44:31 | 19 | Q.  And when you say "at least," it could have |
| 15:44:33 | 20 | been more than that? |
| 15:44:34 | 21 | A.  That's what he said. |
| 15:44:35 | 22 | Q.  And that's what you understood him to |
| 15:44:39 | 23 | mean; is that right?  I mean, besides he said it, |
| 15:44:42 | 24 | that was your understanding of what he said? |
| 15:44:45 | 25 | A.  Yes. |

192

ELIZABETH GREWAL      January 11, 2008

| | | |
|---|---|---|
| 15:54:19 | 1 | percent. |
| 15:54:21 | 2 | Q.    4 percent at a minimum or 4 percent? |
| 15:54:27 | 3 | A.    He characterized it as at a minimum. |
| 15:54:30 | 4 | Q.    I want to know what you characterized it, |
| 15:54:32 | 5 | what you thought.  What was your understanding of |
| 15:54:34 | 6 | the transaction? |
| 15:54:35 | 7 | A.    My understanding was that it was at 4 |
| 15:54:37 | 8 | percent at a minimum. |
| 15:54:39 | 9 | Q.    And that it could be more? |
| 15:54:40 | 10 | A.    Yes, that's what he said. |
| 15:54:41 | 11 | Q.    And what would make the difference in |
| 15:54:44 | 12 | whether it was more or not, did he say that? |
| 15:54:46 | 13 | A.    He implied that his legal offshore |
| 15:54:49 | 14 | investing would do that. |
| 15:54:54 | 15 | Q.    And that what would happen? |
| 15:54:57 | 16 | A.    What do you mean? |
| 15:54:58 | 17 | Q.    Well, what would happen?  His legal |
| 15:55:00 | 18 | offshore investing and therefore something would |
| 15:55:04 | 19 | come to you greater than 4 percent? |
| 15:55:06 | 20 | A.    He characterized it as because he was here |
| 15:55:10 | 21 | on an investor visa, he legally had access to |
| 15:55:14 | 22 | investments outside the United States that |
| 15:55:17 | 23 | perhaps -- I'm making an assumption here, this is |
| 15:55:21 | 24 | what he implied -- would make more than perhaps he |
| 15:55:26 | 25 | could make investing here in the United States. |

199

ELIZABETH GREWAL    January 11, 2008

| 15:57:34 | 1 | instructions. |
| 15:57:37 | 2 | Q.   Okay.   You wired $880,000; is that |
| 15:57:40 | 3 | correct? |
| 15:57:41 | 4 | A.   Correct. |
| 15:57:43 | 5 | Q.   That wasn't a million dollars? |
| 15:57:45 | 6 | A.   No. |
| 15:57:45 | 7 | Q.   Why? |
| 15:57:49 | 8 | A.   That's what I came up with, 880.   He asked |
| 15:57:53 | 9 | for a million.   I sold California muni bonds, that's |
| 15:57:57 | 10 | how much I came up with.   And I told him that's how |
| 15:58:00 | 11 | much he was getting before I wired him the money. |
| 15:58:03 | 12 | Q.   What happened to the part at dinner, that, |
| 15:58:05 | 13 | you know, if you weren't going to do a million |
| 15:58:06 | 14 | dollars it wasn't worth doing? |
| 15:58:09 | 15 | MR. BANCHERO:   Objection.   Vague. |
| 15:58:12 | 16 | THE WITNESS:   What do you mean, "What |
| 15:58:13 | 17 | happened?" |
| 15:58:14 | 18 | MR. LEIDERMAN:   Q.   Well, he told you that |
| 15:58:17 | 19 | it wasn't worth doing for less than a million |
| 15:58:20 | 20 | dollars at dinner.   That's what you said, right? |
| 15:58:22 | 21 | A.   I believe that's what I said a moment ago. |
| 15:58:26 | 22 | Q.   Right.   Okay.   And you knew that when you |
| 15:58:29 | 23 | wired $880,000, right?   You hadn't forgotten about |
| 15:58:33 | 24 | that, had you? |
| 15:58:35 | 25 | A.   I knew that's what he asked for. |

202

**ELIZABETH GREWAL    January 11, 2008**

| | | |
|---|---|---|
| 15:58:38 | 1 | Q.   And you knew you were wiring less than |
| 15:58:40 | 2 | what he had asked for, didn't you? |
| 15:58:44 | 3 | A.   I knew I wired him $880,000. |
| 15:58:47 | 4 | Q.   And you knew at the time you wired it that |
| 15:58:49 | 5 | that was less than he had asked for at that dinner? |
| 15:58:55 | 6 | MR. BANCHERO:  Objection.  Assumes facts. |
| 15:58:58 | 7 | Mischaracterizes the witness. |
| 15:59:00 | 8 | MR. LEIDERMAN:  Q.   Okay.  At the time you |
| 15:59:01 | 9 | wired the 880, you hadn't forgotten that he had said |
| 15:59:05 | 10 | to you at dinner in September that it wasn't worth |
| 15:59:10 | 11 | doing for less than a million, right? |
| 15:59:12 | 12 | A.   I had not forgotten that he asked for a |
| 15:59:15 | 13 | million. |
| 15:59:16 | 14 | Q.   I see.  So why did you wire 880? |
| 15:59:22 | 15 | A.   That's what I came up with.  That's how |
| 15:59:23 | 16 | much I came up with. |
| 15:59:25 | 17 | Q.   In your mind were you -- you had made a |
| 15:59:29 | 18 | decision only to liquidate the bond portfolio and |
| 15:59:32 | 19 | whatever that generated you would transfer to |
| 15:59:35 | 20 | Mr. Choudhury?  How did you come up with that |
| 15:59:40 | 21 | number, where did it come from? |
| 15:59:43 | 22 | A.   I sold off California muni bonds. |
| 15:59:47 | 23 | Q.   Okay. |
| 15:59:49 | 24 | A.   I believe, if I recall correctly, that I |
| 15:59:53 | 25 | cleaned up the stock portfolio a little bit which |

203

ELIZABETH GREWAL      January 11, 2008

| | | |
|---|---|---|
| 16:45:15 | 1 | the money came from, yes. |
| 16:45:18 | 2 | Q.    And I'm asking you is that your best |
| 16:45:19 | 3 | testimony as to where the 880 came from?  Or do you |
| 16:45:24 | 4 | have any other testimony that you'd like to add to |
| 16:45:27 | 5 | that? |
| 16:45:27 | 6 | A.    No. |
| 16:45:28 | 7 | Q.    "No" being you have nothing else to add? |
| 16:45:30 | 8 | A.    I have no further testimony. |
| 16:45:32 | 9 | Q.    Okay.   Thank you. |
| 16:45:43 | 10 | Would you look at the first amended |
| 16:45:46 | 11 | complaint, which I think is marked as Exhibit 6? |
| 16:45:48 | 12 | Look at Exhibit A to the first amended complaint. |
| 16:45:55 | 13 | Do you see that, the Term Promissory Note? |
| 16:45:59 | 14 | A.    Yes. |
| 16:46:00 | 15 | Q.    Is that a true and correct copy of your |
| 16:46:02 | 16 | signature that appears on the original of that |
| 16:46:05 | 17 | document? |
| 16:46:07 | 18 | A.    It appears to be. |
| 16:46:08 | 19 | Q.    Do you have any reason to doubt that it |
| 16:46:09 | 20 | is? |
| 16:46:10 | 21 | A.    No. |
| 16:46:11 | 22 | Q.    Where is the original? |
| 16:46:15 | 23 | A.    I believe my attorney has it now. |
| 16:46:18 | 24 | MR. BANCHERO:  He does. |
| 16:46:36 | 25 | MR. LEIDERMAN:  Q.  When did this come |

223

| | | |
|---|---|---|
| 16:46:37 | 1 | into your possession, this Term Promissory Note, |
| 16:46:40 | 2 | Exhibit A? |
| 16:46:41 | 3 | MR. BANCHERO:  I'd like to make one |
| 16:46:42 | 4 | comment -- I just think it's relevant -- which is |
| 16:46:45 | 5 | that Mr. Leiderman's colleague, Mr. Reidy, a lawyer |
| 16:46:49 | 6 | here, asked to inspect the original of the |
| 16:46:51 | 7 | Promissory Note.  And we did make it available to |
| 16:46:54 | 8 | him and he came to my offices and looked at it. |
| 16:47:01 | 9 | THE WITNESS:  Thank you. |
| 16:47:01 | 10 | MR. LEIDERMAN:  Q.  Okay.  So when did you |
| 16:47:03 | 11 | first receive the original of this note? |
| 16:47:06 | 12 | A.  I believe it was mid-January. |
| 16:47:09 | 13 | Q.  Of what year? |
| 16:47:10 | 14 | A.  2001. |
| 16:47:12 | 15 | Q.  Okay.  So at the time you wire-transferred |
| 16:47:16 | 16 | $880,000 to Mr. Choudhury, you did not have this |
| 16:47:21 | 17 | note? |
| 16:47:22 | 18 | A.  I did not. |
| 16:47:23 | 19 | Q.  What did you have, if anything, to |
| 16:47:26 | 20 | evidence whatever your understanding of this |
| 16:47:28 | 21 | transaction was? |
| 16:47:35 | 22 | A.  (Indicating.) |
| 16:47:35 | 23 | Q.  And you're showing us Exhibit 49, the |
| 16:47:37 | 24 | document that confirms a wire transfer. |
| 16:47:40 | 25 | A.  The Schwab document confirming the wire |

224

**ELIZABETH GREWAL      January 11, 2008**

| | | |
|---|---|---|
| 16:47:44 | 1 | transfer. |
| 16:47:45 | 2 | Q.   Okay.   What evidence did you have in |
| 16:47:48 | 3 | writing -- |
| 16:47:49 | 4 | A.   I'm sorry, and my Schwab statement that we |
| 16:47:51 | 5 | just looked at. |
| 16:47:53 | 6 | Q.   Did you have -- up until the time that you |
| 16:47:55 | 7 | received Exhibit A, the Term Promissory Note, did |
| 16:47:58 | 8 | you have anything in writing to evidence whatever |
| 16:48:02 | 9 | the terms of the transaction was between you and |
| 16:48:07 | 10 | Mr. Choudhury? |
| 16:48:08 | 11 | A.   No. |
| 16:48:08 | 12 | Q.   Did you ask for anything in writing? |
| 16:48:11 | 13 | A.   Repeatedly. |
| 16:48:13 | 14 | Q.   But you had nothing? |
| 16:48:14 | 15 | A.   No. |
| 16:48:14 | 16 | Q.   And when you wired the money you had |
| 16:48:18 | 17 | nothing? |
| 16:48:18 | 18 | A.   I was given nothing. |
| 16:48:20 | 19 | Q.   Okay.   And you didn't create anything? |
| 16:48:22 | 20 | A.   I did not. |
| 16:48:26 | 21 | Q.   When you wired the money, what was your |
| 16:48:30 | 22 | understanding of what obligation Mr. Choudhury had |
| 16:48:36 | 23 | to you, if any? |
| 16:48:42 | 24 | A.   If any? |
| 16:48:43 | 25 | Q.   Yes. |

225

ELIZABETH GREWAL       January 11, 2008

16:48:43    1          A.   I'm sorry, I don't understand "if any."

16:48:47    2          Q.   Do you believe that Mr. Choudhury, when

16:48:48    3    you wire-transferred $880,000 to his account, had

16:48:53    4    any obligation to you relative to that money?

16:48:57    5          A.   Yes, when I loaned him $880,000, I

16:49:00    6    expected to get my principal back plus interest on

16:49:04    7    time.

16:49:06    8          Q.   And what was the time?

16:49:08    9          A.   This Term Promissory Note was a five-year

16:49:11    10   note.

16:49:12    11         Q.   No, no, I'm asking you at the time you

16:49:14    12   wire-transferred the money, tell me all the terms of

16:49:18    13   the transaction and Mr. Choudhury's obligations to

16:49:22    14   you.

16:49:22    15         A.   I believe we had verbally agreed on five

16:49:25    16   years.

16:49:25    17         Q.   What did you agree to?  Tell me exactly

16:49:27    18   what you agreed to.

16:49:29    19         A.   I believe we agreed on five years, 4

16:49:33    20   percent.

16:49:34    21         Q.   What would happen in five years?

16:49:35    22         A.   That I would get my money back with 4

16:49:38    23   percent interest at a minimum.  And as I mentioned

16:49:44    24   that he said in the meeting on September 1st, the

16:49:46    25   interest would come back tax-free to me.

226

ELIZABETH GREWAL    January 11, 2008

| | | |
|---|---|---|
| 16:53:03 | 1 | that came into your possession? |
| 16:53:05 | 2 | A.  Yes. |
| 16:53:05 | 3 | Q.  Tell me about that. |
| 16:53:06 | 4 | A.  I believe we were in Mr. Choudhury's |
| 16:53:09 | 5 | office, Amit's office on Van Ness.  I think he was |
| 16:53:15 | 6 | sitting behind his desk and I was over here on the |
| 16:53:19 | 7 | other side. |
| 16:53:19 | 8 | Q.  What did you discuss? |
| 16:53:21 | 9 | A.  I had been asking for a promissory note |
| 16:53:25 | 10 | for quite some time and this is what he gave me. |
| 16:53:33 | 11 | Q.  Okay.  Did you look at it then? |
| 16:53:35 | 12 | A.  Yes. |
| 16:53:35 | 13 | Q.  Did you read it? |
| 16:53:36 | 14 | A.  Yes. |
| 16:53:36 | 15 | Q.  Do you think you understood it? |
| 16:53:39 | 16 | A.  Yes. |
| 16:53:40 | 17 | Q.  Did you see it said -- it referred to the |
| 16:53:44 | 18 | sum of a million dollars? |
| 16:53:45 | 19 | A.  Yes. |
| 16:53:45 | 20 | Q.  Did you say anything about that? |
| 16:53:47 | 21 | A.  Yes. |
| 16:53:47 | 22 | Q.  What did you say? |
| 16:53:48 | 23 | A.  I asked him, "Why does it say a million?" |
| 16:53:51 | 24 | Q.  Yes.  What did he say? |
| 16:53:52 | 25 | A.  He said he prepared this before the money |

229

**ELIZABETH GREWAL    January 11, 2008**

| | | |
|---|---|---|
| 16:53:58 | 1 | came over on December 13th.  And I said, "Then why |
| 16:54:03 | 2 | is this dated January 2nd?" |
| 16:54:05 | 3 | Q.   And he said? |
| 16:54:06 | 4 | A.   He kept maintaining that he had prepared |
| 16:54:09 | 5 | it before the money came over. |
| 16:54:13 | 6 | Q.   Did you want to accept this with a million |
| 16:54:15 | 7 | dollars on it? |
| 16:54:18 | 8 | A.   This is all he gave me. |
| 16:54:23 | 9 | Q.   Well, you signed it, correct? |
| 16:54:29 | 10 | A.   Correct. |
| 16:54:29 | 11 | Q.   Why did you accept a note for money that |
| 16:54:31 | 12 | you hadn't transferred to him? |
| 16:54:34 | 13 | A.   This is all he was willing to give me. |
| 16:54:36 | 14 | Q.   You didn't say to him, "Why didn't you |
| 16:54:39 | 15 | change this and make it $880,000?" |
| 16:54:42 | 16 | A.   I asked him repeatedly why he wrote it |
| 16:54:45 | 17 | this way and he continued to give the same answer. |
| 16:54:49 | 18 | Q.   And then after you got this note, did you |
| 16:54:51 | 19 | think to yourself, "Wow, I'm going to get a million |
| 16:54:54 | 20 | dollars plus interest"? |
| 16:54:56 | 21 | A.   Absolutely. |
| 16:54:56 | 22 | Q.   Do you think you were entitled to that? |
| 16:54:59 | 23 | A.   That's what he put on the note. |
| 16:55:02 | 24 | Q.   What did you give in exchange for the |
| 16:55:05 | 25 | additional $120,000 that was being promised to you |

230

**ELIZABETH GREWAL      January 11, 2008**

| | | |
|---|---|---|
| 17:04:28 | 1 | compounding is 365 days. |
| 17:04:31 | 2 | Q.    Okay.   Did you tell Mr. Choudhury when he |
| 17:04:35 | 3 | handed you this term note that, "This wasn't our |
| 17:04:41 | 4 | agreement, I was supposed to get a minimum of 4 |
| 17:04:45 | 5 | percent"? |
| 17:04:46 | 6 | A.    I don't recall what I said.   As I told |
| 17:04:49 | 7 | you, I asked him why there was the difference |
| 17:04:52 | 8 | between 880 and a million.   And he said he had |
| 17:04:54 | 9 | prepared this document before the money was wired. |
| 17:04:58 | 10 | Q.    Did you say, "I can't agree to this"? |
| 17:05:03 | 11 | A.    I did not say that. |
| 17:05:10 | 12 | Q.    Let's look at the originals of those |
| 17:05:12 | 13 | documents and get these marked as documents next in |
| 17:05:18 | 14 | order, please.   This is the number document that |
| 17:05:22 | 15 | ends in 38. |
| 17:05:25 | 16 | Your counsel gave you the thumbs-up, he |
| 17:05:28 | 17 | must have thought you did good on that last series |
| 17:05:30 | 18 | of questions. |
| 17:05:31 | 19 | MR. BANCHERO:   I gave her the thumbs-up |
| 17:05:33 | 20 | because I thought she did well putting up with you. |
| 17:05:37 | 21 | THE WITNESS:   That's right. |
| 17:05:37 | 22 | MR. LEIDERMAN:   Let's mark -- well, these |
| 17:05:43 | 23 | don't have numbers on it anymore but it's a redacted |
| 17:05:47 | 24 | sheet that had been produced to us earlier as 10038. |
| 17:05:52 | 25 | And I think what we'll do is we'll put the document |

240

| | | |
|---|---|---|
| 17:18:57 | 1 | THE VIDEOGRAPHER:  Yes. |
| 17:18:58 | 2 | MR. LEIDERMAN:  Let's not take a break. |
| 17:18:59 | 3 | Let's just change the tape and keep going.  Thanks. |
| 17:19:02 | 4 | THE VIDEOGRAPHER:  This ends Tape 3 in the |
| 17:19:05 | 5 | deposition of Elizabeth Grewal.  Going off the |
| 17:19:09 | 6 | record at 5:18. |
| 17:19:14 | 7 | (Recess was taken.) |
| 17:22:35 | 8 | THE VIDEOGRAPHER:  And here begins Tape 4 |
| 17:22:36 | 9 | in the deposition of Elizabeth Grewal.  The time is |
| 17:22:41 | 10 | 5:21. |
| 17:22:43 | 11 | MR. LEIDERMAN:  Q.  Thank you. |
| 17:22:43 | 12 | Ms. Grewal, did your husband think it was a good |
| 17:22:48 | 13 | idea for you to transfer $880,000 to Mr. Choudhury? |
| 17:22:53 | 14 | A.   I don't know. |
| 17:22:55 | 15 | Q.   Did you ask him? |
| 17:22:56 | 16 | A.   We discussed it. |
| 17:22:57 | 17 | Q.   Did he express any views? |
| 17:23:00 | 18 | A.   I'm sure. |
| 17:23:02 | 19 | Q.   Well, what did he express if you're sure? |
| 17:23:08 | 20 | A.   I do not recall. |
| 17:23:11 | 21 | MR. LEIDERMAN:  Okay.  Let's mark what's |
| 17:23:17 | 22 | next in order, 10008.  I'm sorry, four zeros, |
| 17:23:23 | 23 | 100008, one-page document. |
| 17:23:40 | 24 | (Whereupon Exhibit 55 was |
| 17:23:40 | 25 | marked for identification.) |

249

ELIZABETH GREWAL    January 11, 2008

| | | |
|---|---|---|
| 17:23:41 | 1 | MR. LEIDERMAN:   Q.   I'll hand you Exhibit |
| 17:23:42 | 2 | 55 and ask you whether that document, at least the |
| 17:23:44 | 3 | original of that document, is in your handwriting? |
| 17:23:47 | 4 | A.   Yes. |
| 17:23:49 | 5 | Q.   All of it? |
| 17:23:55 | 6 | A.   The handwriting, yes.  Not the stamps |
| 17:23:58 | 7 | obviously. |
| 17:23:59 | 8 | Q.   Do you know who put the stamps on it? |
| 17:24:01 | 9 | A.   No, I presume someone at Kastner Banchero. |
| 17:24:05 | 10 | Q.   When did you write this document? |
| 17:24:11 | 11 | A.   I don't recall when I wrote the note, but |
| 17:24:13 | 12 | this actual document in the book was sometime last |
| 17:24:16 | 13 | summer. |
| 17:24:21 | 14 | Q.   Summer of 2007? |
| 17:24:22 | 15 | A.   Correct. |
| 17:24:23 | 16 | Q.   When you say "in the book," what book are |
| 17:24:26 | 17 | you referring to? |
| 17:24:27 | 18 | A.   There's a small, I think they were called |
| 17:24:31 | 19 | cash books, a hardback lined book in which I had -- |
| 17:24:38 | 20 | some years before that -- put my municipal bonds in, |
| 17:24:42 | 21 | the ones I owned separately from my mother. |
| 17:24:46 | 22 | Q.   When you say "put them in," you mean the |
| 17:24:49 | 23 | physical bonds themselves? |
| 17:24:50 | 24 | A.   I'm sorry, the record of what bonds I |
| 17:24:53 | 25 | owned, one per page, for example. |

250

ELIZABETH GREWAL      January 11, 2008

17:24:56    1        Q.    How many such books are there?

17:24:58    2        A.    That's the only one.

17:24:59    3        Q.    Do you still have it?

17:25:00    4        A.    Yes, it's not up-to-date.  I stopped using

17:25:03    5    it except for this.

17:25:04    6        Q.    Okay.  And so you wrote this down last

17:25:06    7    summer for what purpose?

17:25:08    8        A.    To track.

17:25:11    9        Q.    To track?

17:25:12    10        A.    To track the loan.

17:25:17    11        Q.    All right.  On either side of this page at

17:25:20    12    the top there's a "24" and a "25."  What does that

17:25:24    13    mean?

17:25:26    14        A.    I believe those are the page numbers in my

17:25:29    15    booklet.

17:25:29    16        Q.    Okay.  So would you explain to me what

17:25:32    17    this is recording?  You said it's the loan, but what

17:25:37    18    are you showing here?

17:25:39    19        A.    This tracks the principal that I wired

17:25:44    20    over --

17:25:44    21        Q.    Yes.

17:25:45    22        A.    -- of the loan on December 13th, 2000.

17:25:47    23    And then it calculates 4 percent simple interest and

17:25:54    24    it calculates 5 percent daily compounding interest.

17:26:03    25    You look like you're waiting for more.  Because --

251

ELIZABETH GREWAL    January 11, 2008

17:26:05  1          Q.    Well, I'm going to ask you why, so --

17:26:08  2          A.    Yes, I thought so.  Because for six out of

17:26:10  3    the last seven years, Amit told me that my money was

17:26:16  4    sitting in a family office account in HSBC in London

17:26:21  5    making 5 percent -- some product that was making 5

17:26:25  6    percent minimum with potentially more.  And I

17:26:29  7    remember I had to ask him what "HSBC" stood for, and

17:26:34  8    that's Hong Kong Shanghai Banking Corporation.

17:26:39  9          Q.    Okay.  Well, were you trying to reflect

17:26:41  10   what your agreement was, or something else?

17:26:48  11         A.    I was reflecting what was in writing on

17:26:50  12   the Term Promissory Note and what Amit was saying

17:26:54  13   verbally.  Those were two different things.

17:26:56  14         Q.    Which part reflects what was stated in the

17:26:59  15   Term Promissory Note?

17:27:01  16         A.    Again, I don't know if the promissory note

17:27:05  17   is for simple or for compound.  This calculation is

17:27:09  18   for simple, 4 percent simple.  And the 5 percent is

17:27:14  19   for daily compounded because that was my

17:27:17  20   understanding when Amit verbally said many, many

17:27:20  21   times in the last six years that that's what my

17:27:22  22   money was making.

17:27:23  23         Q.    Okay.  My question was which part of this

17:27:26  24   records what you thought the written Term Promissory

17:27:31  25   Note provided?

252

24. Loan to Amit Choudhury, debtor/Amit Holdings, Exp. 25

| Date | Minimum Due (40% Simple 5% compound daily) | Principal + Int. interest/yr (at 40% simple int) | | Prepaid | Paid |
|---|---|---|---|---|---|
| Dec 13, 2001 | $990,000 | | ALPLS wire to Schwab acct. - 0366 to Schwab Grd Bank acct. 02234161 | | Prepaid Paid |
| (Jan 2, 2001) | | | Pac'd promissory note etc. signed by A. Choudhury | | |
| Dec 13, 2001 | $ 915,200 | $35,741 | | | $0 |
| Dec 13, 2002 | $ 950,400 | $53,189 | | | $0 |
| Dec 13, 2003 | $ 985,600 / $1,029,800 | $112,082 | | | $0 |
| Dec 13, 2004 | $ 1,040,800 | $158,567 | | | $0 |
| Dec 13, 2005 | $ 1,056,000 / $176,000 | $194,04 | 5 years from expires. In default Demand for payment Sent Nov 2, 2007 via U.S. mail return receipt | | $0 |
| Dec 13, 2006 | $ 1,091,200 | $238,139 | | | |

CONFIDENTIAL

100008

EXHIBIT 55
Deponent: Gyurual
Date: 1/11/08 Rptr. SS
WWW.NJDEPOBOOK.COM