E. JEFFREY BANCHERO (SBN 93077)
ejb@kastnerbanchero.com
SCOTT R. RABER (SBN 194924)
srr@kastnerbanchero.com
KASTNER | BANCHERO LLP
20 California Street, Seventh Floor
San Francisco, California 94111
Telephone: (415) 398-7000
Facsimile: (415) 616-7000

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMIT CHOUDHURY,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM | CASE NO. C-07-4218 CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD AND PROMISSORY NOTE CLAIMS**<br><br>Date:　May 9, 2008<br>Time:　10:00 A.M.<br>Place:　Courtroom 8, 19th Floor<br><br>(Before Hon. Charles R. Breyer) |

-1-
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S FRAUD AND PROMISSORY NOTE CLAIMS　　　　Case No. C-07-4218 CRB

**I.  INTRODUCTION**[1]

Defendant Amit Choudhury seeks summary judgment on two narrow grounds, both of which fail in light of the evidence. First, he contends that plaintiff Elizabeth Grewal ("Grewal") has adduced no evidence of fraudulent intent by Choudhury. Second, he claims that there was no "mutual consent" by the parties in forming the promissory note (the "Note") at issue in this case, and suggests that the Note was solely the product of mistake. The opposition mischaracterizes both the nature and quantum of evidence on both of these points.

Grewal alleges a quintessential fraud claim: Choudhury fraudulently induced Grewal to lend him a large sum of money, based on false representations, and had no intention of repaying the money at the time he made the promises and they entered into the Note. In support of these allegations, the record establishes numerous facts that give rise to an inference of fraudulent intent by Choudhury, not simply his "non-performance" of contractual obligations. At the time Choudhury solicited funds from Grewal, Choudhury represented that he would invest the money that she loaned him in overseas funds, to take advantage of his investor visa status and provide tax-free returns. However, immediately after receiving the monies, Choudhury used the money for entirely different purposes – putting the funds into a personal account and using them to purchase a certificate of deposit; using the CD as collateral for his company's line of credit; and ultimately paying off the company's debt with the loaned funds, unbeknownst to Grewal. Within three months after Grewal and Choudhury had executed the Note, the money was apparently lost. Nevertheless, Choudhury persisted in his misrepresentations: from 2001 up to the time of this litigation, Choudhury continued to tell Grewal, falsely, that her money resided in a London bank account held by one of his family's businesses.

---

[1] All emphasis in quotations in this brief is added, unless otherwise stated. Depositions will be cited by name of witness. The exhibits identified in depositions were marked consecutively and will be cited using deposition exhibit numbers. Choudhury's responses to plaintiff's requests for admissions will be cited as "RFA No. __." Choudhury's memorandum in support of his motion for summary judgment on plaintiff's fraud and promissory note claims, dated April 23, 2008, will be cited as "Defs. Memo. In Supp." Choudhury's declaration in support of the motion will be cited as "Choudhury Decl."

In the face of these facts, Choudhury tries to distance himself from the parties' prior deposition testimony by offering the bare assertion that he always intended to repay Grewal her money. However, what Choudhury says *now* about his intent does not square with what he told (or did not tell) Grewal before, contemporaneously, and after she loaned money to him. The trier of fact could readily conclude, from all the circumstances (including Choudhury's admissions and his undisputed conduct), that Choudhury never had any intention of repaying Grewal, and that he fraudulently induced her to loan him money.

Secondly, as Grewal demonstrates in her motion for summary judgment filed concurrently with this opposition, the evidence establishes there was mutual consent to the Note and no mistake whatsoever as to its terms. Grewal's motion should be granted, and this motion should be denied, as we now show.

## II.     FACTS RELEVANT TO DEFENDANT'S MOTION[2]

Contrary to Choudhury's characterization of the evidence, multiple facts demonstrate that the trier of fact could conclude Choudhury intended to defraud Grewal from the outset, when he induced her to transfer monies to him.

On September 1, 2000, Grewal and her husband met Choudhury for dinner at a restaurant in San Francisco. The reason for the dinner was that "Amit [Choudhury] wanted to give us a pitch." (Deposition of Elizabeth Grewal, dated January 11, 2008 ("Grewal Dep."), 183:17-21.) Choudhury told Grewal that he was in the United States "on an investor visa, and therefore that he could legally put money offshore, outside the country." Grewal testified that Choudhury

> "*** said that if I loaned him money, the interest could come back tax-free because he said that there were tax treaties amongst different countries such that individuals in those countries who were non-US citizens could gift money legally back into the country tax-free."

---

[2]  In the interest of avoiding unnecessary repetition, Grewal herein incorporates, in full, the contents of her Motion for Summary Judgment on Promissory Note and Common Count for Money Lent, and all exhibits filed in support thereof, which are being filed concurrently with this opposition brief.

-3-
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S FRAUD AND PROMISSORY NOTE CLAIMS                    Case No. C-07-4218 CRB

(*Id.* at 186:4-14.) Choudhury told Grewal that the loan "would go offshore and that it was perfectly legal, [and] that he had these different entities set up ***." (*Id.* at 186:15-188:23.)

After considering Choudhury's proposal, Grewal sold securities from her portfolio to raise cash and, on December 13, 2000, instructed Schwab to wire $880,000 to Choudhury's personal bank account at Golden Gate Bank. (Grewal Dep., 201:16-202:4; Ex. 49, p. 100007; Ex. 50, p. 100009.) Choudhury's bank statement reflects a "transfer credit" (or deposit) of $880,000 received on 12/13/00 (Ex. 1, p. AC-001),[3] and Choudhury admits receiving the money (RFA Nos. 1, 5; Choudhury Dep., 24:8-17).

Shortly after Choudhury received the wire transfer, he used the money to purchase from Golden Gate Bank a Certificate of Deposit in his name in the amount of $1 million. (*Id.* at 21:13-22:20; 24:22-25:16; Ex. 1, p. AC-002.) Choudhury then pledged the certificate to collateralize a $1 million line of credit that Golden Gate Bank extended to Finexa, which he owned and was employed by as CEO. (Choudhury Dep., 33:5-15; 37:16-38:21; Ex. 2; Ex. 3, p. AC-006.) Choudhury disclosed none of this to Grewal. (Choudhury Dep., 23:6-9; 38:13-21.)

After wiring the money to Choudhury, Grewal asked him "repeatedly" for a writing to memorialize the loan. (Grewal Dep., 225:6-20; 227:1-12.) In mid-January, 2001, Choudhury handed Grewal the promissory note at issue in this case, while the two of them were sitting in Choudhury's office. (Grewal Dep., 228:20-229:7.)

On March 30, 2001, Choudhury authorized Golden Gate Bank to use his $1 million certificate of deposit, which the bank was holding as collateral, to pay off the line of credit. (Choudhury Dep., 40:8-41:20; Ex. 4, pp. AC-010, AC-011.) The payoff is reflected in Choudhury's bank-account statement, Exhibit 5, which shows a "credit" transfer (or deposit) in the amount of $1,014,494.05 on April 2, 2001 "from 209593," which was the identification number for the $1 million certificate of deposit. (*Compare* Ex. 5, p. AC-003, *with* Ex. 3, p. AC-006.) Choudhury's bank statement also shows a "payment" on April 2 in the amount of $1,000,666.66,

---

[3] Choudhury admits that his bank account statement, Ex. 1, is a genuine copy of the original. (RFA No. 17.)

which reflects the pay-off of Finexa's line of credit.  (Ex. 5, p. AC-003; see also Choudhury Dep., 42:13-44:1.)[4]  *Again, none of this was disclosed to Grewal.*  (*Id.* at 47:11-18; 49:21-50:1.)

Instead of telling Grewal what he had actually done with the funds, Choudhury repeatedly told her from 2001 to at least 2006 that "[her] money was sitting in a family office account in HSBC in London making 5 percent – some product that was making 5 percent minimum with potentially more."  (Grewal Dep., 251:16-252:22; 278:3-279:1 & Ex. 55.)  As late as 2006, Choudhury told Grewal that the money she had loaned him was in an account held by Amisil Holdings, another of Choudhury's companies; he also told Grewal that the funds were in a life insurance product.  (Grewal Dep., 254:25-258:3; 278:3-280:17.)

It was not until after this litigation had commenced that Grewal learned, for the first time, that Choudhury had used the monies she had loaned him to pay off Finexa debt — and had not actually invested the monies overseas in the manner he had repeatedly described to Grewal.  (Grewal Dep., at 301-302.)  At deposition, Choudhury conceded he had transferred the proceeds of Grewal's loan to Finexa and that the money disappeared from Finexa within three months.  (Choudhury Dep., 47:19-49:7; 49:21-24.)  When asked, Choudhury acknowledged that he had never informed Grewal about what he actually did with the money she had loaned him.  (*Id.* at 49:25-50:12; 149:25-150:15.)

**III.   ARGUMENT**

    **A.   The Trier Of Fact Could Conclude From The Disputed Facts That Choudhury Intended To Defraud Grewal**

Under California law, a claim for fraud requires the following elements:  1) misrepresentation such as concealment or nondisclosure; 2) knowledge of falsity; 3) intent to defraud or induce reliance; 4) justifiable reliance; and 5) resulting damage.  *Comerica v. McDonald*, 2007 WL 707505, at *3 (N.D. Cal. 2007), citing *Lazar v. Superior Court*, 12 Cal. 4th

---

[4]  In his March 30, 2001, letter to Golden Gate Bank (Ex. 4), Choudhury informed the bank that "Finexa will pay the interest" on the line of credit "for March …" and confirmed that "on Monday April 2, 2001, I will have access to the residual interest from my CD" – approximately $14,000.  (*Id.* at AC-001.)

631, 638 (1996).  Promissory fraud is a subspecies of an action fraud based on a promise made without an intention to perform.  *Id.*  Choudhury challenges only the "intent" prong of Grewal's claim on summary judgment.

Significant probative evidence relevant to the issue of intent – such as the time, place, or nature of the alleged fraudulent activities – precludes the issuance of summary judgment on this point.  *Simpson v. Allstate Insurance*, 2000 WL 1006533, at *3 (N.D. Cal. July 10, 2000); see also *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 411-412 (1989) (fraudulent intent may be established by inference from acts of the parties).

Thus, a party's "subsequent failure to perform *or conduct inconsistent with an earlier promise* or representation can warrant an inference that a party did not intend to perform when they promised."  *TK Power, Inc. v. Textron, Inc.*, 2006 WL 2032577, at *2 (N.D. Cal. July 18, 2006) (emphasis added), citing *Longway v. Newbery*, 13 Cal.2d 603, 611-12 (1939); see also *Southern Union Co. v. Southwest Gas Corp.*, 180 F.Supp.2d 1021, 1031-1032 (D. Az. 2002).  Likewise, fraud may also be properly inferred from the immediate failure to perform a promise.  *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 661 (9th Cir. 1982); see also *Las Palmas Associates v. Las Palmas Ctr. Associates*, 235 Cal. App. 3d 1220 (1991) ("In proving fraud, however, rarely does a plaintiff have direct evidence of a defendant's fraudulent intent.  Therefore, the subsequent conduct of a defendant, such as his failure to immediately carry out his pledge, has some evidentiary value to show that a defendant made the promise without the intent to keep the obligation.")

Choudhury cites several cases standing for the unremarkable proposition that promissory fraud cases involving a contract may not survive absent any evidence beyond the mere fact of non-performance, so that ordinary breaches of contract are not turned into fraud claims.  *See, e.g., Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985).  As the testimony of the parties makes clear, however, this is not such a case.  Moreover, even these cases recognize that "fraudulent intent must often by established by circumstantial evidence."  *Id.*

Here, the record is replete with evidence suggesting, contrary to Choudhury's self-serving declaration testimony, that Choudhury had no intention of repaying Grewal, or taking any of the steps he said he would take with her money, at the time he entered into the transaction with Grewal.

Choudhury represented to Grewal that he would place her money in legal offshore accounts, to earn tax free returns. Grewal testified – and Choudhury admitted – that Choudhury never informed her he was investing her money in a certificate of deposit collateralizing Finexa debt, nor that he was using the proceeds of that certificate of deposit to pay off the Finexa debt. The trier of fact could certainly conclude, based on Choudhury's own admissions, that he never intended to perform the contract, and used the Note only as a ruse to obtain the monies from Grewal. Whether Choudhury "fully intended" to repay the loan is an issue of fact – and weighing Choudhury's credibility in light of all the evidence.

### B. The Evidence Establishes Not Only That The Parties' Mutually Agreed Upon The Terms of the Promissory Note, And That There Was No Mistake, But Also That The Note Is Undisputedly Enforceable Against Choudhury

Choudhury argues that the promissory note is unenforceable" because "it lacks mutual consent" or a 'meeting of the minds' as to the object of the contract. He also invokes the doctrine of mistake. (Deft.'s Memo. In Supp., p. 10-11.) As explained in greater detail in Grewal's accompanying Motion for Summary Judgment on Promissory Note and Common Count for Money Lent ("Grewal's Motion for Summary Judgment"), filed concurrently with this opposition, neither of these arguments has any applicability to the facts of this case.

First, with respect to the issue of "mutual consent," it is undisputed that Choudhury and Grewal treated the promissory note as the loan agreement between them. Whatever Choudhury may have "expected" at the time he received the $880,000, his consent to the Note cannot be contracted by evidence of his "belief" that Grewal "intended" to transfer additional monies to him. (Choudhury Decl., ¶ 3.) As demonstrated in Grewal's Motion for Summary Judgment, Choudhury consented to the promissory note, as manifested by his signature on the Note.

Secondly, the mistake that Choudhury claims he made was his "expectation" that Grewal would pay him an additional $120,000. But this was no mistake at all, because it was not an "unconscious ignorance or forgetfulness" of a past or present *fact* as required by California Civil Code § 1577.

-7-
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S FRAUD AND PROMISSORY NOTE CLAIMS        Case No. C-07-4218 CRB

## IV. CONCLUSION

For all the foregoing reasons, and the reasons set forth in Grewal's motion for summary judgment, Choudhury's Motion for Summary Judgment On Plaintiff's Fraud and Promissory Note Claims should be denied in its entirety.

DATED: April 18, 2008                    KASTNER | BANCHERO LLP


By: _____/S/_____
     E. Jeffrey Banchero
     Scott R. Raber

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL