1  E. JEFFREY BANCHERO (SBN 93077)
   ejb@kastnerbanchero.com
2  SCOTT R. RABER (SBN 194924)
   srr@kastnerbanchero.com
3  KASTNER | BANCHERO LLP
   20 California Street, Seventh Floor
4  San Francisco, California 94111
   Telephone: (415) 398-7000
5  Facsimile: (415) 616-7000
6

7  Attorneys for Plaintiff and Counter-Defendant
   ELIZABETH GREWAL
8

9

10                 UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  ELIZABETH GREWAL,                    CASE NO. C-07-4218 CRB

14          Plaintiff,

15      v.                               **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
16  AMIT CHOUDHURY,                      PLAINTIFF'S MOTION FOR SUMMARY
                                         JUDGMENT ON PROMISSORY NOTE
17          Defendant.                   AND COMMON COUNT FOR MONEY
                                         LENT**
18

19                                       Date:          May 23, 2008
                                         Time:          10:00 A.M.
20  ───────────────────────────          Courtroom:     8, 19th Floor

21  AND RELATED COUNTERCLAIM             (Before Hon. Charles R. Breyer)

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

THE FACTS ........................................................................................................................ 2

    A.   Choudhury Learns Of Grewal's Inheritance And Pitches Her For A Loan. ................... 2

    B.   Grewal Loans $880,000 To Choudhury – He Transfers The Money To Finexa. ........... 3

    C.   Choudhury Issues A $1 Million Promissory Note In Grewal's Favor. ......................... 5

    D.   The Parties At All Times Treat The Promissory Note As The Loan Agreement. ........... 6

    E.   Grewal's Demand For Payment And Choudhury's Refusal To Pay; Choudhury's Admissions That He Owes Grewal At Least $880,000. ................................................. 7

ARGUMENT ...................................................................................................................... 8

    A.   The Promissory Note Is Enforceable As Written. ........................................................ 8

        1.   The Note Embodies The Mutual Consent Of The Parties And Is Supported By Consideration. ...................................................................................................... 9

        2.   The Doctrine Of Mistake Does Not Invalidate The Note. ...................................... 12

    B.   The Amount Due On The Promissory Note As Of April 30, 2008, Is $1,404,170. ....... 13

    C.   Grewal Is Entitled To Judgment On Her Common Count For Money Lent. ................. 13

CONCLUSION .................................................................................................................. 14

-i-

MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT     Case No. C-07-4218 CRB

1

## **TABLE OF AUTHORITIES**

2

### **STATE CASES**

3

4

5

*Bunn v. Lucas, Pino & Lucas*
(1959) 172 Cal.App.2d 450 ................................................................. 10

6

*Donovan v. RRL Corporation*
(2001) 26 Cal.4th 261 ......................................................................... 12

7

8

*Elsinore Union Elementary School District v. Kastorff*
(1960) 54 Cal.2d 380 ........................................................................... 12

9

*FPI Development, Inc. v. Nakashima*
(1991) 231 Cal.App.3d 367 ................................................................... 8

10

11

*Flores v. Woodspecialities, Inc.*
(1956) 138 Cal.App.2d 763 ................................................................. 11

12

*Gribble v. Mauerhan*
(1961) 188 Cal.App.2d 221 ................................................................... 9

13

14

*Kester v. Reynolds*
(1959) 176 Cal.App.2d 36 ................................................................... 11

15

16

*McArthur v. Johnson*
(1932) 216 Cal. 580 ............................................................................... 9

17

*McNamara v. Oakland Building & Loan Association*
(1901) 131 Cal. 335 ............................................................................... 8

18

19

*Oakland Medical Building Corp. v. Aureguy*
(1953) 41 Cal.2d 521 ............................................................................. 9

20

*Otis v. Eisner*
(1935) 7 Cal.App.2d 496 ....................................................................... 9

21

22

*Parker v. Meneley*
(1951) 106 Cal.App.2d 391 ................................................................. 10

23

*Poggetto v. Bowen*
(1936) 18 Cal.App.2d 173 ................................................................... 11

24

25

*Riegel v. Wollenshlager*
(1920) 49 Cal.App. 300 ......................................................................... 8

26

27

28

*Schwerin v. Shostak*
  (1963) 213 Cal.App.2d 37 ............................................................................ 11

*Sunset Milling & Grain Co. v. Anderson*
  (1952) 39 Cal.2d 773 .................................................................................... 11

*Trigg v. Arnot*
  (1937) 22 Cal.App.2d 455 .............................................................................. 8

*Wilbur v. Griffius*
  (1922) 56 Cal.App. 668 .............................................................................. 8, 9

*Williams v. Reed*
  (1957) 48 Cal.2d 57 ...................................................................................... 11


**STATUTES**

California Civil Code
  Section 1577 ................................................................................................ 12
  Section 1605 ................................................................................................ 11
  Section 1614 ................................................................................................ 11
  Section 1615 ................................................................................................ 11

California Comm. Code
  Section 3303 ................................................................................................ 11


**MISCELLANEOUS**

1 B. Witkin *Summary of California Law*
  Section 205 .................................................................................................. 11

8 H. Miller & M. Starr, *Miller and Starr California Real Estate*
  Chapter 21 ..................................................................................................... 1

B. Witkin, *California Procedure*
  Section 532n at 620 ....................................................................................... 8

Restatement (Second) of Contracts
  Section 79, Comment c .................................................................................. 11

MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT    Case No. C-07-4218 CRB

## INTRODUCTION AND SUMMARY OF ARGUMENT[*]

In December, 2000, the plaintiff, Elizabeth Grewal ("Grewal"), loaned $880,000 to the defendant, Amit Choudhury ("Choudhury").  Choudhury signed a promissory note in the principal amount of $1,000,000 to memorialize the loan, which he presented to Grewal.  The note stated that he would pay this amount to Grewal and interest at 4% a year at the end of a five-year term – *i.e.*, in January, 2006.  Grewal demanded to be paid, Choudhury refused to pay, and this suit followed.

By the instant motion, Grewal moves for summary judgment on the second claim of the First Amended Complaint, which seeks enforcement of the promissory note, and on the third claim, a common count for money lent.

Choudhury wrote the promissory note, and he admits he signed the note after he received Grewal's $880,000.  The terms of the note are precise and unambiguous.  He presented the note to Grewal, who accepted it.  Choudhury did not express the slightest disagreement about the note during the five years before the note came due or, indeed, at any time prior to this lawsuit.  For over seven years he and Grewal treated the promissory note and nothing else as the terms of their loan agreement.

The note is enforceable as written.  It is supported by consideration – Grewal's loan of $880,000 – and there is no rule prohibiting Grewal from accepting a promise from Choudhury to pay an amount that exceeds the amount she loaned him.  As we show, "[t]here is no law against a lender taking a bonus as additional consideration for a loan, as long as the amount of the bonus, when added to the interest charged does not exceed the legal maximum."  8 H. Miller & M. Starr, *Miller and Starr California Real Estate,* ch. 21 (2007).  The additional amount is treated as interest.  Here, Choudhury's note promises 4% interest and an additional $120,000 over five years.  As we demonstrate, this means the effective rate of interest on the loan was 6.62% – a reasonable rate under the circumstances and certainly not usurious.

---

[*] All emphasis in quotations in this brief is added, unless otherwise stated.  Depositions will be cited by name of witness.  The exhibits identified in depositions were marked consecutively and will be cited using deposition exhibit numbers.  Choudhury's responses to plaintiff's requests for admissions will be cited as "RFA No."

Choudhury has filed a motion for summary judgment on Grewal's promissory-note claim, which is scheduled to be heard by the Court on May 9, 2008.  In the motion, Choudhury claims the note lacked "mutual consent" and did not reflect his understanding of the transaction, because he expected Grewal to loan him an additional $120,000.  But there is no writing to this effect, and Choudhury's claim is rebutted by the unambiguous terms of the note.  The promissory note is enforceable as written, because whatever his understanding at the time, the note memorialized the terms of the loan and became the parties' contract.  The doctrine of mistake, which Choudhury also invokes in his motion, is inapplicable because Choudhury signed the note knowing he had received $880,000 from Grewal.  He was not mistaken as to the object of the contract.

Grewal's claim to enforce the promissory note presents no disputed question of fact. Choudhury, having moved for summary judgment on the same claim, concedes the point.  For the reasons that follow, Grewal's motion should be granted, and Choudhury's motion should be denied.

Nor does Choudhury dispute any material fact relating to Grewal's third claim, a common count for money lent – *i.e.,* $880,000.  To the contrary, Choudhury admits in his motion that "at all times" he "fully intended to repay Plaintiff any amount transferred to me."  (Declaration of Amit Choudhury in Support of Defendant's Motion for Summary Judgment, dated April 3, 2008 ("Choudhury decl."), ¶ 10.)  For this reason, and because the undisputed facts demonstrate that Grewal loaned Choudhury $880,000, Grewal is also entitled to judgment on her common count for money lent.

## THE FACTS

**A.     Choudhury Learns Of Grewal's Inheritance And Pitches Her For A Loan.**

Grewal and Choudhury met in the 1990s and became friends.  (Choudhury decl., ¶ 2.)  In 2000, according to Choudhury, Grewal approached him to ask for advice on investments she maintained at Charles Schwab.  (Deposition of Amit Choudhury, dated January 10, 2008

("Choudhury Dep."), 128:25-131:8.)  Choudhury reviewed Grewal's account statement, which

disclosed that the value of the account was $2.89 million.  (*Id.* at 129:3-6; Ex. 12, p. 100003.)[1]

Choudhury was a co-founder, shareholder, and Chief Executive Officer of Finexa, Inc.

("Finexa"), a company based in San Francisco that sold software for financial planning.  (RFA

Nos. 38, 39, 40; Answer to First Amend. Compl., ¶ 3.)  In June, 2000, after Choudhury discovered

the existence of Grewal's investments, he hired Grewal to work for Finexa.  (Answer to First

Amend. Compl., ¶ 4.)  Finexa was a start-up – Grewal was the third employee Choudhury hired.

(Choudhury Dep., 82:20-84:4.)

On September 1, 2000, Grewal and her husband met Choudhury for dinner at a restaurant in

San Francisco.  Choudhury has no recollection of the dinner, let alone anything that was said (*id.* at

10:23-11:7), but Grewal's memory of the dinner is crystal clear.  The reason for the dinner was that

"Amit [Choudhury] wanted to give us a pitch."  (Deposition of Elizabeth Grewal, dated January 11,

2008 ("Grewal Dep."), 183:17-21.)  Choudhury told Grewal that he was in the United States "on an

investor visa, and therefore that he could legally put money offshore, outside the country."  Grewal

testified that Choudhury

> "*** said that if I loaned him money, the interest could come back tax-free
> because he said that there were tax treaties amongst different countries such
> that individuals in those countries who were non-US citizens could gift money
> legally back into the country tax-free."

(*Id.* at 186:4-14.)  Choudhury told Grewal that the loan "would go offshore and that it was perfectly

legal, [and] that he had these different entities set up ***."  (*Id.* at 186:15-188:23.)

**B.      Grewal Loans $880,000 To Choudhury – He Transfers The Money To Finexa.**

After considering Choudhury's proposal, Grewal sold securities from her portfolio to raise

cash and, on December 13, 2000, instructed Schwab to wire $880,000 to Choudhury's personal

bank account at Golden Gate Bank.  (Grewal Dep., 201:16-202:4; Ex. 49, p. 100007; Ex. 50, p.

100009.)  Choudhury's bank statement reflects a "transfer credit" (or deposit) of $880,000 received

---

[1]  Choudhury's handwritten notations appear on Grewal's account statement, Ex. 12.  (Choudhury
Dep., 129:17-130:12.)

1    on 12/13/00 (Ex. 1, p. AC-001),[2] and Choudhury admits receiving the money (RFA Nos. 1, 5;

2    Choudhury Dep., 24:8-17).

3        The wire transfer, Choudhury testified, was a "surprise" to him. (*Id.* at 18:13-18.) If true,

4    Choudhury lost no time capitalizing on the surprise. Shortly after he received the wire, he used the

5    money to purchase from Golden Gate Bank a Certificate of Deposit in his name in the amount of

6    $1 million. (*Id.* at 21:13-22:20; 24:22-25:16; Ex. 1, p. AC-002.)[3] Choudhury then pledged the

7    Certificate of Deposit to collateralize a $1 million line of credit that Golden Gate Bank extended to

8    Finexa. (Choudhury Dep., 33:5-15; 37:16-38:21; Ex. 2; Ex. 3, p. AC-006.)[4] Choudhury disclosed

9    none of this to Grewal. (Choudhury Dep., 23:6-9; 38:13-21.)

10       Finexa grew from three employees in June, 2000, when Choudhury hired Grewal, to over

11   forty employees in December, 2000, when Choudhury used Grewal's money to collateralize

12   Finexa's line of credit. (Choudhury Dep., 85:4-11.) Grewal's money, however, was apparently

13   not sufficient to keep Finexa afloat.[5] On March 30, 2001, Choudhury authorized Golden Gate

14   Bank to use his $1 million certificate of deposit, which the bank was holding as collateral, to pay

15   off Finexa's loan. (Choudhury Dep., 40:8-41:20; Ex. 4, pp. AC-010, AC-011.) The payoff is

16   reflected in Choudhury's bank-account statement, Exhibit 5, which shows a "credit" transfer (or

17   deposit) in the amount of $1,014,494.05 on April 2, 2001 "from 209593," which was the

18

19   [2] Choudhury admits that his bank account statement, Ex. 1, is a genuine copy of the original.
     (RFA No. 17.)

20
21   [3] Choudhury claims to have been licensed as a "Series 65" "registered investment advisor," a
     license issued by the National Association of Securities Dealers. When asked if he was acting as
     an investment advisor under the NASD rules when he received Grewal's money, he replied,

22   "[T]here was no requirement for me to do that. *** [T]he money was sent to my personal
     account, *so I was investing it as if I was investing it.*" (Choudhury Dep., 78:3-79:1; 80:10-25.)

23
24   [4] Choudhury signed Finexa's Promissory Note (Ex. 2, p. AC-005) and the Assignment of Deposit
     Account (Ex. 3, p. AC-008) as head of Finexa. He also signed the Assignment of Deposit
     personally as its "Grantor." (*Ibid*; see also Choudhury Dep., 32:13-33:4.)

25
26   [5] Choudhury wrote Grewal on March 15, 2001, informing her that Finexa was "not in a financial
     position to continue our existing staffing and payroll levels" and that if she wanted to continue to
     work for the company, she would be paid "minimum wage." (Grewal Dep., 50:10-25; see

27   Declaration of Elizabeth Grewal in Support of Motion for Summary Judgment, ¶¶ 2-3, Ex. A
     ("Grewal decl.")

28

identification number for the $1 million certificate of deposit.  (*Compare* Ex. 5, p. AC-003, *with* Ex. 3, p. AC-006.)  Choudhury's bank statement also shows a "payment" on April 2 in the amount of $1,000,666.66, which reflects the pay-off of Finexa's line of credit.  (Ex. 5, p. AC-003; *see also* Choudhury Dep., 42:13-44:1.)[6]  Choudhury again disclosed none of this to Grewal.  (*Id.* at 47:11-18; 49:21-50:1.)[7]

**C.     Choudhury Issues A $1 Million Promissory Note In Grewal's Favor.**

After Grewal wired the $880,000 to Choudhury, she asked him "repeatedly" for a writing to memorialize the loan.  (Grewal Dep., 225:6-20; 227:1-12.)  In mid-January, 2001, Choudhury handed Grewal a promissory note while the two of them were sitting in Choudhury's office.  (Grewal Dep., 228:20-229:7.)  Choudhury admits preparing the note, signing it, and presenting it to Grewal for her signature.  (RFA Nos. 11, 12; Ex. 7; Choudhury Dep., 88:21-89:14; 90:18-20.)  The note reads:

> FOR VALUE RECEIVED Amit Choudhury ("Debtor") *unconditionally promises to pay to the order of Elizabeth Eilert Grewal, ("Lender") on demand* at San Francisco, California, the sum of $1,000,000 USD (One Million US Dollars). Debtor agrees to pay interest from the date of [the note] on the said sum or the amount from time to time remaining unpaid at the rate per annum (calculated based on a 365 day year), which is equal to 4.0%.  *Such interest shall be calculated and payable upon maturity of this Note upon expiration of the term, which is deemed to be Five years.*
>
> The principal and interest of this Term Promissory Note shall be paid in US dollars without set-off or counterclaim.

---

[6]  In his March 30, 2001, letter to Golden Gate Bank (Ex. 4), Choudhury informed the bank that "Finexa will pay the interest" on the line of credit "for March …" and confirmed that "on Monday April 2, 2001, *I will have access to the residual interest from my CD*" – approximately $14,000. (*Id.* at AC-001.)

[7]  Whether Finexa spent the proceeds of Grewal's loan on operations or whether Choudhury used Finexa to divert the money is not material to Grewal's entitlement to summary judgment on the promissory note.  Efforts by Grewal's lawyers to obtain copies of Finexa's financial documents for this period, which might shed light on the question, have not been fruitful.  Choudhury is "not in possession" of balance sheets, financial statements, or "any documents that refer or relate to contributions of capital made to or received by Finexa, Inc." during the period from December, 2000 to April, 2001.  Def.'s Supp. Responses to Pl.'s Req. for Docs., Sets Three & Four, nos. 24, 29 & 31.

Made at San Francisco, California, this 2nd day of January, 2001.

Debtor:                                                    Lender:
[signed]  Amit Choudhury                    [signed] Elizabeth Eilert Grewal

(Ex. 7.)[8]

In his declaration, Choudhury admits that he signed the promissory note in "late December, 2007" – that is, *after* he received the $880,000 from Grewal and purchased the $1 million Certificate of Deposit.  (Choudhury decl., ¶¶ 5-6.)  Choudhury does not recall, however, any discussions with Grewal when he handed her the note, testifying specifically that he could not remember anything that he or Grewal said.  (Choudhury Dep., 99:22-100:3.)

**D.        The Parties At All Times Treat The Promissory Note As The Loan Agreement.**

In the days following the receipt of the $880,000 and for years afterward, Grewal and Choudhury acted in accord with the terms of the promissory note.  Choudhury wrote and signed the note obligating himself to pay Grewal $1,000,000 fully conscious that he had received $880,000 from her.  After signing the note and presenting it, Choudhury did not request that Grewal lend him an additional $120,000 or any other amount.  Grewal recalls vividly that Choudhury made no such request (Grewal decl., ¶ 4); Choudhury has no recollection to the contrary one way or the other. (*Id.* at 97:24-98:5; RFA no. 21.)  Choudhury was asked about discussions he had with Grewal during the last several years when she demanded he pay the debt:

> Q.        During any of those discussions, did you tell her that you had expected to receive more than the monies that you did and that was one of the reasons that you weren't repaying the money?
>
> A.        *I don't remember.*

(*Id.* at 100:4-14.)  Choudhury testified "*I think the topic just sort of disappeared.  It just wasn't discussed.*"  (*Id.* at 107:24-108:14.)  At no time did Choudhury demand that Grewal return the promissory note (*id.* at. 108:19-21) or request that Grewal agree to rescind it.  (*Id.* at 107:14-17.)

---

[8]  Choudhury admits that the copy of the note submitted in support of this motion "is an authentic copy of the original document of which it purports to be a copy."  (RFA No. 7.)  Grewal possesses the original from which this copy was made, which Choudhury signed in blue ink.  Choudhury's lawyers have inspected the original note.

1

2

**E.    Grewal's Demand For Payment And Choudhury's Refusal To Pay; Choudhury's Admissions That He Owes Grewal At Least $880,000.**

3

On January 2, 2007, Grewal sent Choudhury a letter in which she demanded that he make

4

"full payment" on the promissory note "in the amount of $1,000,000 plus 4% interest ***." (Ex.

5

11.)[9]  Choudhury admitted that the demand was "received at the office," but that he did not open

6

the envelope until after the complaint was served.  (RFA No. 13; Choudhury Dep., 127:22-128:24.)

7

Choudhury has not paid Grewal the amount owing on the promissory note or any amount

8

(RFA No. 36; Choudhury Dep., 124:19-23), but he admits he owes Grewal money and many times

9

has told her so.  Choudhury was asked at deposition if he had had discussions with Grewal in

10

January 2006 about the money he owed her.  He answered:

11

"A.    I was embarrassed by the fact of what had happened earlier, and so I, um – I

12

would be vague almost.  I would be vague in terms of what I would say.  *I know at some – at some point in there we talked about my being able to get*

13

*her the investment money back*."

14

(*Id*. at 60:21-61:10.)  When asked to elaborate, Choudhury testified that he meant he was "[j]ust

15

*** trying to pull the money together" "to repay [Grewal]."  (*Id*. at. 64:15-24.)  Choudhury told

16

Grewal he "needed more time."  (*Id*. at 126:9-12.)  Choudhury wrote Grewal that he was "working

17

with the understanding that you wanted it all," observing that this would "certainly make it a lot

18

easier for me going forward."  (Choudhury Dep., 147:17-24; Ex. 15.)  Choudhury at one point told

19

Grewal he possessed a life insurance policy.  When asked at why he mentioned the policy,

20

Choudhury testified that he told Grewal

21

"A.    That if I was to die, she needed a way to have a claim against my estate if

22

something was to happen to me after she made the investment.  *** If I got hit by a truck, *I didn't want her to be out the next day and have no way of getting*

23

*that money back.*  ***  I just said, 'You'll have a claim against my estate.' "

24

(Choudhury Dep., 85:19-87:8.)  In May, 2007, Choudhury told Grewal he "was trying to raise the

25

money, because I felt it was morally the correct thing to do[;] *I would get her as much of the money*

26

*as I could.*  (*Id.* at 127:15-21.) In his declaration, Choudhury now claims he has always "intended

27

28

[9]  Choudhury admits that the Demand for Payment, Ex. 11, is a genuine copy of the original.

1   to make every effort to repay whatever funds were transferred to me, and any earnings on that

2   money."  (Choudhury decl., ¶ 3.)

3                                          **ARGUMENT**

4   A.      **The Promissory Note Is Enforceable As Written.**

5

6       "A promissory note is a contract in writing ***."  *Trigg v. Arnot*, (1937) 22 Cal.App.2d

7   455, 457; B. Witkin, *California Procedure* § 532n at 620 (4th ed. 1997) (action to enforce

8   promissory note is action on contract).  In an action on a promissory note, "execution of the note"

9   is sufficient to plead the "existence of the contract"; the "incorporation of a copy of the note alleges

10  its terms"; and "the allegation of nonpayment in accordance with those terms alleges a breach."

11  *FPI Development, Inc. v. Nakashima*, (1991) 231 Cal.App.3d 367, 282 Cal.Rptr. 508, 517.[10]

12      There is no rule prohibiting a lender, such as Grewal, from transferring an amount to a

13  borrower, such as Choudhury, in return for a promise to pay an amount that is greater than the

14  amount lent.  The courts enforce the bargain, treating the additional amount as an increase in the

15  effective rate of interest.  This proposition has long been recognized in California.  *See, e.g.,*

16  *McNamara v. Oakland Building & Loan Association* (1901) 131 Cal. 335, 345 (enforcing $1,200

17  promissory note although borrower received $960 loan; "the evidence was sufficient *** to support

18  the finding that [borrower] knew he was to pay a premium"); *Riegel v. Wollenshlager* (1920) 49

19  Cal.App. 300, 301 (enforcing $20,000 promissory note although borrower received $19,400 loan)

20  (rejecting borrower's claim that "there was no consideration [for the note] to the extent of $600);

21  *Wilbur v. Griffins* (1922) 56 Cal.App. 668, 669 & 674 (enforcing $45,600 promissory note

22  although borrower received $38,000 loan) ("[t]here being a consideration for the note, the note

23

---

24  [10]  "A note must contain the promise to pay of the person who signs it ***; it must identify the

25  payee, and the sum of money to which the payee is to be entitled.  Although notes regularly contain
    much more than this, *they need not do so*; an instrument in the form below is a note ***:

26          I hereby promise to pay $5,000 to Dean Robert Smith.

27                   (signed) Jane Student."

28  E. Peters, *A Negotiable Instruments Primer* (2d. 1974).

1   must be held valid[;] *** it is not necessary that the consideration of a note [*i.e.*, the amount

2   loaned] shall be equal in pecuniary value to the obligation incurred ***); *Otis v. Eisner* (1935) 7

3   Cal.App.2d 496, 499 (enforcing $450,000 promissory note although borrower received $405,000

4   loan) ("[w]hen a bonus is paid for the making of a loan, it must be considered as interest and taken

5   out of the principal at the time of the making of the loan, and interest then computed upon the

6   remainder of the principal"); *Gribble v. Mauerhan* (1961) 188 Cal.App.2d 221, 225 (enforcing

7   $45,000 promissory note given in exchange for $35,000 note, which constituted "sufficient

8   consideration" for the promise to pay $45,000).  Thus, a borrower who receives $1,000 from a

9   lender and promises to pay 6% interest on the amount and $1,030 in one year pays an effective rate

10  of interest of 9%.  In California, interest at 10% per annum is the legal maximum.  (California

11  Constitution, Art. XV § 1.)  Because 9% is less than the maximum rate of lawful interest, courts

12  will enforce the loan.

13      Choudhury presented Grewal with a promissory note (Ex. 7) that he wrote and signed.  The

14  note contains a promise to pay by Choudhury, it identifies the payee – Grewal, and it states the sum

15  of money to which the payee is entitled – $1 million.  None of its material terms possesses the

16  slightest ambiguity.  The effective interest rate on the note is 6.62%, which is less than the legal

17  maximum.  (See Pinsonneault decl., filed herewith, ¶¶ 3, 10 & Ex. B.)  The note "must be held

18  valid," *Wilbur*, 56 Cal.App. at 674, and is, on its face, fully enforceable.  *See, e.g., McArthur v.*

19  *Johnson* (1932) 216 Cal. 580, 582 (enforcing promissory note with unconditional promise to pay

20  money on demand); *Oakland Medical Building Corp. v. Aureguy* (1953) 41 Cal.2d 521 (rejecting

21  claim by lender that written promissory note was unenforceable because of oral representation to

22  pay note only on condition that lender received funds from third party).

### 1.    The Note Embodies The Mutual Consent Of The Parties And Is Supported By Consideration.

25      Choudhury argues that the promissory note is unenforceable because it "lacks mutual

26  consent" or a " 'meeting of the minds' as to the object of the contract."  (Memorandum of Points

27  and Authorities in Support of Defendant's Motion for Summary Judgment on Plaintiff's Fraud and

28

-9-

MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT    Case No. C-07-4218 CRB

Promissory Note Claims ("Deft.'s Memo. in Supp."), p. 10.)  According to Choudhury, "from Defendant's perspective the Note *** did not reflect the parties' agreement" because "[a]t the time he received the $880,000," Choudhury "expected to receive an additional $120,000 to make up the sum of $1,000,000."  (*Id.* at 11.)  But if this was truly Choudhury's expectation, why did he sign the promissory note *after* receiving the money?  Choudhury has no answer to this question.  If there was uncertainty about the parties' loan agreement when Grewal transferred the $880,000, the uncertainty was clarified when Choudhury signed the note.  The note *became* the loan agreement. *See Parker v. Meneley* (1951) 106 Cal.App.2d 391, 399 (if after negotiations "a written instrument is executed *** purporting to state the contractual obligations and rights of the parties *** it is to be presumed that it was executed by the parties *with the intention to adopt it as the final and complete expression of their agreement*").  Whatever Choudhury expected at the time he *received* the $880,000, his consent to the promissory note is manifested by his signature on the note.  His consent to the note cannot be contradicted by evidence of his "belief" that Grewal "intended" to transfer additional monies to him.  (Choudhury decl., ¶ 3.)[11]

It is undisputed that Choudhury and Grewal treated the promissory note as the loan agreement between them.  As we demonstrate in section D, above, at no time after signing the note did Choudhury so much as mention that he was expecting Grewal to loan him an additional $120,000 or any additional monies.  As Choudhury put it, "the topic just sort of disappeared." (Choudhury Dep., 107:24-108:14.)  Choudhury did not demand that Grewal return the promissory note or request that Grewal agree to rescind it.  (*Id.* at 108:19-21, 107:14-17.)  Under these circumstance, enforcement of the promissory note is *a fortiori.  See Bunn v. Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450, 462 ("[w]ords and conduct of the parties prior to, contemporaneous with, and subsequent to the point at which an agreement allegedly has been made may be examined in determining whether in fact" the contract exists).

---

[11]  Choudhury quotes with approval the "objective" test for ascertaining whether parties have consented to an agreement.  He argues that "[m]utual consent is gathered from the *reasonable meaning of the express words and acts of the parties, and not from unexpressed intentions or understandings ***.*" (Deft.'s Memo. in Supp., p. 10.)  We agree.  Choudhury's express words and Grewal's consent are set forth in the promissory note.

1    If Choudhury is arguing that his expectation of an additional $120,000 means the

2    promissory note lacked consideration, no case lends support.  The consideration for the note was

3    his receipt of the $880,000 loan.

4    "A written instrument is presumptive evidence of a consideration."  Civil Code § 1614;

5    *Sunset Milling & Grain Co. v. Anderson*, (1952) 39 Cal.2d 773, 781 (signed and executed notes are

6    presumed to have been given for sufficient consideration); *Williams v. Reed*, (1957) 48 Cal.2d 57,

7    62 ("the writing [promissory note] itself carries the presumption of consideration") (brackets in

8    original).  "Any consideration that will support a simple contract is sufficient to support a

9    negotiable instrument ***."  *Flores v. Woodspecialities, Inc.* (1956) 138 Cal.App.2d 763, 768.  It

10   follows, *a fortiori,* that no greater consideration is required to support a promissory note where, as

11   here, negotiability is not an issue.  *See generally* Calif. Comm. Code §3303(b) (" 'Consideration'

12   means any consideration sufficient to support a simple contract").  "Any benefit conferred ***

13   upon the promisor, by any other person, to which the promisor is not lawfully entitled *** as an

14   inducement to the promisor, is good consideration for a promise."  Calif. Civil Code §1605.  It is

15   axiomatic that "[i]f the requirement of consideration is met, there is no additional requirement of

16   *** equivalence in the values exchanged ***."  Restatement (Second) of Contracts §79, Comment

17   c; *Poggetto v. Bowen* (1936) 18 Cal.App.2d 173, 175 (enforcing promissory note) ("[t]here being

18   some consideration, the law will not attempt to measure the amount thereof").  "The burden of

19   showing a want of consideration sufficient to support an instrument lies with the party seeking to

20   invalidate or avoid it."  Civil Code §1615; *Kester v. Reynolds*, (1959) 176 Cal.App.2d 36, 39.

21   Choudhury could never meet his burden of proving that the promissory note is unsupported

22   by consideration.  When Choudhury drafted the promissory note, he wrote that he would pay

23   Grewal $1million and 4% interest in return "[f]or value received," which is an *admission* that he

24   received value in return for the promises set forth in the note.  *See Schwerin v. Shostak* (1963) 213

25   Cal.App.2d 37, 41.  The value he received was $880,000, a sum, certainly, which was a benefit –

26   "something of value" – to which he was not lawfully entitled.  *See generally* 1 B. Witkin *Summary

27   of California Law* §205 (10th ed. 2005).

28

1                    **2.    The Doctrine Of Mistake Does Not Invalidate The Note.**

2

3          The doctrine of mistake, which Choudhury also invokes (Deft.'s Memo. in Supp., pp. 10-

4    11), has no applicability to this case.  If two parties to an agreement are mistaken, for example,

5    about the existence of a "thing" that they bargained for, or if a clerical error means a written

6    agreement does not conform to the true intention of the parties, an agreement may under some

7    circumstances be set aside.  The mistake Choudhury claims he made was his "expectation" that

8    Grewal would pay him an additional $120,000.  But this was no mistake at all, because it was not

9    an "unconscious ignorance or forgetfulness" of a past or present *fact* as Civil Code §1577, set forth

10   in the margin,[12] requires.  Choudhury's expectation of further payment was a fully conscious

11   thought at the time he signed the promissory note.  If Choudhury believed Grewal was intending to

12   transfer more money to him, as he claims, he could have refrained from signing the promissory

13   note, or he could have written a note that expressed an obligation on Grewal's part to do so.  None

14   of the cases Choudhury cites is to the contrary or otherwise supports his argument.[13]

15

16   _____

     [12]  Civil Code §1577 provides:

17          Mistake of Fact.  Mistake of fact is a mistake, not caused by the neglect of a
            legal duty on the part of the person making the mistake, and consisting in:

18
            1.  An unconscious ignorance or forgetfulness of a fact past or present, material to
19      the contract; or,

20          2.  Belief in the present existence of a thing material to the contract, which does not
        exist, or in the past existence of such a thing, which has not existed.

21   The second prong of the definition is wholly inapplicable, because Choudhury does not claim that
     at the time he signed the promissory note he believed in the existence of a "thing" which did not
22   then exist.

23   [13]  *Donovan v. RRL Corporation* (2001) 26 Cal.4th 261 (Deft.'s Memo. in Supp., pp. 10-11)
     concerns an automobile dealership that placed a newspaper advertisement stating the wrong price
24   for a Jaguar it was selling.  Had Choudhury committed a typographical error in the promissory note
     by adding a second "4" to the rate of interest he promised to pay – for example, "44%" rather than
25   "4%" – the case might have some relevance.  The holding in *Elsinore Union Elementary School
     District v. Kastorff* (1960) 54 Cal.2d 380, 384, is to the same effect; *i.e.,* under certain
26   circumstances, not relevant here, a court may grant relief to a party who consents to a written
     contract with a price term that the parties mistakenly agreed to.  In *Elsinore*, a contractor had made
27   an "honest error in compiling his bid."

28

1    **B.    The Amount Due On The Promissory Note As Of April 30, 2008, Is $1,404,170.**

2    Under the terms of the promissory note, Choudhury was obligated in January, 2006, to pay

3    Grewal $1,000,000 and interest at 4% "per annum" on this amount.  Greg Pinsonneault, a Senior

4    Associate at LitiNomics, Inc., has calculated the interest due, which he sets forth in his declaration.

5    Mr. Pinsonneault concludes that for each of the five years of the promissory note, interest is

6    calculated by applying the 4.0% rate to the amount due at the beginning of the year.  (Pinsonneault

7    decl., ¶ 7.)  Once interest is included on the amount owing, "the amount due Ms. Grewal upon

8    maturity of the promissory note on January 1, 2006, is $1,216,653."  (*Ibid.)*

9    Mr. Pinsonneault calculates that the effective rate of interest on the note is 6.62%.  (*Id.*, ¶ 9

10    & Ex. B.)  He applies this interest rate to the period from the date of maturity, January 1, 2006, to

11    April 30, 2008.  The amount of interest for this period, he demonstrates, is $187,517.  (*Id.*, ¶ 10 &

12    Ex. B.)

13    Mr. Pinsonneault adds these two amounts and concludes that the "total amount due Ms.

14    Grewal through April 30, 2008 is $1,404,170."  (*Ibid.*)  Grewal is entitled to judgment in this

15    amount as of April 30, 2008.

16    **C.    Grewal Is Entitled To Judgment On Her Common Count For Money Lent.**

17

18    All the evidence in this case points to the fact that the $880,000 wire transfer was a loan of

19    money.  The money was certainly not a gift.  And, Choudhury admitted at deposition that he was

20    not acting as an investment advisor when he received the funds.  (Choudhury Dep., 78:3-79:1.)

21    Choudhury did not segregate the funds into a trust account for Grewal, which a broker or other

22    money manager would be obligated to do, removing any question that the funds were an

23    "investment" that he was managing on Grewal's behalf.  As Choudhury put it, "The money was

24    sent to my personal account, so I was investing it *as if I was investing it*."  (Choudhury Dep., 78:3-

25    79:1; 80:10-25.)   That is to say, "investing it" as if the monies were his own, which is consistent

26    with what a borrower does when he or she borrows money.

27

28

In the declaration Choudhury submitted in support of his motion for summary judgment, he states he "intended to make every effort to repay whatever funds were transferred to me" (Choudhury decl., ¶ 3) and that "he fully intended to repay Plaintiff any amount she transferred to me." (*Id.* at ¶ 10.) The admission that Choudhury intended to "repay" the $880,000 is indisputable evidence that the money was a loan.

For these reasons, Grewal is entitled to judgment on the third claim of the First Amended Complaint in the amount of $880,000 plus interest on this amount at a reasonable rate for the period from December 13, 2000, to the date of judgment. A reasonable rate of interest would be the effective interest rate Choudhury agreed to when he executed the promissory note – *i.e.,* 6.62%. (See Pinsonneault decl., ¶ 9 & Ex. B.)

## CONCLUSION

For all the foregoing reasons, plaintiff, Elizabeth Grewal, respectfully requests that the Court enter judgment on the second claim in the First Amended Complaint, which seeks enforcement of the promissory note executed by defendant, Amit Choudhury, and on the third claim in the First Amended Complaint, the common count for money lent.

Dated: April 18, 2008                    KASTNER | BANCHERO LLP


By: _____/S/_____
        E. Jeffrey Banchero
        Scott R. Raber

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL