# Exhibit C

*Corrected*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| ELIZABETH GREWAL, an | ) |
| individual, | ) |
| | ) |
| Plaintiff, | ) |
| | )Case No. |
| vs. | )C-07-4218 CRB |
| | ) |
| AMIT CHOUDHURY, an | ) |
| individual; AMISIL HOLDINGS, | ) |
| LTD, a Cyprus corporation; and | ) CERTIFIED COPY |
| DOES ONE to FORTY, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| AND RELATED COUNTER CLAIM | ) |
| _____ | ) |

VIDEOTAPED DEPOSITION OF

ELIZABETH GREWAL

Friday, January 11, 2008

REPORTED BY: SHERRI STARR, CSR# 10245 (01-404617)

ELIZABETH GREWAL        January 11, 2008

```
 1                        --oOo--
 2              Deposition of ELIZABETH GREWAL, taken by
 3      the Defendants at the law office of Reed Smith LLP,
 4      Two Embarcadero Center, Suite 2000, San Francisco,
 5      California, commencing at 10:10 a.m., on Friday,
 6      January 11, 2008, before SHERRI STARR, RPR, CRR; CSR
 7      10245, pursuant to Notice.
 8                        --oOo--
 9
10                  A P P E A R A N C E S
11
12      FOR THE PLAINTIFF:
13              KASTNER BANCHERO LLP
                20 California Street, 7th Floor
14              San Francisco, CA 94111
                (415)398-7000
15              By:  E. JEFFREY BANCHERO, Attorney at Law
16
17      FOR THE DEFENDANTS:
18              REED SMITH LLP
                Two Embarcadero Center, Suite 2000
19              San Francisco, CA 94111
                (415)543-8700
20              By:  HARVEY L. LEIDERMAN, Attorney at Law
21
        VIDEOGRAPHER:
22              Robert Bazydlo
                Robb Mueller
23
24      ALSO PRESENT:
                AMIT CHOUDHURY
25
```

5

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 10:59:28 | 1 | MR. LEIDERMAN:  Q.  No, the question was |
| 10:59:29 | 2 | when were you told -- |
| 10:59:32 | 3 | MR. BANCHERO:  The question may have been |
| 10:59:33 | 4 | ambiguous, go ahead and rephrase it. |
| 10:59:35 | 5 | MR. LEIDERMAN:  The question was fine |
| 10:59:36 | 6 | but -- |
| 10:59:37 | 7 | MR. BANCHERO:  No, the question was "Which |
| 10:59:42 | 8 | was when," and that is ambiguous, so why don't you |
| 10:59:45 | 9 | rephrase the question. |
| 10:59:46 | 10 | MR. LEIDERMAN:  Q.  When were you told the |
| 10:59:48 | 11 | company ran out of money? |
| 10:59:52 | 12 | A.  In March of 2001, the CFO took me aside |
| 10:59:56 | 13 | and said everyone had to go to minimum wage, that |
| 11:00:00 | 14 | Amit had made a bad bet on Siebel in the stock |
| 11:00:04 | 15 | market. |
| 11:00:04 | 16 | Q.  Okay. |
| 11:00:05 | 17 | A.  And then in September 2001, I believe my |
| 11:00:07 | 18 | employment ended after being at minimum wage for six |
| 11:00:11 | 19 | months. |
| 11:00:12 | 20 | Q.  So you hadn't been on minimum wage before |
| 11:00:15 | 21 | then, I take it? |
| 11:00:16 | 22 | A.  Ever. |
| 11:00:16 | 23 | Q.  I mean at Finexa? |
| 11:00:18 | 24 | A.  No. |
| 11:00:19 | 25 | Q.  Right.  So your last employment at Finexa |

50

13:54:05    1    only difference is that our office stamped the

13:54:08    2    confidential stamp with the exclamation point on it.

13:54:16    3    It is a good copy in color of the original document.

13:54:21    4         MR. LEIDERMAN:  Where's the original now?

13:54:23    5         MR. BANCHERO:  I'm not sure.  I'm not sure

13:54:28    6    where it is.  We looked for it at our office and

13:54:31    7    didn't find it.  So it's either in our office where

13:54:35    8    we couldn't find it or in Ms. Grewal's possession.

13:54:39    9    It's been maintained, we're just not sure where.

13:54:42    10        MR. LEIDERMAN:  All right.  Then we've

13:54:44    11   marked that as 12-A as a color copy of Exhibit 12

13:54:49    12   that was marked yesterday.

13:54:56    13        Q.   Ms. Grewal, have you received regular

13:55:00    14   monthly statements relating to this account that's

13:55:03    15   shown on Exhibit 12-A since April of 2000 up to the

13:55:07    16   current time?

13:55:07    17        A.   Yes, I believe so.

13:55:09    18        Q.   And do you retain those in your

13:55:10    19   possession?

13:55:11    20        A.   Yes.

13:55:11    21        Q.   All of them --

13:55:12    22        A.   Yes.

13:55:12    23        Q.   -- that you've received?  All right.

13:55:14    24   Thank you.

13:55:17    25        Did you take any other notes during the

113

ELIZABETH GREWAL        January 1, 2008

| | | |
|---|---|---|
| 15:32:42 | 1 | allege in paragraph 10 of the complaint.  And I'd |
| 15:32:44 | 2 | like to know how it came about that the three of you |
| 15:32:47 | 3 | ended up at dinner that evening. |
| 15:32:53 | 4 | A.   First of all, you say "allege." |
| 15:32:55 | 5 | Q.   That's an allegation when it's in a |
| 15:32:58 | 6 | document like this. |
| 15:32:59 | 7 | A.   I have my Visa statement from that dinner. |
| 15:33:04 | 8 | MR. BANCHERO:  Don't argue with |
| 15:33:05 | 9 | Mr. Leiderman.  Try to answer his question. |
| 15:33:08 | 10 | THE WITNESS:  I wanted to correct when he |
| 15:33:10 | 11 | said "allege." |
| 15:33:11 | 12 | MR. BANCHERO:  It's a term of art, meaning |
| 15:33:13 | 13 | a statement of a complaint.  So don't get caught up |
| 15:33:16 | 14 | in that. |
| 15:33:17 | 15 | THE WITNESS:  Sorry.  What's your |
| 15:33:18 | 16 | question? |
| 15:33:18 | 17 | MR. LEIDERMAN:  Q.  How did it come about |
| 15:33:20 | 18 | that the three of you found yourself in this |
| 15:33:22 | 19 | restaurant on that particular evening? |
| 15:33:25 | 20 | A.   As I recall Amit wanted to give us a |
| 15:33:28 | 21 | pitch. |
| 15:33:29 | 22 | Q.   What else do you recall? |
| 15:33:45 | 23 | A.   How do you want me to answer this in -- |
| 15:33:50 | 24 | Q.   I want you to tell me what you recall. |
| 15:33:52 | 25 | A.   What parts do you want me to discuss? |

**Merrill Legal Solutions**
**(800) 869-9132**

LIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 15:35:44 | 1 | A.    I don't recall a fight. |
| 15:35:46 | 2 | Q.    Was there an attempt to share the bill? |
| 15:35:49 | 3 | A.    I don't recall. |
| 15:35:50 | 4 | Q.    What do you recall about that dinner |
| 15:35:52 | 5 | meeting conversation that took place? |
| 15:35:56 | 6 | A.    I recall that Amit said that he was here |
| 15:36:01 | 7 | in this country on an investor visa, and therefore |
| 15:36:05 | 8 | that he could legally put money offshore, outside |
| 15:36:10 | 9 | the country.  And he said that if I loaned him |
| 15:36:14 | 10 | money, the interest could come back tax-free because |
| 15:36:17 | 11 | he said that there were tax treaties amongst |
| 15:36:20 | 12 | different countries such that individuals in those |
| 15:36:23 | 13 | countries who were non-US citizens could gift money |
| 15:36:27 | 14 | legally back into the country tax-free. |
| 15:36:32 | 15 | Q.    And was this of interest to you? |
| 15:36:37 | 16 | A.    We asked him lots of questions about it, I |
| 15:36:39 | 17 | remember.  And I remember he said, kind of |
| 15:36:41 | 18 | offhandedly, "It's not worth doing if you don't do |
| 15:36:45 | 19 | about a million." |
| 15:36:47 | 20 | Q.    And were you interested in that? |
| 15:36:50 | 21 | A.    We asked a lot of questions. |
| 15:36:52 | 22 | Q.    Uh-huh.  What did you think about that |
| 15:36:56 | 23 | when you heard it? |
| 15:36:58 | 24 | A.    I don't know what I thought at the time. |
| 15:37:07 | 25 | Q.    And you believe he was asking you |

186

| | | |
|---|---|---|
| 15:37:11 | 1 | personally for money for himself? |
| 15:37:17 | 2 | A.    I don't know what he was going to do with |
| 15:37:18 | 3 | it.  He characterized that it would go offshore and |
| 15:37:22 | 4 | that it was perfectly legal, that he had these |
| 15:37:24 | 5 | different entities set up, and he said that he was |
| 15:37:28 | 6 | here on an investor visa. |
| 15:37:30 | 7 | Q.    Based on your experience with him up to |
| 15:37:33 | 8 | that point, did you believe him about all these |
| 15:37:38 | 9 | entities that you say he said were set up? |
| 15:37:40 | 10 | A.    I trusted him and I asked him many |
| 15:37:43 | 11 | questions. |
| 15:37:43 | 12 | Q.    What kind of questions? |
| 15:37:44 | 13 | A.    I don't recall. |
| 15:37:46 | 14 | Q.    But you recall you asked him many |
| 15:37:48 | 15 | questions, but you don't recall any of them? |
| 15:37:50 | 16 | A.    Not the specific questions, no.  I'm sure |
| 15:37:53 | 17 | I asked.  He never told me which countries |
| 15:37:56 | 18 | specifically any of the entities were in. |
| 15:37:58 | 19 | I remember another time him saying that he |
| 15:38:01 | 20 | spent about $100,000 and a lot of time with lawyers |
| 15:38:05 | 21 | setting up different entities in different countries |
| 15:38:09 | 22 | such that money could go legally from Country A to |
| 15:38:13 | 23 | Country B, Country B to Country C, Country C to |
| 15:38:16 | 24 | Country D, back to Country A.  Approximately |
| 15:38:21 | 25 | something like that. |

187

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 15:38:21 | 1 | Q. That wasn't part of the discussion at this |
| 15:38:23 | 2 | dinner that you discuss in paragraph 10 of the |
| 15:38:28 | 3 | complaint though, was it? |
| 15:38:29 | 4 | A. I believe that particular description was |
| 15:38:30 | 5 | a different time. |
| 15:38:32 | 6 | Q. So Mr. Choudhury was pitching what, as you |
| 15:38:38 | 7 | understood it? |
| 15:38:43 | 8 | A. What I just described. |
| 15:38:44 | 9 | Q. That you would give him money and he would |
| 15:38:47 | 10 | do what with it? |
| 15:38:52 | 11 | A. It sounded like he would legally invest it |
| 15:38:55 | 12 | offshore, and I did not know what that would be. |
| 15:38:59 | 13 | Q. And would you ever see the money again? |
| 15:39:01 | 14 | A. Of course. That was my presumption or I |
| 15:39:03 | 15 | never would have loaned him money. |
| 15:39:06 | 16 | Q. I'm sorry, that was your presumption or he |
| 15:39:10 | 17 | said that? |
| 15:39:13 | 18 | A. As I recall, he said the loan would make |
| 15:39:17 | 19 | interest and that I would get the interest back |
| 15:39:20 | 20 | tax-free if I loaned him the money. |
| 15:39:23 | 21 | Q. And did he tell you what he was going to |
| 15:39:25 | 22 | do with the money? |
| 15:39:27 | 23 | A. I don't recall that he did, no. |
| 15:39:29 | 24 | Q. Tell me again just so I understand, how |
| 15:39:34 | 25 | was the interest to have worked, the gift back? |

188

ELIZABETH GREWAL      January 1, 2008

| | | |
|---|---|---|
| 15:56:40 | 1 | A.   That was the understanding. |
| 15:56:42 | 2 | Q.   Okay.  Without a ceiling on it, whatever |
| 15:56:45 | 3 | it was that he could earn on it, it would go to you |
| 15:56:48 | 4 | tax-free? |
| 15:56:49 | 5 | A.   That was how he characterized it. |
| 15:56:51 | 6 | Q.   Was that how you understood it? |
| 15:56:54 | 7 | A.   I believe so. |
| 15:56:56 | 8 | Q.   You wouldn't have done this if you didn't |
| 15:56:59 | 9 | understand it to your own satisfaction; is that |
| 15:57:01 | 10 | right? |
| 15:57:02 | 11 | A.   I certainly never would have done it if I |
| 15:57:05 | 12 | didn't think I would get all my money back plus the |
| 15:57:08 | 13 | interest. |
| 15:57:08 | 14 | Q.   Okay.  And whatever that interest was? |
| 15:57:11 | 15 | A.   Correct. |
| 15:57:14 | 16 | Q.   So at some point, you actually wired some |
| 15:57:16 | 17 | money to Mr. Choudhury, correct? |
| 15:57:20 | 18 | A.   Correct. |
| 15:57:20 | 19 | Q.   And you wired it from your Schwab account, |
| 15:57:23 | 20 | the one that we've seen in Exhibit 12-A; is that |
| 15:57:26 | 21 | right? |
| 15:57:27 | 22 | A.   Correct. |
| 15:57:27 | 23 | Q.   And how did you know where to wire the |
| 15:57:29 | 24 | money to? |
| 15:57:31 | 25 | A.   He gave me an account number and the |

201

ELIZABETH GREWAL      January 1, 2008

| | | |
|---|---|---|
| 15:57:34 | 1 | instructions. |
| 15:57:37 | 2 | Q.    Okay.   You wired $880,000; is that |
| 15:57:40 | 3 | correct? |
| 15:57:41 | 4 | A.    Correct. |
| 15:57:43 | 5 | Q.    That wasn't a million dollars? |
| 15:57:45 | 6 | A.    No. |
| 15:57:45 | 7 | Q.    Why? |
| 15:57:49 | 8 | A.    That's what I came up with, 880.  He asked |
| 15:57:53 | 9 | for a million.  I sold California muni bonds, that's |
| 15:57:57 | 10 | how much I came up with.  And I told him that's how |
| 15:58:00 | 11 | much he was getting before I wired him the money. |
| 15:58:03 | 12 | Q.    What happened to the part at dinner, that, |
| 15:58:05 | 13 | you know, if you weren't going to do a million |
| 15:58:06 | 14 | dollars it wasn't worth doing? |
| 15:58:09 | 15 | MR. BANCHERO:  Objection.  Vague. |
| 15:58:12 | 16 | THE WITNESS:  What do you mean, "What |
| 15:58:13 | 17 | happened?" |
| 15:58:14 | 18 | MR. LEIDERMAN:  Q.  Well, he told you that |
| 15:58:17 | 19 | it wasn't worth doing for less than a million |
| 15:58:20 | 20 | dollars at dinner.  That's what you said, right? |
| 15:58:22 | 21 | A.    I believe that's what I said a moment ago. |
| 15:58:26 | 22 | Q.    Right.  Okay.  And you knew that when you |
| 15:58:29 | 23 | wired $880,000, right?  You hadn't forgotten about |
| 15:58:33 | 24 | that, had you? |
| 15:58:35 | 25 | A.    I knew that's what he asked for. |

202

| | | |
|---|---|---|
| 16:03:46 | 1 | had called someone, there's a |
| 16:03:46 | 2 | name on the exhibit, and I |
| 16:03:46 | 3 | don't know which brokerage firm |
| 16:03:46 | 4 | he was with, presumably one of |
| 16:03:46 | 5 | the ones where I owned |
| 16:03:46 | 6 | California muni bonds.  And I |
| 16:03:46 | 7 | had asked him to rank the |
| 16:03:46 | 8 | quality of the muni bonds, |
| 16:03:46 | 9 | which ones to keep and which |
| 16:03:46 | 10 | ones to sell.  And I think |
| 16:03:46 | 11 | based on that, I sold.  And I |
| 16:03:46 | 12 | didn't sell any more, I |
| 16:03:46 | 13 | stopped.") |
| 16:03:49 | 14 | MR. LEIDERMAN:  Q.  Okay.  Did you tell |
| 16:03:51 | 15 | this broker what you were doing with the money? |
| 16:03:55 | 16 | A.  I don't recall.  I don't think so. |
| 16:04:08 | 17 | MR. LEIDERMAN:  Did -- let's look at 007. |
| 16:04:25 | 18 | Let's mark this next in order. |
| 16:04:35 | 19 | (Whereupon Exhibit 49 was |
| 16:04:35 | 20 | marked for identification.) |
| 16:04:35 | 21 | MR. LEIDERMAN:  Q.  Let me show you what |
| 16:04:36 | 22 | we've marked as Exhibit 49, a one-page document on |
| 16:04:40 | 23 | the letterhead of Charles Schwab addressed to |
| 16:04:44 | 24 | Elizabeth Eilert Trustee, Elizabeth Eilert Trust |
| 16:04:50 | 25 | regarding Account Number MP 30730366. |

206

ELIZABETH GREWAL    January 1, 2008

| Time | Line | Text |
|---|---|---|
| 16:04:55 | 1 | Do you recognize this document that was |
| 16:04:57 | 2 | produced to us by your counsel? |
| 16:04:59 | 3 | A.    Yes. |
| 16:04:59 | 4 | Q.    Was this a confirmation of the wire |
| 16:05:02 | 5 | transfer of the $880,000 that you've testified |
| 16:05:05 | 6 | about? |
| 16:05:08 | 7 | A.    Yes. |
| 16:05:09 | 8 | Q.    Was that the name on the account from |
| 16:05:11 | 9 | which these funds came from? |
| 16:05:12 | 10 | A.    Yes. |
| 16:05:18 | 11 | Q.    This was not in your married name, right? |
| 16:05:20 | 12 | Your trust, Elizabeth Eilert, it was not the |
| 16:05:24 | 13 | Elizabeth Eilert Grewal trust? |
| 16:05:27 | 14 | A.    Correct. |
| 16:05:34 | 15 | Q.    So this confirms that that money was wired |
| 16:05:37 | 16 | on December 13th, 2000.  So sometime between |
| 16:05:43 | 17 | September 1 where you allege in the complaint that |
| 16:05:46 | 18 | you had this dinner discussion, and December 13th |
| 16:05:51 | 19 | when you actually wired the money, did you have any |
| 16:05:54 | 20 | further discussions with Mr. Choudhury about the |
| 16:05:57 | 21 | transaction? |
| 16:05:58 | 22 | A.    I'm sure. |
| 16:06:00 | 23 | Q.    Do you recall or you're just guessing at |
| 16:06:02 | 24 | that? |
| 16:06:03 | 25 | A.    I worked with him nearly every day.  I saw |

207

LIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:06:07 | 1 | him frequently.  I don't recall what discussions |
| 16:06:13 | 2 | happened when. |
| 16:06:15 | 3 | Q.  Do you recall any discussion between |
| 16:06:17 | 4 | September 1 and December 13 with Mr. Choudhury about |
| 16:06:20 | 5 | this transaction? |
| 16:06:29 | 6 | MR. BANCHERO:  Let me ask a question:  Is |
| 16:06:30 | 7 | the question do you recall that discussions were |
| 16:06:34 | 8 | had, or are you asking her to testify to whatever |
| 16:06:38 | 9 | recollection she has of the substance of the words |
| 16:06:41 | 10 | of those? |
| 16:06:43 | 11 | MR. LEIDERMAN:  Q.  I'm asking you to -- |
| 16:06:43 | 12 | whether you recall whether there was, in fact, any |
| 16:06:47 | 13 | discussion with Mr. Choudhury between September 1 of |
| 16:06:51 | 14 | 2000 and December 13th of 2000 regarding this |
| 16:06:55 | 15 | transaction. |
| 16:06:59 | 16 | A.  I believe I asked him more questions. |
| 16:07:04 | 17 | Q.  You have a specific recollection of having |
| 16:07:07 | 18 | done that?  I mean to distinguish that from your |
| 16:07:14 | 19 | thinking, "Well, that would have been what I would |
| 16:07:16 | 20 | have done," or something like that. |
| 16:07:17 | 21 | A.  Oh, no, I remember telling him 880 is |
| 16:07:20 | 22 | coming over. |
| 16:07:22 | 23 | Q.  When did you tell him that? |
| 16:07:27 | 24 | A.  Probably not long before the money was |
| 16:07:30 | 25 | wired.  I said something to the effect that, "This |

208

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:07:37 | 1 | is how much I came up with.  This is what you're |
| 16:07:39 | 2 | getting and that's all." |
| 16:07:47 | 3 | Q.    Did he say anything in response to that? |
| 16:07:49 | 4 | A.    I don't recall. |
| 16:07:51 | 5 | Q.    And you don't recall when that |
| 16:07:53 | 6 | conversation took place?  Other than that it was |
| 16:07:57 | 7 | sometime -- was it shortly before December 13th of |
| 16:08:01 | 8 | 2000? |
| 16:08:04 | 9 | A.    I think so because there's a date on my |
| 16:08:08 | 10 | list of muni bonds with the person's name on it who |
| 16:08:12 | 11 | I called to discuss them, who ranked them for me. |
| 16:08:15 | 12 | And I believe that date is very early in December of |
| 16:08:21 | 13 | 2000. |
| 16:08:23 | 14 | MR. LEIDERMAN:  Counsel, many of the |
| 16:08:25 | 15 | documents, handwritten documents that were produced |
| 16:08:27 | 16 | to us were entirely illegible and we requested that |
| 16:08:30 | 17 | you bring those with you today.  Did you bring the |
| 16:08:33 | 18 | originals of those with you today so we could take a |
| 16:08:36 | 19 | look and see if perhaps what the witness is |
| 16:08:39 | 20 | testifying about is contained in those documents? |
| 16:09:00 | 21 | MR. BANCHERO:  Yes, we brought the |
| 16:09:02 | 22 | originals of those that your colleague, Mr. Reidy, |
| 16:09:06 | 23 | requested that we bring. |
| 16:09:08 | 24 | MR. LEIDERMAN:  May I see those at this |
| 16:09:09 | 25 | time? |

209

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:37:57 | 1 | MR. LEIDERMAN:  Let's have marked, please, |
| 16:37:58 | 2 | as exhibit next in order, 50.  Two pages that are |
| 16:38:05 | 3 | stamped 100010 and -09. |
| 16:38:11 | 4 | (Whereupon Exhibit 50 was |
| 16:38:11 | 5 | marked for identification.) |
| 16:38:22 | 6 | MR. LEIDERMAN:  Q.  And I'll hand Exhibit |
| 16:38:24 | 7 | 50 to you and ask you if you're familiar with those |
| 16:38:28 | 8 | documents that were produced to us by your counsel |
| 16:38:31 | 9 | and numbers stamped in that fashion. |
| 16:38:39 | 10 | A.    Yes. |
| 16:38:39 | 11 | Q.    Does that appear to be true copies of |
| 16:38:42 | 12 | excerpts from the statement on the account from |
| 16:38:46 | 13 | which you transferred $880,000 in December of 2000? |
| 16:38:52 | 14 | A.    Yes. |
| 16:38:53 | 15 | Q.    Do you have the original in your |
| 16:38:55 | 16 | possession of at least these two pages? |
| 16:38:59 | 17 | A.    Yes. |
| 16:38:59 | 18 | Q.    Do you have the rest of the pages that |
| 16:39:01 | 19 | came with the statement? |
| 16:39:02 | 20 | A.    I believe so, yes. |
| 16:39:05 | 21 | Q.    Would you turn to the second page here, |
| 16:39:07 | 22 | 10009?  Do you see in the middle of that page, it |
| 16:39:12 | 23 | says, "Total investments and purchases sold"? |
| 16:39:16 | 24 | A.    Yes. |
| 16:39:17 | 25 | Q.    And this is the statement period of |

218

| | | |
|---|---|---|
| 16:47:44 | 1 | transfer. |
| 16:47:45 | 2 | Q.   Okay.   What evidence did you have in |
| 16:47:48 | 3 | writing -- |
| 16:47:49 | 4 | A.   I'm sorry, and my Schwab statement that we |
| 16:47:51 | 5 | just looked at. |
| 16:47:53 | 6 | Q.   Did you have -- up until the time that you |
| 16:47:55 | 7 | received Exhibit A, the Term Promissory Note, did |
| 16:47:58 | 8 | you have anything in writing to evidence whatever |
| 16:48:02 | 9 | the terms of the transaction was between you and |
| 16:48:07 | 10 | Mr. Choudhury? |
| 16:48:08 | 11 | A.   No. |
| 16:48:08 | 12 | Q.   Did you ask for anything in writing? |
| 16:48:11 | 13 | A.   Repeatedly. |
| 16:48:13 | 14 | Q.   But you had nothing? |
| 16:48:14 | 15 | A.   No. |
| 16:48:14 | 16 | Q.   And when you wired the money you had |
| 16:48:18 | 17 | nothing? |
| 16:48:18 | 18 | A.   I was given nothing. |
| 16:48:20 | 19 | Q.   Okay.   And you didn't create anything? |
| 16:48:22 | 20 | A.   I did not. |
| 16:48:26 | 21 | Q.   When you wired the money, what was your |
| 16:48:30 | 22 | understanding of what obligation Mr. Choudhury had |
| 16:48:36 | 23 | to you, if any? |
| 16:48:42 | 24 | A.   If any? |
| 16:48:43 | 25 | Q.   Yes. |

225

ELIZABETH GREWAL    January 1, 2008

16:49:50    1        Q.    Other than what you've just told me, were

16:49:52    2    there any other terms of this transaction and

16:49:56    3    Mr. Choudhury's obligations to you, as you

16:49:59    4    understood them, when you transferred the money to

16:50:02    5    him on December 13th?

16:50:08    6        A.    Not that I can recall.

16:50:10    7        Q.    Well, do you have anything in writing to

16:50:13    8    indicate -- if you can't recall, anything to

16:50:18    9    indicate what the terms of that transaction were

16:50:21    10    when you wire-transferred the money?

16:50:23    11        A.    I repeatedly asked for a promissory note

16:50:26    12    and was not given one.

16:50:28    13        Q.    I understand.  I'm asking you now do you

16:50:31    14    have anything in writing, handwritten notes, for

16:50:34    15    example, or a confirmation from anyone else or a

16:50:39    16    representation written by somebody else or a letter

16:50:42    17    or any kind of writing, an e-mail, for example,

16:50:47    18    anything at the time you wire-transferred the money

16:50:53    19    to evidence the terms of Mr. Choudhury's obligations

16:50:57    20    to you?

16:50:59    21        A.    No, I don't think so.

16:51:11    22        Q.    Did you know at the time that you

16:51:15    23    wire-transferred the money that you were

16:51:17    24    wire-transferring the money to Mr. Choudhury's

16:51:20    25    account?

227

LIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:51:22 | 1 | A.   I believe I did, yes. |
| 16:51:34 | 2 | Q.   Was your understanding that 4 percent was |
| 16:51:39 | 3 | the minimum amount of interest or income that you |
| 16:51:45 | 4 | would receive from the wiring him this money? |
| 16:51:49 | 5 | A.   Yes. |
| 16:51:52 | 6 | Q.   And was that 4 percent simple interest? |
| 16:51:55 | 7 | Compounded?  What was your understanding? |
| 16:51:59 | 8 | A.   My understanding was compound because in |
| 16:52:02 | 9 | working with Amit, as I recall, I remember talking |
| 16:52:06 | 10 | about compound interest all the time. |
| 16:52:10 | 11 | Q.   And did you discuss that specific term |
| 16:52:12 | 12 | with him relative to this wire of money? |
| 16:52:16 | 13 | A.   I do not recall. |
| 16:52:17 | 14 | Q.   And you have nothing in writing to |
| 16:52:20 | 15 | indicate one way or the other? |
| 16:52:21 | 16 | A.   No, I do not. |
| 16:52:29 | 17 | Q.   You understood that you were not going to |
| 16:52:31 | 18 | receive anything for five years, that was the idea? |
| 16:52:38 | 19 | A.   Correct. |
| 16:52:47 | 20 | Q.   Now, I'm sorry, you said you received the |
| 16:52:50 | 21 | original of the Term Promissory Note that's Exhibit |
| 16:52:53 | 22 | A, to the first amended complaint sometime in |
| 16:52:59 | 23 | mid-January? |
| 16:53:00 | 24 | A.   Correct, that is my memory. |
| 16:53:02 | 25 | Q.   Do you recall the circumstances at which |

228

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:53:03 | 1 | that came into your possession? |
| 16:53:05 | 2 | A.   Yes. |
| 16:53:05 | 3 | Q.   Tell me about that. |
| 16:53:06 | 4 | A.   I believe we were in Mr. Choudhury's |
| 16:53:09 | 5 | office, Amit's office on Van Ness.  I think he was |
| 16:53:15 | 6 | sitting behind his desk and I was over here on the |
| 16:53:19 | 7 | other side. |
| 16:53:19 | 8 | Q.   What did you discuss? |
| 16:53:21 | 9 | A.   I had been asking for a promissory note |
| 16:53:25 | 10 | for quite some time and this is what he gave me. |
| 16:53:33 | 11 | Q.   Okay.  Did you look at it then? |
| 16:53:35 | 12 | A.   Yes. |
| 16:53:35 | 13 | Q.   Did you read it? |
| 16:53:36 | 14 | A.   Yes. |
| 16:53:36 | 15 | Q.   Do you think you understood it? |
| 16:53:39 | 16 | A.   Yes. |
| 16:53:40 | 17 | Q.   Did you see it said -- it referred to the |
| 16:53:44 | 18 | sum of a million dollars? |
| 16:53:45 | 19 | A.   Yes. |
| 16:53:45 | 20 | Q.   Did you say anything about that? |
| 16:53:47 | 21 | A.   Yes. |
| 16:53:47 | 22 | Q.   What did you say? |
| 16:53:48 | 23 | A.   I asked him, "Why does it say a million?" |
| 16:53:51 | 24 | Q.   Yes.  What did he say? |
| 16:53:52 | 25 | A.   He said he prepared this before the money |

229

ELIZABETH GREWAL    January 1, 2008

| | | |
|---|---|---|
| 16:53:58 | 1 | came over on December 13th.  And I said, "Then why |
| 16:54:03 | 2 | is this dated January 2nd?" |
| 16:54:05 | 3 | Q.    And he said? |
| 16:54:06 | 4 | A.    He kept maintaining that he had prepared |
| 16:54:09 | 5 | it before the money came over. |
| 16:54:13 | 6 | Q.    Did you want to accept this with a million |
| 16:54:15 | 7 | dollars on it? |
| 16:54:18 | 8 | A.    This is all he gave me. |
| 16:54:23 | 9 | Q.    Well, you signed it, correct? |
| 16:54:29 | 10 | A.    Correct. |
| 16:54:29 | 11 | Q.    Why did you accept a note for money that |
| 16:54:31 | 12 | you hadn't transferred to him? |
| 16:54:34 | 13 | A.    This is all he was willing to give me. |
| 16:54:36 | 14 | Q.    You didn't say to him, "Why didn't you |
| 16:54:39 | 15 | change this and make it $880,000?" |
| 16:54:42 | 16 | A.    I asked him repeatedly why he wrote it |
| 16:54:45 | 17 | this way and he continued to give the same answer. |
| 16:54:49 | 18 | Q.    And then after you got this note, did you |
| 16:54:51 | 19 | think to yourself, "Wow, I'm going to get a million |
| 16:54:54 | 20 | dollars plus interest"? |
| 16:54:56 | 21 | A.    Absolutely. |
| 16:54:56 | 22 | Q.    Do you think you were entitled to that? |
| 16:54:59 | 23 | A.    That's what he put on the note. |
| 16:55:02 | 24 | Q.    What did you give in exchange for the |
| 16:55:05 | 25 | additional $120,000 that was being promised to you |

230

LIZABETH GREWAL    January 11, 2008

| | | |
|---|---|---|
| 16:55:11 | 1 | in this note, if it was being promised? |
| 16:55:14 | 2 | A.    I do not know why he wrote it this way. |
| 16:55:16 | 3 | This is how he wrote it.    This was my expectation of |
| 16:55:19 | 4 | what I would receive. |
| 16:55:21 | 5 | Q.    You thought this was a legal document? |
| 16:55:23 | 6 | MR. BANCHERO:   Objection.   Argumentative. |
| 16:55:24 | 7 | MR. LEIDERMAN:   It's not argumentative. |
| 16:55:25 | 8 | Q.    I'm asking you did you think this was a |
| 16:55:28 | 9 | legal document? |
| 16:55:29 | 10 | MR. BANCHERO:   That's a vague, |
| 16:55:29 | 11 | argumentative question. |
| 16:55:31 | 12 | MR. LEIDERMAN:   Q.   You may answer. |
| 16:55:32 | 13 | MR. BANCHERO:   Mr. Leiderman is not |
| 16:55:33 | 14 | permitted to stop me from making my objections. |
| 16:55:37 | 15 | Objection.   The question is vague.   It's |
| 16:55:40 | 16 | unintelligible.   What is a legal document? |
| 16:55:44 | 17 | MR. LEIDERMAN:   Q.   You may answer. |
| 16:55:46 | 18 | A.    I asked him.   He said he had a lawyer look |
| 16:55:51 | 19 | at it.   I don't have the name of the lawyer. |
| 16:55:55 | 20 | Q.    Okay.   I'm asking you did you believe that |
| 16:55:58 | 21 | Exhibit A, this Term Promissory Note, was a legal |
| 16:56:02 | 22 | document? |
| 16:56:02 | 23 | MR. BANCHERO:   Objection.   Argumentative. |
| 16:56:03 | 24 | Vague.   Calls for a legal conclusion.   She's already |
| 16:56:11 | 25 | answered. |

231

17:23:41    1              MR. LEIDERMAN:   Q.  I'll hand you Exhibit

17:23:42    2    55 and ask you whether that document, at least the

17:23:44    3    original of that document, is in your handwriting?

17:23:47    4              A.   Yes.

17:23:49    5              Q.   All of it?

17:23:55    6              A.   The handwriting, yes.  Not the stamps

17:23:58    7    obviously.

17:23:59    8              Q.   Do you know who put the stamps on it?

17:24:01    9              A.   No, I presume someone at Kastner Banchero.

17:24:05    10             Q.   When did you write this document?

17:24:11    11             A.   I don't recall when I wrote the note, but

17:24:13    12   this actual document in the book was sometime last

17:24:16    13   summer.

17:24:21    14             Q.   Summer of 2007?

17:24:22    15             A.   Correct.

17:24:23    16             Q.   When you say "in the book," what book are

17:24:26    17   you referring to?

17:24:27    18             A.   There's a small, I think they were called

17:24:31    19   cash books, a hardback lined book in which I had --

17:24:38    20   some years before that -- put my municipal bonds in,

17:24:42    21   the ones I owned separately from my mother.

17:24:46    22             Q.   When you say "put them in," you mean the

17:24:49    23   physical bonds themselves?

17:24:50    24             A.   I'm sorry, the record of what bonds I

17:24:53    25   owned, one per page, for example.

                                                                    250

1                    CERTIFICATE OF REPORTER

2              I, SHERRI STARR, a Certified Shorthand

3     Reporter, hereby certify that the witness in the

4     foregoing deposition was by me duly sworn to tell

5     the truth, the whole truth, and nothing but the

6     truth in the within-entitled cause;

7              That said deposition was taken in

8     shorthand by me, a disinterested person, at the time

9     and place therein stated, and that the testimony of

10    the said witness was thereafter reduced to

11    typewriting, by computer, under my direction and

12    supervision;

13             That before completion of the deposition,

14    review of the transcript [X] was [ ] was not

15    requested.  If requested, any changes made by the

16    deponent (and provided to the reporter) during the

17    period allowed are appended hereto.

18             I further certify that I am not of counsel

19    or attorney for either or any of the parties to the

20    said deposition, nor in any way interested in the

21    event of this cause, and that I am not related to

22    any of the parties thereto.  1/18/08

23             DATED:

24

25                    SHERRI STARR, CSR No. 10245