Depo Exh. 1



## THE PRIVATE BANK

EXHIBIT NO. ____
DATE: 1-10-08
WITNESS: Choudhury
COLLEEN REDAMONTI, CSR 7012

30-1
1
6

AMIT CHOUDHURY
2200 LEAVENWORTH #305
SAN FRANCISCO CA   94133

NOW ACCOUNT:       2241161

12/01/00 THRU 12/29/00
DOCUMENT COUNT:          7
PAGE     1

NOW ACCOUNT 2241161

| | | |
|---|---|---|
| IIMUM BALANCE | 6,983.33 | LAST STATEMENT 11/30/00    21,189.54 |
| : AVAILABLE BALANCE | 465,963.42 | 8 CREDITS     1,148,732.25 |
| RAGE BALANCE | 465,970.31 | 17 DEBITS     1,129,815.19 |
| | | THIS STATEMENT 12/29/00    40,106.60 |

- - - - - - DEPOSITS - - - - - - - -

| #.....DATE......AMOUNT | REF #.....DATE......AMOUNT | REF #.....DATE......AMOUNT |
|---|---|---|
| 12/07         50.00 | | |

- - - - - OTHER CREDITS - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| EPHONE TRANSFER CREDIT | 12/01 | 6,216.48 |
| MBURSE ATM SURCHARGE | 12/08 | 1.50 |
| E TRANSFER CREDIT | 12/13 | 880,000.00 |
| EPHONE TRANSFER CREDIT | 12/15 | 12,000.00 |
| MBURSE ATM SURCHARGE | 12/22 | 1.50 |
| E TRANSFER CREDIT | 12/22 | 250,000.00 |
| EREST | 12/29 | 462.77 |

- - - - - - CHECKS - - - - - -

| CK #..DATE.....AMOUNT | CHECK #..DATE.....AMOUNT | CHECK #..DATE.....AMOUNT |
|---|---|---|
| 101*12/22    6,000.00 | 1373 12/19    90.00 | 1375*12/05    9,655.77 |
| 1371*12/05    3,000.00 | 1374 12/05    241.54 | 1932 12/05    3,601.50 |

INDICATES A GAP IN CHECK NUMBER SEQUENCE

- - - - - - OTHER DEBITS - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| SFER TO PRS NON-INTEREST ACCOUNT 2241162 | 12/01 | 79.00 |
| TRANSFER DEBIT-DOMESTIC | 12/01 | 4,000.00 |
| WITHDRAWAL FROM CHECKING 15135 PACIFIC PALISADES PAC ALISADES CA00003371710 | 12/04 | 301.50 |
| WITHDRAWAL FROM CHECKING 15135 PACIFIC PALISADES PAC ALISADES CA00003382204 | 12/04 | 401.50 |
| SFER TO PRS NON-INTEREST ACCOUNT 2241162 | 12/06 | 20.38 |
| IDRAWAL FROM CHECKING EMBARCADERO SAN FRANCISCO A00034018454600 | 12/06 | 121.50 |
| NNACLE PARTNERS | 12/15 | 3,000.00 |

* * * CONTINUED * * *
A MEMBER OF THE GREATER BAY BANCORP FAMILY

AC-001

PINE STREET · SAN FRANCISCO CA 94104 · TEL 415 421 9000

## Golden Gate Bank
### T H E   P R I V A T E   B A N K

AMIT CHOUDHURY
2200 LEAVENWORTH #305
SAN FRANCISCO CA   94133

30-1
1
6

NOW ACCOUNT:    2241161

12/01/00 THRU 12/29/00
DOCUMENT COUNT:         7
PAGE   2

==================================================================
NOW ACCOUNT 2241161
==================================================================
- - - - - - - - OTHER DEBITS - - - - - - - -

| SCRIPTION | DATE | AMOUNT |
|---|---|---|
| 1 WITHDRAWAL FROM CHECKING POLK-GREEN SAN FRANCISCO CA000035507070700 | 12/20 | 121.50 |
| EPHONE TRANSFER DEBIT | | |
| NSFER TO CD 209593 | 12/22 | 100,000.00 |
| 1 WITHDRAWAL FROM CHECKING LAX-TRML 7 DEPARTURES LOS ANGELES CA000036321295400 | 12/27 | 1000,000.00 |
| | 12/29 | 181.00 |

- - - - - - - - - - - I N T E R E S T - - - - - - - - -

| | | | |
|---|---|---|---|
| E LEDGER BALANCE: | 465,970.31 | INTEREST EARNED: | 462.77 |
| RAGE AVAILABLE BALANCE: | 465,963.42 | DAYS IN PERIOD: | 29 |
| EREST PAID THIS PERIOD: | 462.77 | ANNUAL PERCENTAGE YIELD EARNED: | 1.26% |
| EREST PAID 2000: | 647.70 | | |

- - - - - - - - DAILY BALANCE - - - - - - - -

| B..........BALANCE | DATE..........BALANCE | DATE..........BALANCE |
|---|---|---|
| 01      23,327.02 | 12/08        7,034.83 | 12/22    1,039,824.83 |
| 04      22,624.02 | 12/13      887,034.83 | 12/27       39,824.83 |
| 05       7,125.21 | 12/15      896,034.83 | 12/29       40,106.60 |
| 06       6,983.33 | 12/19      895,944.83 | |
| 07       7,033.33 | 12/20      895,922.32 | |

AC-002

Depo Exh. 2

12/28/2000  17:08 FAX 1 415 986 6083
12/08/2000  88:36     703   6188
12/22/2000  15:32 FAX 1 415 986 8083

GOLDEN GATE BANK
SILVERSPOON
GOLDEN GATE BANK

LOAN·SERVICE

☑004/009
PAGE  04
☑006

# PROMISSORY NOTE

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

| Borrower: | Finava, Inc.<br>2000 Van Ness Avenue #500<br>San Francisco, CA 94109 | Lender: | GOLDEN GATE BANK<br>344 PINE STREET<br>SAN FRANCISCO, CA 94104 |

**Principal Amount: $1,000,000.00**     **Interest Rate: 8.000%**     **Date of Note: December 21, 2000**

**PROMISE TO PAY.** Finava, Inc. ("Borrower") promises to pay to GOLDEN GATE BANK ("Lender"), in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest at the rate of 8.000% on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 30, 2001. In addition, Borrower will pay regular monthly payments of accrued unpaid interest beginning December 30, 2000, and all subsequent interest payments are due on the same day of each month after that. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $50.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, they will reduce the principal balance due.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promises Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (d) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of Borrower's property or any or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (f) Any guarantor dies or any of the other events described in the default section occurs with respect to any guarantor of this Note. (g) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (a) cures the default within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon Borrower's failure to pay all amounts declared due pursuant to this section, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the interest rate on this Note to 8.000 percentage points. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of California. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, the State of California. This Note shall be governed by and construed in accordance with the laws of the State of California.

**COLLATERAL.** This Note is secured by the Collateral as described in that certain Assignment of Deposit Account dated December 21, 2000.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. The following party or parties are authorized to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: Amar Choudhury, Chief Executive Officer. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including any daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (d) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

EXHIBIT NO.  2
DATE:  1-10-08
WITNESS  Choudhury
COLLEEN REDAMONTI, CSR 7012

AC-004

12/25/2000 17:08 FAX 1 415 986 6083
12/08/2000 08:36    78. 86100
12/22/2000 15:32 FAX 1 415 986 6083

GOLDEN GATE BANK
SILVERSPOON
GOLDEN GATE BANK

→ LOAN-SERVICE

⌐005/009
PAGE 05
⌐005!

12-21-2000
Loan No 5124

**PROMISSORY NOTE**
(Continued)

Page 2

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statutes of limitations, presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

BORROWER:

Fincos, Inc.

By: _____
    Amit Choudhury, Chief Executive Officer

Fixed Rate. Line of Credit.

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.28s (c) Concentrex 2000. All rights reserved. [CA-D20 E5.28 File Exase.LN]

AC-005

Depo Exh. 3

12/28/2000 17:08 FAX 1 415 986  33
12/08/2000  08:36    703938   8
12/22/2000 15:32 FAX 1 415 986 6083

GOLDEN GATE BANK
SILVERSPOON          LOAN-SERVICE          @006/009
GOLDEN GATE BANK                          PAGE  06
                                          @006

# ASSIGNMENT OF DEPOSIT ACCOUNT

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Borrower:  Finexa, Inc.                    Lender:   GOLDEN GATE BANK
           2000 Van Ness Avenue #404                 344 PINE STREET
           San Francisco, CA 94109                   SAN FRANCISCO, CA 94104

Grantor:   Amit Choudhury

**THIS ASSIGNMENT OF DEPOSIT ACCOUNT** is entered into among Finexa, Inc. (referred to below as "Borrower"); and Amit Choudhury (referred to below as "Grantor"); and GOLDEN GATE BANK (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Account.** The word "Account" means the deposit account described below in the definition for "Collateral."

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means each and every person or entity signing the Note, including without limitation Finexa, Inc.

**Collateral.** The word "Collateral" means the following described deposit account:

Certificate of Deposit #205593 issued by Lender in an account not less than $1,000,000.00

together with (a) all interest, whether now accrued or hereafter accruing; (b) all additional deposits hereafter made to the Account; (c) any and all proceeds from the Account; and (d) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all property of Grantor (however owned if owned by more than one person), in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

(a) All property to which Lender acquires title or documents of title.

(b) All property assigned to Lender.

(c) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(d) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

**Event of Default.** The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "Events of Default."

**Grantor.** The word "Grantor" means Amit Choudhury. Any Grantor who signs this Agreement, but does not sign the Note, is signing this Agreement only to grant a security interest in Grantor's interest in the Collateral to Lender and is not personally liable under the Note except as otherwise provided by contract or law (e.g., personal liability under a guaranty or as a surety).

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Grantor or Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means GOLDEN GATE BANK, its successors and assigns.

**Note.** The word "Note" means the note or credit agreement dated December 21, 2000, in the principal amount of $1,000,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (a) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (b) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (c) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Agreement is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Except as prohibited by applicable law, Grantor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Grantor; (c) proceed against any collateral for the



EXHIBIT NO. 3
DATE: 1-10-08
WITNESS: Choudhury
COLLEEN REDAMONTI, CSR 2012

AC-006

12-21-2000
Loan No 5124

# ASSIGNMENT OF DEPOSIT ACCOUNT
(Continued)

Page 2

Indebtedness, including Borrower's collateral, before proceeding against Grantor;  (d) apply any payments or proceeds received against the Indebtedness in any order;  (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale;  (f) disclose any information about the Indebtedness, the Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or  (g) pursue any remedy or course of action in Lender's power whatsoever.

Grantor also waives any and all rights or defenses arising by reason of  (h) any disability or other defense of Borrower, any other guarantor or surety or any other person;  (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness;  (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Grantor and Lender;  (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise;  (l) any statute of limitations in any action under this Agreement or on the Indebtedness; or  (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Grantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Grantor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

This waiver includes, without limitation, any loss of rights Grantor may suffer by reason of any rights or protections of Borrower in connection with any anti-deficiency laws, or other laws limiting or discharging the Indebtedness or Borrower's obligations (including, without limitation, Section 726, 580a, 580b, and 580d of the California Code of Civil Procedure). Grantor waives ... and which Grantor may have for any reason, which would affect or limit the amount of any recovery by Lender from Grantor following a nonjudicial sale or judicial foreclosure of any real or personal property security for the Indebtedness including, but not limited to, the right to any fair market value hearing pursuant to California Code of Civil Procedure Section 580a.

Grantor understands and agrees that the foregoing waivers are waivers of substantive rights and defenses to which Grantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Grantor acknowledges that Grantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Until all Indebtedness is paid in full, Grantor waives any right to enforce any remedy Lender may have against Borrower or any other guarantor, surety, or other person, and further, Grantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

If now or hereafter  (a) Borrower shall be or become insolvent, and  (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Grantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Grantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Grantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until  (a) there no longer is any Indebtedness owing to Lender;  (b) all other obligations secured by this Agreement have been fulfilled; and  (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Lender's option, will  (a) be payable on demand,  (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (i) the term of any applicable insurance policy or  (ii) the remaining term of the Note, or  (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility  (a) for the collection or protection of any income on the Collateral,  (b) for the preservation of rights against issuers of the Collateral or against third persons;  (c) for ascertaining any maturities, conversions, offers, tenders, or similar matters relating to the Collateral; nor  (d) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Default on Indebtedness.** Failure of Borrower to make any payment when due on the Indebtedness.

**Other Defaults.** Failure of Grantor or Borrower to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or failure of Borrower to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor or Borrower under this Agreement, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

12/28/2000   03 FAX 1 415 98   083
12/08/2000  08:36    703938C  3
12/22/2000 15:33 FAX 1 415 98  6083

GOLDEN GATE BANK
SILVERSPOON
GOLDEN GATE BANK

LOAN SERVICE         @008/009
PAGE   88
@008

12-21-2000                    **ASSIGNMENT OF DEPOSIT ACCOUNT**                    **Page 3**
Loan No 5124                          (Continued)

Insolvency. The dissolution or termination of Grantor or Borrower's existence as a going business, the insolvency of Grantor or Borrower, the appointment of a receiver for any part of Grantor or Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor or Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or Borrower or by any governmental agency against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Grantor or Borrower's deposit accounts with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor or Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor or Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Right to Cure. If any default, other than a Default on Indebtedness, is curable and if Grantor or Borrower has not been given a prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred) if Grantor or Borrower, after Lender sends written notice demanding cure of such default, (a) cures the default within fifteen (15) days; or (b), if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

Accelerate Indebtedness. Lender may declare all Indebtedness of Borrower _____ due and payable, without notice of any kind to Grantor or Borrower.

Application of Account Proceeds. Lender may obtain all funds in the Account from the issuer of the Account and apply them to the Indebtedness in the same manner as if the Account had been issued by Lender. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor or Borrower as the interests of Grantor or Borrower may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the California Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

Collect the Collateral. Lender may collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, may retain possession of the Collateral while suing on the Indebtedness.

Sell the Collateral. Lender may sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value, Lender shall give or mail to Grantor or Borrower, or any of them, notice at least ten (10) days in advance of the time and place of public sale, or of the date after which private sale may be made. Grantor and Borrower agree that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor or Borrower, or any of them, at the last address Grantor or Borrower has given Lender in writing. If public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in a newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

Register Securities. Lender may register any securities included in the Collateral in Lender's name and exercise any rights normally incident to the ownership of securities.

Sell Securities. Lender may sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws, notwithstanding any other provision of this or any other agreement. If, because of restrictions under such laws, Lender is or believes it is unable to sell the securities in an open market transaction, Grantor and Borrower agree that (a) Lender shall have no obligation to delay sale until the securities can be registered. (b) Lender may make a private sale to a single person or restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction, and (c) such a sale shall be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or state securities departments under state "Blue Sky" laws, or if Grantor or Borrower, or any of them (if more than one), is an affiliate of the issuer of the securities, Grantor and Borrower agree that neither _____ nor _____ _____ will neither sell nor dispose of any securities of such issuer without obtaining Lender's prior written consent.

Transfer Title. Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as its attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

Application of Proceeds. Lender may apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to (a) reimbursement of any expenses, including any costs of any securities registration, commissions incurred in connection with a sale, attorney fees as provided below and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral, and (b) to the payment of the Indebtedness of Borrower to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear.

Other Rights and Remedies. Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the California Uniform Commercial Code, at law, in equity, or otherwise.

Deficiency Judgment. If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Cumulative Remedies. All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor or Borrower under this Agreement, after Grantor or Borrower's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

Amendments. This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the

12/08/2000  00:36    703930F 3    GOLDEN GATE BANK ‑SERVICE    @009/009
                                   SILVERSPOON                  PAGE  09
12/22/2000 15:33 FAX 1 415 980 0083  GOLDEN GATE BANK           @009

12‑21‑2000
Loan No 5124

# ASSIGNMENT OF DEPOSIT ACCOUNT
## (Continued)

Page 4

party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of California. If there is a lawsuit, Grantor and Borrower agree upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**Attorneys' Fees; Expenses.** Grantor and Borrower agree to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Grantor and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor and Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Multiple Parties; Corporate Authority.** All obligations of Grantor and Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing, may be sent by telefacsimile (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor or Borrower, notice to any Grantor or Borrower will constitute notice to all Grantor and Borrowers. For notice purposes, Grantor and Borrower will keep Lender informed at all times of Grantor and Borrower's current address(es).

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

BORROWER AND GRANTOR ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 21, 2000.

BORROWER:

Finexa, Inc.

By: _Allison Ghury_
Amit Choudhury, Chief Executive Officer

GRANTOR:

x _Allison Ghury_
Amit Choudhury

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.04 (C) Concentrex 2000 All rights reserved. [CA-E80 E3.20 F3.20 FINEXA041.LN]

AC-009

Depo Exh. 4

# FINEXA INC.

561C PILGRIM DRIVE
FOSTER CITY, CA 94404
Phone: (650) 357-7389   Fax: (650) 357-1717

## FACSIMILIE

| | |
|---|---|
| To: _Brian Plotner_ | From: _Amit Choudhery_ |
| Fax: _415.986.6083_ | Pages: _1 of 2_ |
| Phone: | Date: _3/30/01_ |
| Re: | CC: |

☐ **Urgent**   ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply**   ☐ **Please Recycle**



EXHIBIT NO. _4_
DATE: _1-10-08_
WITNESS _Choudhury_
COLLEEN REDAMONTI, CSR 7012

The information on this facsimile transmission is private and confidential and the property of the sender. The information contained herein is privileged and is intended only for the use of the individual(s) or entities named above. If you have received this fax in error, please immediately notify us by telephone to arrange for its return to us (at our expense). If you are not the intended recipient, please be advised that any unauthorized disclosure, copying, distribution, or the taking of any action in reliance on the contents of this faxed information is strictly prohibited.

# FINEXA INC

2000 VAN NESS AVENUE, SUITE 500 • SAN FRANCISCO, CALIFORNIA 94109-3023 • TEL: 415.364.3705 • FAX: 415.364.3710

**AMIT CHOUDHURY**
*Chief Executive Officer*

March 30, 2001

Brian Plotner
Golden Gate Bank
344 Pine Street
San Francisco, CA 94104
Fax # 415.986.6083

Dear Brian,

Based on conversations with David Hayford, CFO of Finexa Inc., I am writing to authorize Golden Gate Bank to use my collateral to repay loan # 5124. Between Finexa Inc. and Golden Gate Bank.

It is my understanding that Finexa will pay the interest for March, and that on Monday April 2, 2001, I will have access to the residual interest from my CD.

If you have any questions please call me at 415.364.3701.

Thank you for your attention in this matter.

Sincerely,

Amit Choudhury

AC-011

Depo Exh. 5

# Golden Gate Bank
## THE PRIVATE BANK

30-1
5
6

**AMIT CHOUDHURY**
**2200 LEAVENWORTH #305**
**SAN FRANCISCO CA  94133**

NOW ACCOUNT:    2241161

**03/31/01 THRU 04/30/01**
DOCUMENT COUNT:        11
PAGE  1

THE ENCLOSED STATEMENT INSERT DETAILS THE REVISED MISCELLANEOUS FEES
APPLICABLE TO YOUR ACCOUNT.

---

NOW ACCOUNT 2241161

---

| | | | |
|---|---|---|---|
| INIMUM BALANCE | 25,646.84 | LAST STATEMENT 03/30/01 | 7,563.22 |
| /G AVAILABLE BALANCE | 25,822.32 | 10 CREDITS | 1,030,062.19 |
| /ERAGE BALANCE | 25,963.71 | 14 DEBITS | 1,011,935.75 |
| | | THIS STATEMENT 04/30/01 | 25,689.66 |

- - - - - - - - - - DEPOSITS - - - - - - - - -

| REF #.....DATE......AMOUNT | REF #.....DATE......AMOUNT | REF #.....DATE......AMOUNT |
|---|---|---|
| 9988 04/25    191.50 | 9989 04/04    4,000.00 | |

- - - - - - - - OTHER CREDITS - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| ANSFER FROM 209464 | 04/02 | 11,357.33 |
| ANSFER FROM 209593 | 04/02 | 1014,494.05 |
| SCELLANEOUS CREDIT | 04/03 | 1.99 |
| SCELLANEOUS CREDIT | 04/16 | 1.50 |
| SCELLANEOUS CREDIT | 04/17 | 1.50 |
| IMBURSE ATM SURCHARGE | 04/25 | 1.50 |
| IMBURSE ATM SURCHARGE | 04/26 | 1.50 |
| TEREST | 04/30 | 11.32 |

EXHIBIT NO. 5
DATE: 1-10-08
WITNESS: Choudhury
COLLEEN REDAMONTI, CSR 70

- - - - - - - - - CHECKS - - - - - - - - -

| HECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT | CHECK #..DATE......AMOUNT |
|---|---|---|
| 124 04/12    2,300.00 | 126 04/02    584.00 | 128 04/05    3,703.00 |
| 125 04/03    1,347.34 | 127 04/02    1,281.52 | 129 04/06    45.00 |

- - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| AN PAYMENT | | |
| ANSFER TO PRS NON-INTEREST ACCOUNT 2241162 | 04/02 | 1000,666.66 |
| M WITHDRAWAL FROM CHECKING NORTHPNT-SFWY SAN FRANCISCO | 04/04 | 20.73 |
| CA000009816243000 | 04/09 | 121.50 |
| RE TRANSFER DEBIT-DOMESTIC | | |
| M WITHDRAWAL FROM CHECKING BURLINGAME BURLINGAME | 04/11 | 1,500.00 |
| CA000010417480700 | 04/16 | 121.50 |
| THDRAWAL FROM CHECKING 951 EDGEWATER BLVD FOSTER CITY | 04/23 | 81.50 |
| CA000011013232600 | | |

* * *  C O N T I N U E D  * * *

A MEMBER OF THE GREATER BAY BANCORP FAMILY

Depo. Exh. 7

2000 VAN NESS AVENUE, SUITE 5__ · SAN FRANCISCO, CALIFORNIA 94109 · TEL: 415.___3700 · FAX: 415.364.3710

# TERM PROMISSORY NOTE

FOR VALUE RECEIVED Amit Choudhury ("Debtor") unconditionally promises to pay to the order of Elizabeth Eilert Grewal, ("Lender") on demand at San Francisco, California, the sum of $1,000,000 USD (One Million US Dollars). Debtor agrees to pay interest from the date of this Term Promissory Note on the said sum or the amount from time to time remaining unpaid at the rate per annum (calculated based on a 365 day year), which is equal to 4.0%.  Such interest shall be calculated and payable upon maturity of this Note upon expiration of the term, which is deemed to be Five years.

The principal and interest of this Term Promissory Note shall be paid in US dollars without set-off or counterclaim.

Made at San Francisco, California, this 2nd day of January, 2001.

Debtor:                                        Lender:


_____              _____
(Amit Choudhury)                          (Elizabeth Eilert Grewal)

EXHIBIT NO. 7
DATE: 1-10-08
WITNESS: Choudhury
COLLEEN REDAMONTI, CSR 7812

AC-018

Depo. Exh. 11

## DEMAND FOR PAYMENT

**Date:  January 2, 2007**

**To:  Amit Choudhury**

**Dear:  Amit,**

**Reference is hereby made to an obligation, a Term Promissory Note, dated January 2, 2001 by and between yourself, Amit Choudhury (Debtor), and myself, Elizabeth Eilert Grewal (Lender).  This note is currently one year in default.**

**Demand is hereby made of you for full payment by March 30, 2007, in the amount of $1,000,000 plus 4% interest, per the terms of the promissory note, plus the default penalty/premium we discussed on December 31, 2006 in your office.**

**Thank you kindly for your earliest attention to this matter.**

**Very truly yours,**

*Elizabeth Eilert Grewal*

**Elizabeth Eilert Grewal**

EXHIBIT NO. _11_
DATE: _1-10-08_
WITNESS: _Choudhury_
COLLEEN REDAMONTI, CSR 7006

AC-019

Depo. Exh. 12A

AMT

AM (T notes - next pg

# CharlesSchwab

**Schwab One Trust Account**

## Asset Allocation

| | Amount | % |
|---|---|---|
| Cash and Money Market Funds (MMF): | | |
| Cash (Credits) | $ 145.03 | <1% |
| Stocks | 2,128,428.57 | 74% |
| Mutual Funds | 40,696.16 | 1% |
| Bonds | 724,956.15 | 25% |
| **Total Assets Long** | **$ 2,894,225.91** | **100%** |

**Total Account Value**   $ 2,894,225.91

## Asset Allocation

- Cash (Credits) (<1%)
- Mutual Funds (1%)
- Bonds (25%)
- Stocks (74%)

## Change in Account Value

This Period: Starts 04/01/00 and ends 04/30/00.
Year to Date: Starts 01/01/00.

| | This Period | Year to Date |
|---|---|---|
| **Total Starting** | | |
| Account Value | $ 2,996,997.33 | $ 576,484.21 |
| Investments: | | |
| Starting Value | $ 2,994,121.50 | $ 540,054.81 |
| Purchased | 78,271.90 | 237,559.22 |
| Sold | (59,315.44) | (97,030.53) |
| Change in Value | (118,997.08) | 2,213,497.38 |
| Ending Value | $ 2,894,080.88 | $ 2,894,080.88 |
| Cash & MMF: | | |
| Starting Value | $ 2,875.83 | $ 36,429.40 |
| Added | 75,572.99 | 213,181.47 |
| Subtracted | (78,303.79) | (249,465.84) |
| Ending Value | $ 145.03 | $ 145.03 |
| **Total Ending** | | |
| Account Value | $ 2,894,225.91 | $ 2,894,225.91 |
| % Change in Account Value | (3.4)% | 402.0% |

## Margin Account Summary

| | Amount |
|---|---|
| Buying Power | $ 2,798,910.00 |
| Cash Available | 1,399,455.00 |
| Margin Account Equity | 2,275,779.0 |
| Margin Account Equity % | 100% |
| Margin Interest Paid | (14.75) |

*Margin Loan Interest Rate as of 04/30 was*
*8.75% - 10.25%*

## Noted for Your Account

You receive special Schwab Signature Services commission rates.

Investment income during this period was $4,573.94

## Market Monitor

Schwab One Yield   5.05%

| Indices | Year to Date Change |
|---|---|
| Dow Jones Industrial Average | (6.64%) |
| Standard & Poor's 500 Index® | (1.14%) |
| Schwab 1000 Index® | (.48%) |
| NASDAQ Composite Index | (5.13%) |



CONFIDENTIAL

Exhibit 12-A   Deponent Greива   Date 1/11/08   Rptr. SS
WWW.DEPBOOK.COM

100003

# CharlesSchwab

**Schwab One Trust Account**

**Statement Period: April 1, 2000 through April 30, 2000**
Account Number: 3073-0366

## Investment Detail

| Description | Quote Symbol | Quantity Long/Short | Latest Price | Total Market Value |
|---|---|---|---|---|
| **Stocks** | | | | |
| A T & T CORP (M) | T | 1,610 L | $ 47.00 | $ 75,670.00 |
| ACCREDO HEALTH INC (M) | ACDO | 150 L | 28.125 | 4,218.75 |
| ACTIVCARD S A ADR F SPONSORED ADR | ACTI | 100 L | 25.75 | 2,575.00 S |
| APPLE COMPUTER INC (M) | AAPL | 200 L | 124.0625 | 24,812.50 |
| APPLIED MATERIALS INC (M) | AMAT | 3,100 L | 101.8125 | 315,618.75 |
| AT HOME CORP INC (M) | AWEB | 100 L | 3.9375 | 393.75 |
| BAXTER INTERNATIONAL INC (M) | BAX | 105 L | 65.125 | 6,838.13 S |
| BK MARIN CORTE MADERA CA SPONSORED ADR | BMRC | 8,676 L | 20.50 | 177,858.00 |
| CHARTERED SEMICONDR ADRF 1 ADR REP 10 ORD | CHRT | 100 L | 87.375 | 8,737.50 S |
| CHEVRON CORPORATION (M) | CHV | 759 L | 85.125 | 64,609.88 |
| CISCO SYSTEMS INC (M) | CSCO | 300 L | 69.3281 | 20,798.43 |
| COMMERCE ONE INC DEL (M) | CMRC | 600 L | 61.0625 | 36,637.50 |
| DU PONT E I DE NEMOUR&CO (M) | DD | 600 L | 47.4375 | 28,462.50 |
| E LOAN INC (M) | EELN | 100 L | 7.125 | 712.50 S |
| EDWARDS LIFESCIENCES CP (M) | EW | 21 L | 15.00 | 315.00 |
| EXXON MOBIL CORPORATION (M) | XOM | 1,228 L | 77.6875 | 95,400.25 |
| FUSION MEDICAL TECH NEW (M) | FSON | 500 L | 17.50 | 8,750.00 |
| INTEGRATED DEVICE TECH (M) | IDTI | 200 L | 48.0625 | 9,612.50 S |
| INTEL CORP (M) | INTC | 300 L | 126.8125 | 38,043.75 |
| INTUIT INC (M) | INTU | 9,000 L | 35.9375 | 323,437.50 |
| JDS UNIPHASE CORPORATION (M) | JDSU | 200 L | 103.6875 | 20,737.50 |
| KIMBERLY-CLARK CORP (M) | KMB | 200 L | 57.9375 | 11,587.50 S |
| KON PHILIPS ELEC NV NEWF (M) SPONSORED NY SH 1 NY REP 1 ORD | PHG | 400 L | 44.625 | 17,850.00 |
| LAM RESEARCH CORPORATION (M) | LRCX | 600 L | 45.875 | 27,525.00 M |

*(M)Assets held in margin account*

POLD 018459-00098364

CONFIDENTIAL

100004

# Charles Schwab

**Schwab One Trust Account**

Page 3 of 14

**Statement Period: April 1, 2000 through April 30, 2000**
Account Number: 3073-0366

## Investment Detail (continued)

| Description | Quote Symbol | Quantity Long/Short | Latest Price | Total Market Value |
|---|---|---|---|---|
| **Stocks (continued)** | | | | |
| LUCENT TECHNOLOGIES INC (M) | LU | 1,280 L | 62.1875 | 79,600.0 |
| MATTSON TECHNOLOGY (M) | MTSN | 800 L | 49.125 | 39,300.00 |
| MC DONALDS CORP (M) | MCD | 2,354 L | 38.0625 | 89,599.13 |
| MERCK & CO INC (M) | MRK | 2,374 L | 69.50 | 164,993.00 |
| MOTOROLA INCORPORATED (M) | MOT | 429 L | 119.00 | 51,051.00 |
| N C R CORP NEW (M) | NCR | 62 L | 38.625 | 2,394.75 |
| NORTHPOINT COMMUN GROUP (M) | NPNT | 100 L | 16.125 | 1,612.50 |
| NUVEEN INSD CA PRE FD II (M) INCOME MUNI | NCL | 2,293 L | 13.25 | 30,382.25 |
| PEPSICO INCORPORATED (M) | PEP | 1,500 L | 36.6875 | 55,031.25 |
| PIXAR (M) | PIXR | 100 L | 37.1875 | 3,718.75 |
| S B C COMMUNICATIONS INC (M) | SBC | 1,168 L | 43.8125 | 51,173.00 |
| SPECTRANETICS CORP | SPNC | 2,000 L | 5.125 | 10,250.00 |
| VODAFONE AIRTOUCH ADR F (M) SPONSORED ADR 1 ADR REP 10 ORD | VOD | 2,000 L | 47.00 | 94,000.00 |
| WASTE MANAGEMENT INC DEL (M) | WMI | 725 L | 16.00 | 11,600.00 |
| WESTAMERICA BANCORP (M) | WABC | 4,620 L | 25.0625 | 115,788.75 |
| WORTHINGTON INDS INC (M) | WOR | 544 L | 12.375 | 6,732.00 |
| **Total Market Value of Stocks** | | | | $ 2,128,428.57 |

(M)Assets held in margin account

Tech. 7-8  2
Int.  2

≈ 2.0 MM.
↓
8-12
15DK - 25DK.

100005

CONFIDENTIAL

# CharlesSchwab

**Schwab One Trust Account**

**Statement Period: April 1, 2000 through April 30, 2000**
Account Number: 3073-0366

## Investment Detail (continued)

| Description | Quote Symbol | Quantity Long/Short | Latest Price | Total Market Value |
|---|---|---|---|---|
| **Mutual Funds** | | | | |
| SCHWAB VALUE ADVANTAGE * MONEY FUND | SWVXX | 40,696.16 L | $ 1.00 | $ 40,696.1 |
| **Total Market Value of Mutual Funds** | | | | $ 40,696.16 |
| **Bonds** | | | | |
| BEVERLY HILLS 5.70%12 (M) GENL OBLIG DUE 05/01/12 CALIF UNI SCH DIST AA2/AA | | 25,000 L | $ 103.415 | $ 25,853.75 |
| BRENTWOOD CALIF 6.90%03 IMPT BD ACT DUE 09/02/03 1915 RFDG IMPT PROJ NR/NR | | 20,000 L | 103.369 | 20,673.80 |
| CALIFORNIA ST 5.35%07 (M) PUB WKS BRD DUE 06/01/07 LEASE REV RFDG VAR UNIV AA3/A+ | | 30,000 L | 102.845 | 30,853.50 |
| CALISTOGA CALIF 5.30%00 CTFS PARTN DUE 10/01/00 BAA1/NR | | 25,000 L | 100.393 | 25,098.25 |
| CHICO CALIF 6.10%01 (M) REDEV AGY DUE 02/01/01 OID@99.260 SBJ XTR CALHF NR/AA- | | 25,000 L | 101.411 | 25,352.75 |

**CONFIDENTIAL**

* Dividends paid on this security will be automatically reinvested
(M)Assets held in margin account

100006

POLD 01859-00498266

Depo. Exh. 15

**Amit Choudhury**

**From:**    Elizabeth Grewal [eeilert@earthlink.net]
**Sent:**    Thursday, January 19, 2006 3:26 PM
**To:**      Amit Choudhury
**Subject:** Re: Your vmail

Amit,

Thanks. I thought the same thing, especially after you informed me of your happy news...your engagement. Though I don't think you've had to think about it at all much in the last five years. Anyway, get ready for life changes!

Well, this woman of Hardev's sounds pretty real. He and I talked the other night on the phone and he said he definitely wants to spend the rest of his life with her and the two of them can't wait to start their lives together. (puke, he sounds like he hasn't grown up at all. It sounds like the ardor of the honeymoon period talking!).

She is a business manager for training at Applied, has an engineering degree from Purdue, and she and Hardev have customers in common such that they've coordinated their business trips and been meeting each other. She's selling her house to come out here. She's originally from Wisconsin and her name is Caroline. I'm trying to imagine liking her and that she'll be another pair of eyes to watch Avery, especially if what Hardev claims is true, that she doesn't want children and wants to focus on her career. That is actually better for Avery, no competition from another family of Hardev's. I don't think he can afford more children to be honest. She is a godmother. I can't imagine a woman selling her house for a man she's only known six months. Seems desperate to me. Apparently they know a lot of colleagues in common. She's been divorced about two years.

So, I think it's moving too fast to introduce Avery yet and have asked him test the relationship before introducing him to her, but Hardev is very stubborn and seems to be refusing. He's totally whipped, obviously, and being completely selfish. If she has an engineering brain, then their communication is probably decent. He says they are extremely compatible. My concern is the Sat. nights that Avery is there, he could just walk into their bedroom and he's too young. Hardev says it's unacceptable for her to go elsewhere for Sat. nights, so he's placing more importance on her already than Avery!

I find it weird that Hardev has not been without a woman for one second since four months before he left me...

Anyway, I'd love your thoughts when you get a chance. I certainly like the sound of this woman vs. the Hong Kong Ho, so things could be worse. If you have any idea what argument might work with him to hold off on introducing this woman to Avery until Avery is older and the relationship is not new, I'd really appreciate it.

Thanks,

Buff

On Jan 17, 2006, at 11:15 PM, Amit Choudhury wrote:

EXHIBIT NO. 15
DATE: 1-10-08
WITNESS Choudhury
COLLEEN REDAMONTI, CSR 7672

AC-051

Buff,

Got your v-mail. I was already working with the understanding that you wanted it all.  I think that is a lot simpler, and it will certainly make it a lot easier for me going forward.  One less thing for me to worry about.

Take care,

+AC

Pinnacle Partners
2000 Van Ness Avenue, Suite 500 | San Francisco, CA 94109
Direct: 415.364.3701   Fax: 415.364.3710

Confidentiality Note: This e-mail message and all attachments are for the sole use of the intended recipient(s) and contains confidential and/or legally privileged information belonging to Pinnacle Partners, Inc. or its customers or partners. Any unauthorized review, use, copying, disclosure, distribution or taking of any action in reliance to the contents of this message is strictly prohibited. If you are not an intended recipient of this message, please contact the sender immediately by reply e-mail and destroy all soft copies, hard copies and backups of the message and any attachments. Thank you for your cooperation.

AC-052

7/29/2007

AC-053

Depo. Exh. 49

**CharlesSchwab**

December 13, 2000    (MG72)

OFFICE SERVING YOUR ACCOUNT:

800 EL CAMINO REAL  SUITE 100
MENLO PARK CA
**MAIL TO:   P.O. BOX 52114
  PHOENIX, AZ 85072
800-435-4000

ELIZABETH EILERT TTEE
ELIZABETH EILERT TRUST
U/A DTD 03/14/00
775 ROBLE AVE APT 4
MENLO PARK CA          94025

Re: Account Number   MP 30730366

Dear Customer:

Per your instructions, Charles Schwab & Co., Inc., has sent a wire
transfer in the amount of $880,000.00 on December 13, 2000 from your
account.

If you have any questions concerning this matter, please call
Charles Schwab & Co., Inc., at 1-800-435-4000.

Sincerely,

Charles Schwab & Co., Inc.

 CONFIDENTIAL

100007



©9 Charles Schwab & Co., Inc.

Member SIPC/New York Stock Exchange, Inc. and
Other Principal Stock and Option Exchanges.

Depo. Exh. 50

# Charles Schwab

SCHWAB ONE ACCOUNT
Account of ELIZABETH ELDERT TUBE

Statement Period: December 1, 2000 through December 31, 2000
Account Number: 3073-0316

## Transaction Detail

### Investments Purchased and Sold

| Settle Date | Trade Date | Transaction | Description | Cusip Symbol | Quantity | Unit Price | Purchase/Debit | Sales/Credit |
|---|---|---|---|---|---|---|---|---|
| **Money Market Funds (Non-Sweep) Activity** | | | | | | | | |
| 12/04 | 12/01 | Bought | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | 98,221 | $1 | $98,221.00 | |
| 12/06 | 12/05 | Bought | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | 55,852.3800 | 1 | 55,852.38 | |
| 12/07 | 12/06 | Bought | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | 11,745 | 1 | 11,745.00 | |
| 12/08 | 12/07 | Bought | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | 62,371 | 1 | 62,371.00 | |
| 12/08 | 12/07 | Bought | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | 71,282 | 1 | 71,282.00 | |
| 12/13 | 12/12 | Sold | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | (813,763.8500) | 1 | | $813,763.85 |
| 12/27 | 12/26 | Sold | SCHWAB VALUE ADVANTAGE MONEY FUND | SWVXX | (460.5800) | 1 | | 460.58 |
| | | | **Total Money Market Funds (Non-Sweep) Activity** | | | | $299,471.38 | $814,224.43 |
| **Fixed Income Activity (including redemptions and return of principal)** | | | | | | | | |
| 12/11 | 12/08 | Sold | CHICO CALIF     B SCHS (W)<br>REDEV AGY   DUE 09/01/01<br>With accrued interest of $550.69 | | (25,000) | $99.4050 | | $25,402.19 |
| 12/13 | 12/08 | Sold | IRWINDALE CALIF $ 4.00<br>PUB FIN   DUE 11/01/07<br>With accrued interest of $157.50 | | (25,000) | 98.4000 | | 24,757.50 |
| 12/13 | 12/08 | Sold | SANGER CALIF UNI 6.300<br>SCH DIST   DUE 09/01/04<br>With accrued interest of $269.25 | | (15,000) | 101.5000 | | 15,418.425 |
| | | | **Total Fixed Income Activity** | | | | | $65,643.94 |

(NH) Assets held in margin account.

🆔 CONFIDENTIAL

100010

Dn EXHIBIT 50
Deponent Greenwald
Date 1/11/04   Rptr. SS
WWW.DEPOBOOK.COM

# CharlesSchwab

Schwab One Account
Account of ELIZABETH EILERT TTEE

## Transaction Detail (continued)

### Investments Purchased and Sold (continued)

| Settle Date | Trade Date | Transaction | Description | Quote Symbol | Quantity | Unit Price | Purchase/Debit | Sales/Credit |
|---|---|---|---|---|---|---|---|---|
| **Stock Activity** | | | | | | | | |
| 12/08 | 12/05 | Sold | NUVEEN INSD CA PRE FD II(M) | NCL | (600 ) | $ 13.2500 | | $ 7,919.78 |
| | | | INCOME MUNI | | | | | |
| 12/11 | 12/06 | Sold | WESTAMERICA BANCORP(M) | WABC | (200 ) | 37 | | 7,393.76 |
| 12/11 | 12/06 | Sold | WESTAMERICA BANCORP(M) | WABC | (700 ) | 37 | | 25,878.16 |
| 12/11 | 12/06 | Sold | WESTAMERICA BANCORP(M) | WABC | (100 ) | 37 | | 3,696.88 |
| 12/12 | 12/07 | Sold | MC DONALDS CORP(M) | MCD | (2,166 ) | 30.3125 | | 65,589.71 |
| 12/12 | 12/07 | Sold | MC DONALDS CORP(M) | MCD | (188 ) | 30.3125 | | 5,692.92 |
| 12/13 | 12/08 | Sold | DU PONT E I DE NEMOUR&CO(M) | DD | (600 ) | 43.3750 | | 25,994.18 |
| | | **Total Stock Activity** | | | | | | $ 142,165.39 |

| | | | |
|---|---|---|---|
| **Total Investments Purchased and Sold** | | $ 299,471.38 | $ 1,022,033.16 |

### Cash Activity

| Trans Date | Process Date | Transaction | Description | Withdrawal | Deposit |
|---|---|---|---|---|---|
| **Deposit and Withdrawal Activity** | | | | | |
| 12/01 | 12/01 | Funds Received | FUNDS RECEIVED * | | $ 1,387.97 |
| 12/05 | 12/05 | Funds Received | FUNDS RECEIVED | | 50,044.22 |
| 12/05 | 12/05 | Funds Received | FUNDS RECEIVED | | 2.00 |
| 12/05 | 12/05 | Funds Received | FUNDS RECEIVED | | 5,806.16 |
| 12/05 | 12/05 | Funds Received | FUNDS RECEIVED | | 795.00 |
| 12/12 | 12/12 | Funds Received | WIRED FUNDS DISBURSED | $ 880,000.00 | |
| 12/13 | 12/13 | Funds Paid | | 2,200.00 | |
| 12/29 | 12/29 | Journaled Funds | JOURNAL TO 12545209 | | |
| | | **Total Deposit and Withdrawal Activity** | | $ 882,200.00 | $ 58,035.35 |

*(M) Assets held in margin account*

CONFIDENTIAL

100009

EBK2801-002779 65062