1   Harvey L. Leiderman (SBN 55838)
    HLeiderman@ReedSmith.com
2   David S. Reidy (SBN 225904)
    DReidy@ReedSmith.com
3   REED SMITH LLP
    Two Embarcadero Center, Suite 2000
4   San Francisco, CA  94111-3922

5   **Mailing Address:**
    P.O. Box 7936
6   San Francisco, CA  94120-7936

7   Telephone:    (415) 543-8700
    Facsimile:    (415) 391-8269
8

9   Attorneys for Defendant
    AMIT CHOUDHURY

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13

14  ELIZABETH GREWAL, an individual,        Case No.: C-07-4218 CRB

15              Plaintiff,                   **REPLY MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN SUPPORT OF
16      vs.                                  DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT ON
17  AMIT CHOUDHURY, an individual,           PLAINTIFF'S FRAUD AND PROMISSORY
                                             NOTICE CLAIMS**
18              Defendant.
                                             Date:        May 23, 2008
19                                           Time:        10:00 a.m.
                                             Place:       Courtroom 8, 19th Floor
20

21  AMIT CHOUDHURY, an individual,           Compl. Filed:  July 19, 2007
                                             Trial Date:    August 18, 2008
22              Counter-Claimant,

23      vs.                                  *Honorable Charles R. Breyer*

24  ELIZABETH GREWAL, an individual,

25              Counter-Defendant.

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Amit Choudhury ("Defendant") submits this reply memorandum in support of his motion for summary judgment on Plaintiff's Fraud and Promissory Note claims ("Motion").

# I.    <u>INTRODUCTION</u>

Plaintiff alleges that she made a loan of $880,000 to Defendant and he failed to pay it back. This is a breach of contract claim. Plaintiff further alleges that Defendant never intended to repay the loan. That is a tort claim, for fraud. Defendant has moved for summary judgment on Plaintiff's fraud claim, on the grounds that following months of discovery, Defendant's fraud theory is still just that – only a theory. There is no evidence of any such tortious intent, and Plaintiff does not contend otherwise. All Plaintiff alleges in opposition to the Motion for Summary Judgment is that the trier of fact could *infer* from Defendant's subsequent non-payment that he didn't mean what he promised when he got the alleged loan. Plaintiff points to (a) non-payment, (b) use of the loan for Defendant's own purposes and (c) failure to tell Plaintiff what he did with the loan as the bases on which a jury could reasonably *infer* that he never intended to repay the loan.

These allegations, however, do not logically support *any* reasonable inference regarding Defendant's pre-loan intent to repay. The only evidence in support of Plaintiff's fraud theory, in fact, is that Defendant has not repaid Plaintiff, which courts have universally held is insufficient to establish tortious fraudulent intent. Plaintiff's First "Cause of Action" cannot be sustained and should be dismissed, as a matter of law.

Plaintiff's Second "Cause of Action," a breach of contract claim based on the promissory note attached to the First Amended Complaint ("Note") also fails as a matter of law. It is undisputed that Plaintiff transferred only $880,000 to Defendant, not $1,000,000, and that Defendant only signed the Note because he thought he was being given $1,000,000. The undisputed evidence is that Defendant signed the Note under the mistaken belief that he would receive $1,000,000, which he never did. For her part, Plaintiff did not see the Note until *after* she had decided unilaterally to transfer $880,000 instead of $1,000,000, and *after* she had transferred that amount. As a result, the Note does not reflect any mutual consent of the parties as to a $1,000,000 obligation. This is so patently true that when she was dividing her estate with her husband in their divorce proceedings,

–1–

1   Plaintiff herself declared to the San Mateo County Superior Court that Defendant Choudhury's

2   obligation to her was $880,000 – not $1,000,000. This is a critical admission against interest

3   nowhere controverted by Plaintiff in her Opposition to the Motion for Summary Judgment.

4   　　　The Note alleged in Plaintiff's Second "Cause of Action" was unsupported by the knowing,

5   mutual consent of the parties and is unenforceable as a matter of law.

6   **II.**　**ARGUMENT**

7   　　　**A.**　**Plaintiff's Request to Incorporate Her Summary Judgment Motion Into the
        Opposition is Improper and Should be Stricken**

8

9   　　　In her Opposition, Plaintiff attempts improperly to incorporate "in full, the contents of her

10  Motion for Summary Judgment … and all exhibits filed in support thereof, which are being filed

11  concurrently with this opposition brief." Opp. at 3, n. 2. Defendant objects to this pleading device.

12  Plaintiff's motion for summary judgment does not differentiate between arguments made in

13  opposition to Defendant's motion and arguments made in support of Plaintiff's motion. Indeed, the

14  two motions address different claims and impose different burdens on the moving and opposing

15  parties. *See* FRCP 56(c), (e).

16  　　　Defendant is entitled by local rules to consider Plaintiff's motion in its entirety and file an

17  opposition 21 days prior to the hearing. L.R. 7-3(a). While this Court has continued Defendant's

18  Motion to be heard concurrently with Plaintiff's motion on May 23, the Court also ruled that

19  Defendant's reply brief must be filed by April 25, 2008. Defendant's opposition to Plaintiff's

20  motion, on the other hand, is not due until May 2, 2008. Plaintiff's attempt to incorporate her

21  motion into her opposition here, would unfairly force Defendant to consider those pleadings in their

22  entirety and respond by April 25. This violates fundamental fairness.

23  　　　Plaintiff should not be allowed to sweepingly "incorporate" her own summary judgment

24  motion into her opposition to Defendant's Motion. Defendant asks that the request be stricken as

25  immaterial to the opposition.

26  ///

27  ///

28  ///

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### B.    Plaintiff Offers No Evidence of Defendant's Fraudulent Intent

Defendant's Motion relies on the well-settled California authority that it "is not, and has *never been the law*" that "subsequent failure to perform as promised warrants the inference that defendant did not intend to perform when she made the promise." *See* Motion at 8, citing *Tenzer v. Superscope*, 39 Cal. 3d 18, 30-31 (1985). Indeed, "if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, [she] will *never reach a jury.*" *Id.* (emphasis added).

When a moving party has thus carried his burden on a summary judgment motion, the "opponent *must do more than simply show that there is some metaphysical doubt* as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (emphasis added) (citations omitted). Rather, in the language of Rule 56(e), the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial'." *Id.*; FRCP 56(e). Plaintiff has failed to present any such facts here.

Summary judgment is appropriate where, as here, the non-moving party is unable to establish an element necessary to her claim, and will bear the burden of proof on that element at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has made clear that the trial court must also consider the *quantum* of proof required to establish the underlying claim: where the "clear and convincing" standard applies, the court *must* take that standard into account when considering whether a genuine issue of fact is presented:

> In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury ***must be guided by the substantive evidentiary standards that apply to the case***. This is true at both the directed verdict and summary judgment stages. Consequently, ***where the . . . "clear and convincing" evidence requirement applies***, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be ***whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff*** or the defendant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In fraud cases, it is well-settled that plaintiffs must prove each element of the claim by *clear and convincing evidence*. *See* Cal. Civ. Code §3294(a). Thus, to defeat Defendant's summary judgment motion here, Plaintiff must set forth specific facts showing that a jury could find fraudulent

—3—

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   intent by *clear and convincing evidence*. *See Anderson*, 477 U.S. at 255; *Renovitch v. Kaufman*, 905

2   F.2d 1040, 1044 (7th Cir. 1990) (upholding summary judgment on fraud claim where plaintiff

3   nonmovant put forth no facts from which a jury could reasonably infer fraud). Plaintiff cannot meet

4   that standard here.

5        In his Motion, Defendant presented direct evidence that in December 2000 he intended to

6   return the $880,000 he received from Plaintiff to her after five years. (Choudhury Decl. ¶¶ 3, 8.) In

7   her Opposition, Plaintiff argues that a triable issue of fact exists as to Defendant's intent to repay

8   Plaintiff only because fraudulent intent may be *inferred* from the following claimed facts:

9        1.   Defendant told Plaintiff that he would invest the money that Plaintiff loaned him

10             in overseas, or "offshore" accounts [Opp. at 3];

11       2.   Defendant told Plaintiff he would provide her with tax-free "returns" [*id*.];

12       3.   Plaintiff wired $880,000 to Defendant's personal account [*id*. at 4]; and

13       4.   Defendant pledged the funds as collateral for a loan to his business and the funds

14             were used to satisfy that business obligation [*id*. at 4, 7].

15       The first and second of these allegations – that Defendant said he would invest the money

16  and provide Plaintiff certain "returns" – are inconsistent with the allegations of Plaintiff's own First

17  Amended Complaint ("FAC"). There, Plaintiff alleges – in no uncertain terms – that the money was

18  a *loan*, and not an investment. (*See* FAC ¶4.) Plaintiff reiterates this in her Opposition, in which she

19  again contends that Defendant induced her to "*lend* him a large sum of money." Opp. at 2:9. If the

20  money was meant as a loan, then Plaintiff's argument now that Defendant said he would invest the

21  money and provide her with "returns" is contradictory and cannot be used to defeat summary

22  judgment. *See Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)

23  (contradictory and uncorroborated testimony does not create a genuine issue of material fact).

24       It cannot be reasonably inferred from these alleged statements about investing the funds that

25  Defendant did not intend to repay a loan. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572

26  (7th Cir. 1989) (holding plaintiff could not defeat summary judgment by simply rebutting

27  defendant's explanation; plaintiff's "gut feeling" about inferences to be drawn from defendant's

28  statements not sufficient to create a triable issue of fact). The United States Supreme Court has

1    expressly held that inferences may not be drawn from conclusory or general averments, and that only

2    *justifiable inferences* may raise a triable issue of fact sufficient to defeat summary judgment.  *See*

3    *Lujan v. Nat. Wildlife Fed.*, 497 U.S. 871, 888 (1990) (holding that it is "not the law" that the court

4    is obligated to resolve all factual ambiguity in favor of the nonmoving party, where inferences

5    promoted by nonmoving party are conjecture).

6        Plaintiff admits (see "fact" No. 3, above) that she knowingly wired the money to Defendant's

7    own personal bank account, and intended for the money to be a loan.  Plaintiff does not allege that

8    Defendant was obligated to report to her on his use of the loan proceeds over the five year term, and

9    indeed this would be inconsistent with the common understanding of a loan.  Plaintiff also admits

10   that Defendant was not *obligated* to invest the money or pay her any particular "returns" – again,

11   because the money was a loan – and was not even required to pay her any interest (tax-free or

12   otherwise) before 2006.  As such, evidence that Defendant received and held the money in a

13   personal account, used the money for his own purposes, and did not discuss his use of the funds with

14   Plaintiff after she lent him the money, are wholly <u>consistent</u> with Plaintiff's allegation that the

15   money was a loan to Defendant.  *More importantly, these "facts" do not logically support any*

16   *inference of Defendant's initial intent not to repay the loan when due.*  Plaintiff's conjecture to the

17   contrary does not raise a triable issue of fact sufficient to allow a jury to find fraudulent intent by

18   *clear and convincing evidence.  See Renovitch*, 905 F.2d at 1044; *Lujan*, 497 U.S. at 888.

19       Plaintiff's case authorities do not change this analysis.  Plaintiff cites *Southern Union Co. v.*

20   *Southwest Gas Corp.*, 180 F. Supp. 2d 1021 (D. Az. 2002), for the proposition that subsequent

21   failure to perform a promise "*can* warrant an inference that a party did not intend to perform."  Opp.

22   at 6 (emphasis added).  In that case, plaintiff Southern Union entered into a "Standstill Agreement"

23   with defendant Southwest Gas while talks were underway regarding a Southern Union / Southwest

24   Gas merger.  *Id.* at 1030.  Southern Union alleged that defendant Southwest Gas fraudulently

25   induced Southern Union to enter into the Standstill Agreement by promising that it would conduct a

26   good faith evaluation of Southern Union's merger offer.  *Id.* at 1031.  Southwest Gas did not perform

27   on its promise.  *Id.*

28   ///

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

–5–

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1      The Court held that a triable issue of fact existed as to Southwest Gas' fraudulent intent on

2  the basis of evidence that, after Southern Union made its merger offer, Southwest Gas launched a

3  campaign to discredit Southern Union's offer in favor of a competing merger offer. The evidence

4  showed that Southwest: (1) misrepresented Southern Union's financial condition to government

5  regulators; (2) told the Arizona Corporations Commissioner that Southern Union had a "rocky

6  situation," "customer problems," and also spread other rumors that were not true; (3) told Arizona

7  government officials that Southern Union would eliminate local jobs or dismantle the company; (4)

8  hired a public relations firm to employ a "wheel of pain" strategy to raise questions about Southern

9  Union's ability to finance the proposed merger; and (5) attempted to convince shareholders to accept

10  the competing offer on the basis that Southern Union could not finance the proposed merger on

11  terms acceptable to regulators – none of which was true. *Id.* at 1031-1032.

12      In other words, *Southern Union* involved overwhelming evidence going well beyond bare

13  nonperformance of an obligation (*i.e.*, that the promised good faith evaluation was not done), but

14  also of a malicious campaign to derail the Southern Union merger proposal. *See id.* It was this

15  evidence, taken together with nonperformance, that raised the triable issue. *Id.* Rather than support

16  Plaintiff's argument, *Southern Union* demonstrates the high quantum of evidence required to turn a

17  simple unperformed promise into a tortious fraud claim – a level that Plaintiff's inferential

18  "evidence" here fails even to approach.

19      Plaintiff's other cases likewise are unavailing. The Opposition cites *Glovatorium Inc. v.*

20  *NCR Corp.*, 684 F. 2d 658 (9th Cir. 1982), for example, for the rule that fraud "may also be properly

21  inferred from the immediate failure to perform a promise." Opp. at 6, citing *Glovatorium*, 684 F. 2d

22  at 661. But Plaintiff does not, and cannot, allege here that Defendant *immediately* failed to perform

23  his promise – because the parties agree that performance was not due *for another five years*. In any

24  event, *Glovatorium* involved a straight-forward fraud claim arising from the sale of a computer

25  system that did not work, where there was direct evidence that the defendant *knew it would not work*

26  at the time of the sale. *Id*.

27      Plaintiff alleges that the $880,000 she gave Defendant was a loan. In support of her

28  argument that Defendant from the outset never intended to return the money, Plaintiff repeatedly

–6–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    argues that Defendant used the money for his own purposes, but fails to explain why that common

2    sense understanding of a loan transaction was not only inappropriate, but raises an inference of

3    tortious intent.  Plaintiff cannot raise a triable issue of fact on fraudulent intent – an element she

4    must prove by clear and convincing evidence – by mere accusation and conjecture.  After months of

5    unfettered discovery, it remains that the only "evidence" Plaintiff can adduce regarding Defendant's

6    promissory intent is the fact that he has not repaid her yet.  That undisputed fact, standing alone, is

7    insufficient as a matter of law to defeat a motion for summary judgment.  *See Tenzer*, 39 Cal. 3d at

8    30-31.  Absent a triable issue of material fact, Defendant is therefore entitled to judgment on

9    Plaintiff's First "Cause of Action" for promissory fraud.

10    **C.    The Promissory Note Fails for Lack of Mutual Consent**

11    In his Motion, Defendant established that the Note does not reflect the parties' understanding

12    of the transaction that is the subject of this litigation.  It is undisputed that when Defendant signed

13    the Note in December 2000, he expected to receive $1,000,000 from Plaintiff.  (Choudhury Decl. at

14    ¶6.)  It is also undisputed that, at the time she transferred $880,000 to Defendant, Plaintiff had not

15    seen the Note.  (Grewal Depo. at 224:15-18.)  When she finally *did* see the Note, Plaintiff knew it

16    did not reflect her loan, because she questioned Defendant as to why it recited $1,000,000, instead of

17    $880,000.  (*Id.* at 229:9-230:17; 240:2-11.)  This evidence clearly demonstrates the lack of mutual

18    consent as to a key material term of the Note – the recited principal amount of $1,000,000.

19    Crucially, Plaintiff does not contest that she admitted, in signed papers she filed with the San

20    Mateo County Superior Court, that the Note obligation owed to her by Defendant Choudhury was

21    $880,000, not $1,000,000.  Almost five years after the transaction in issue, in November 2005,

22    Plaintiff described the Note in her court-filed papers as follows:  "Note due from Amit Choudhury,

23    *with a balance of $880,000 due and payable in 2006.*"  (Declaration of David S. Reidy, Ex. B, at

24    20008 [emph. added].)  Since this asset was assigned to Plaintiff as her own separate property under

25    her dissolution of marriage settlement, she was obligated by law to state its true value and cannot

26    now deny that admission.  (Had the obligation been for $1,000,000, Plaintiff would have had to have

27    reported that truthfully to the Court, and her ex-husband likely would have been entitled to

28    additional consideration in dividing their assets.)  Plaintiff fails to contest the truth of this fact in her

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Opposition, and therefore it must be taken as true for purposes of this Motion. The fact that Plaintiff

2  does not refute or even address this conclusive admission alone establishes that neither she nor

3  Defendant believed that the Note reflected their mutual consent to the obligation stated on the face of

4  the Note.

5       In response to the undisputed evidence demonstrating a lack of mutual consent, Plaintiff

6  states, without support, that Defendant's consent to the Note was "manifested by his signature on the

7  Note." Opp. at 7. But Plaintiff does not dispute that at the time he signed the Note, Defendant

8  believed he would receive $1,000,000. (Choudhury Decl. ¶ 6.) Thus, Defendant's consent was

9  based on an "unconscious ignorance … of a fact past or present, material to the contract": namely,

10  the fact that Plaintiff had decided unilaterally not to transfer $1,000,000, as had been discussed. *See*

11  Civ. Code §1577. This evidence is undisputed, and conclusively precludes a finding of mutual

12  consent to the Note. *See Elsinore Union v. Kastorff*, 54 Cal. 2d 380 (1960) (contractor's bid

13  rescinded on grounds that contractor mistakenly stated the wrong bid price).

14       Fundamentally, all contracts require mutual consent – a "meeting of the minds" as to the

15  object of the contract. Civ. Code §§ 1550, 1565; *Zuckerman v. Pacific Savings Bank*, 187 Cal. App.

16  3d 1394, 1405 (1986). Here, the Note lacks mutual consent as to the core term of the writing – the

17  principal amount. Defendant is therefore entitled to summary judgment on Plaintiff's Second

18  "Cause of Action," to enforce the Note. *Id.; see also, Donovan v. BRL Corporation*, 26 Cal. 4th 261,

19  270-271 (2001).

20  **III.     CONCLUSION**

21       The Court initially granted Defendant's motion to dismiss Plaintiff's fraud claim but gave

22  Plaintiff leave to amend to plead (and prove) the factual elements of promissory fraud. After months

23  of discovery, Plaintiff has failed to adduce any credible evidence to support the key elements of this

24  fraud claim. The complaint today rests where it was from the beginning, a simple breach of contract

25  action to recover an $880,000 loan to Defendant. Both the promissory fraud claim and the claim on

26  the Note fail as a matter of law, and should be dismissed at this time. There are no genuine issues of

27  material fact remaining on those claims that properly could be submitted to a jury.

28  ///

Defendant respectfully requests that this Court grant the Motion and enter judgment against Plaintiff on the First and Second "Causes of Action" of the First Amended Complaint.

DATED:  April 24, 2008

REED SMITH LLP

By    /s/
        David S. Reidy
        Attorneys for Defendant
        AMIT CHOUDHURY

DOCSSFO-12512504.2

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REPLY MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. C-07-4218 CRB