E. Jeffrey Banchero (SBN 93077)
ejb@kastnerbanchero.com
Scott R. Raber (SBN 194924)
srr@kastnerbanchero.com
KASTNER | BANCHERO LLP
20 California Street, Seventh Floor
San Francisco, California 94111
Telephone: (415) 398-7000
Facsimile: (415) 616-7000

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL,<br><br>      Plaintiff,<br><br>  v.<br><br>AMIT CHOUDHURY,<br><br>      Defendants.<br><br>AND RELATED COUNTERCLAIM | CASE NO. C-07-4218 CRB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**<br><br>Date:      May 23, 2008<br>Time:     10:00 A.M.<br>Courtroom: 8, 19th Floor<br><br>(Before Hon. Charles R. Breyer) |

**I.    The Promissory Note Must Be Enforced As Written. Choudhury's Testimony About Discussions Of An Additional Loan Amount And What He Expected To Receive Is Inadmissible Parol.**

In the face of the authorities set forth in Grewal's moving papers demonstrating that the promissory note is enforceable, Choudhury claims he "expected to received an additional $120,000" "as had been discussed," and that he "believed that the 'value' referred to in the Note was the full sum of $1,000,000, which he had not received when he prepared the Note." (Memo. in Opp., p. 2:11-12, 23-25.) The documentary evidence Choudhury adduces to support his "belief" or "expectation" that Grewal was intending to lend him more money is an email message he sent Grewal on December 23, 2000, relating to Grewal's investment in Choudhury's hedge fund, Pinnacle Partners Capital, L.P. (Supp. Choudhury decl., Ex. A.)[1] But, in the message, Choudhury merely "suggested" (*id.*, p. 2:14) an "alternative" in which he would send Grewal "the balance between the year end networth [of her investment in the hedge fund] and $120k (the diff. we discussed)." (*Id*., p. AC-040.) Choudhury concedes that "Grewal did not respond to my email in time to disburse the funds" (*id.*, p. 2:18-19), and he testified that "[A]t no point [did Grewal say], 'Yes, I will do it.' " (Choudhury Dep. 121:22-122:8.) The email message and Choudhury's testimony confirm Grewal's testimony: she never promised to give Choudhury an additional $120,000. (Grewal Dep. 233:18-21.)[2]

Even if Choudhury's testimony about "discussions" with Grewal or what he "expected" when he received the $880,000 could be construed to suggest an agreement to lend an additional $120,000, the testimony is inadmissible parol that will never reach a jury.

---

[1] Choudhury has filed a Declaration in Support of Defendant's Motion for Summary Judgment on Plaintiff's Fraud and Promissory Note Claims (April 3, 2008), and what he styles a Supplemental Declaration in Opposition to Plaintiff's Motion for Summary Judgment on Promissory Note and Money Lent Claims (May 2, 2008). These will be cited as "Choudhury decl." and "Supp. Choudhury decl." All emphasis in quotations in this brief is added.

[2] In response to an Order of this Court, on April 30, 2008, plaintiff filed with the Court the full transcript of Choudhury's deposition, which was conducted on January 10, 2008. On the same date, defendant filed the full transcript of Grewal's deposition, which was conducted on January 11, 2008.

-1-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**                    Case No. C-07-4218 CRB

In California, "terms set forth in a writing intended by the parties as a final expression of their agreement *** may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Civil Code § 1856; *Oakland Medical Building Corp. v. Aureguy* (1953) 41 Cal.2d 521, 523 (J. Traynor) (discussed below); *Lindemann v. Coryell* (1922) 59 Cal.App. 788, 791 ("The rule is elementary that a parol agreement made at the time of the execution of a written instrument which upon its face is a complete expression of the agreement of the parties, cannot be introduced for the purpose of modifying or contradicting the terms of such instrument"); *Montgomery v. Riess* (1959) 176 Cal.App.2d 711, 717 ("The parol evidence rule applies to promissory notes"); *Bank of America v. Goldstein* (1938) 25 Cal.App.2d 37, 44 (maker of promissory note is "estopped from contradicting the plain language of the note"). The execution of a promissory note "supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Civil Code § 1625; *see Parker v. Meneley* (1951) 106 Cal.App.2d 391, 399, cited in Memo. in Supp., p. 10:1-14.

In *Oakland Medical Building Corp. v. Aureguy* (1953) 41 Cal.2d 521, Aureguy executed a $5,000 note with a three-month term. When the holder later sued to recover on the note, the defendant asserted that the holder had promised not to demand payment until one of the holder's companies had paid Aureguy $10,000 in a different transaction. The Court affirmed judgment enforcing the note on grounds that a "prior or contemporaneous oral agreement that a promissory note is not to be payable according to its terms constitutes no defense to an action on the note," and because it found the alleged oral agreement did not make delivery of the note "conditional." (*Id.* at 523-24.) The case is closely in point: as in the instant case, in *Oakland Medical* the maker of the note claimed the note was unenforceable because the lender had promised *additional funds* that were never paid. *See id.* at 524 ("[T]he failure of the [lender's affiliated company] to pay its alleged debt did not constitute a failure of consideration" for the note).

Because none of the evidence amounts to an agreement contradicting the plain terms of the promissory note, and because the note in any event is the "final expression" of the parties' agreement (Civil Code § 1856), it must be enforced as written.

-2-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**     Case No. C-07-4218 CRB

## II. If Choudhury Believed Grewal Was Intending To Loan Him An Additional $120,000, He Failed To Recite This In The Promissory Note. He Cannot Now Claim That His Failure To Do So Constitutes A Mistake That Invalidates The Note.

Choudhury claims the "Note was based on a mistake of fact concerning the amount at issue" and that his consent to the note was "not real or free" (Memo. in Opp., p. 8:27-28).

As we demonstrate in our moving papers, however, the doctrine of mistake is not applicable, because even if Choudhury expected an additional loan amount, the expectation was a fully conscious thought that Choudhury could have incorporated into the terms of the note before he signed it. *See Alameda County Title Insurance Co. v. Panella* (1933) 218 Cal. 510, 514 (defendant "offers no suggestion as to why, if the oral agreement was made as alleged, *it was not embodied in the note and deed of trust*"). The doctrine of mistake requires an "unconscious ignorance or forgetfulness" of a past or present *fact* – not, as Choudhury would have it, a *conscious* belief that his lender, Grewal, was intending or had otherwise committed to lend him more money. (*See* Civil Code § 1577; Memorandum in Support of Plaintiff's Motion for Summary Judgment on Promissory Note and Common Count for Money Lent, p. 12.)

Thus, if in response to B's invitation for a construction bid, A offers to perform work for $150,000, but omits a $50,000 item in his calculations, a court may refuse to enforce the contract if it finds that B was unaware of A's mistake and that enforcement would produce an unconscionable result. In the example, A's mistake, which B was unaware of, caused A to agree to perform $200,000 worth of work for $150,000. (*Restatement 2d Contracts* § 153, Illustration 1 (1981); *see id.*, § 151, Comment a ("The word 'mistake' is not used here [in the *Restatement 2d*], as it is sometimes used in common speech, *to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief*").

In contrast, Choudhury *did not make a mistake* when he signed the promissory note, or at least he was conscious of the true facts – *i.e.*, that he was signing a note having received $880,000 from Grewal and no additional amount. In its best light, Choudhury's claim is that he signed the promissory note believing Grewal was intending to lend him an additional $120,000, and he now wishes he had not. But as the *Restatement 2d* makes clear, the doctrine of mistake does not excuse

-3-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**    Case No. C-07-4218 CRB

"an improvident act" that is the result of an "erroneous belief." *See Gutherie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 885 ("[T]he kind of mistake which renders a contract voidable does not include 'mistakes as to matters which the contracting parties had in mind as possibilities ***'") (citation omitted); *cf. Mesmer v. White* (1953) 121 Cal.App.2d 665, 674 (courts will not "encourage the cancellation" of instruments on the ground of mistake "where they appear to have been executed by the complainant without the exercise of reasonable care"); *Lawrence v. Shutt* (1969) 269 Cal.App.2d 749, 765 (same).

Even if Choudhury's "expectation" about additional loan money could be deemed a legal mistake of fact, there is no evidence to support the second prong of the doctrine: As noted, under the *Restatement Contracts 2d* § 153, a contract is voidable only if "the effect of the mistake is such that enforcement of the contract would be unconscionable[.]" Here, the stated rate of interest on the promissory note is 4%. If the amount of principal in excess of the amount loaned is treated as interest (*see* Memo. in Supp, pp. 1, 9-10 and Section V, below), the actual rate of interest on the note is at most 7.27%. As a matter of law, the rate is not unconscionable. California Constitution, Art. XV § 1 (maximum legal rate of interest is 10%).

For these reasons, the doctrine of mistake does not invalidate the promissory note.

### III. Grewal's Marital Settlement Agreement And Handwritten Notes Do Not Render The Promissory Note Unenforceable.

As we demonstrate in our moving papers and in Section I, above, the promissory note, and not what Choudhury now says he "believed" or "expected" at the time he received the $880,000, constitutes the parties' loan agreement.

> "[W]here the terms of an *agreement* are set forth in writing, and the words are not equivocal or ambiguous, the writing or writings will constitute the agreement of the parties, and one party is not permitted to escape from its obligations by showing that he did not intend to do what his words bound him to do."

*Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 134 (emphasis in original); *see* Calif. Civil Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity").

-4-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**     Case No. C-07-4218 CRB

1    Choudhury, however, argues that plaintiff "admits that the Note did not reflect her
2 understanding of the transaction" because of a brief entry in a document filed in her divorce
3 proceedings years after the note was issued, and on the basis of one page of "pre-litigation
4 handwritten notes." (Memo. in Opp., p. 3:10-21.)  The contention is that these documents
5 constitute "binding admissions against interest." (*Id.*, p. 8:3-4.)  The argument is specious, because
6 Grewal's understanding of the loan transaction is not at issue.  The issue is whether the promissory
7 note is enforceable, which it surely is.  The documents, in any event, do not have the factual or
8 legal import Choudhury ascribes to them.

9    The Martial Settlement Agreement (Ex. B to the Declaration of David Reidy in Support of
10 Defendants Motion for Summary Judgment) was the result of a mediation in 2005 that resolved
11 Grewal's and her husband's divorce proceedings.  The agreement was not sworn or signed under
12 penalty of perjury.  As Grewal explains, her loan to Choudhury was not disputed in the divorce.
13 (Declaration of Elizabeth Grewal in Opposition to Defendant's Motion for Summary Judgment on
14 Plaintiff's Fraud and Promissory Note Claims, ¶ 3, p. 2:12-20.)[3]  For this reason, and because the
15 details of the loan were in the note, Grewal did not think it necessary to include the details of the
16 loan in the settlement agreement. (*Ibid.*)  The terms of the promissory note control what legal
17 obligations follow from it, not a document from a divorce created four years later, to which
18 Choudhury was not a party.

19   The "pre-litigation handwritten notes" that Choudhury relies on are copies of an interest
20 calculation Grewal completed to "track[] the principal that I wired over *** of the loan on
21 December 13, 2000." (Grewal Dep. 251:19-22.)  Choudhury's lawyer marked the notes as Ex. 55
22 to Grewal's deposition and questioned her about them. (*Id.*, p. 250:1-259:9.)  In Choudhury's
23 opposition, he makes much of Ex. 55, but he neglects to mention similar handwritten notes that
24 Grewal made tracking interest on $1,000,000.  Choudhury's lawyer marked *these* notes as Ex. 56 to

---

[3] Under Local Rule 7-3(c), Grewal submits this declaration, filed on May 2, 2008, in reply to defendant's opposition to the instant motion as if filed herewith.

-5-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**                      Case No. C-07-4218 CRB

Grewal's deposition, and he questioned her about them.[4]  As Grewal put it, Ex. 56 is "*the same thing* [as Ex. 55].  It tracks the million dollars in the promissory note."

    Q.    When did you write this down?

    A.    *At the same time I wrote the other page* [Ex. 55].

    Q.    And for what purpose did you record all these numbers?

    A.    I tracked both:  The wire transfer amount and the promissory note amount
          and 4 percent interest and 5 percent interest.

(Grewal Dep. 259:21-260:4.)

It is altogether reasonable that Grewal would write notes to track interest due on the money she was out-of-pocket and the amount, $1,000,000, that Choudhury agreed to pay her when he signed the promissory note.  Reasonable or not, the terms of the promissory note govern the loan transaction, not handwritten notes that Grewal created years later.  Choudhury's lawyers seize upon Ex. 55 to assert that "the Note did not reflect [Grewal's] understanding of the transaction," but the lawyers may as well have chosen Ex. 56, which, applying Choudhury's logic, reflects Grewal's understanding that she would receive the amount stated in the promissory note – $1,000,000.[5]

**IV.    Grewal Loaned $880,000 To Choudhury And Is Therefore Entitled To Judgment On Her Common Count For Money Lent.**

Choudhury claims there is a "dispute" about "whether the transfer was a loan or an investment."  (Memo. in Opp., p. 1:8-9).

---

[4] Ex. 56 is attached as an appendix to this Reply.

[5] *California v. Green*, 399 U.S. 149, 164-165 (1970), which Choudhury cites (Memo. in Opp., p. 8), provides no authority for the proposition that the Marital Settlement Agreement or handwritten notes are "binding admissions against interest."  *Green* is a Sixth Amendment case standing for the proposition that a court may admit at trial a witness's prior inconsistent testimony given under oath.  *J.B.C. Lockwood v. Wolf Corp.*, 629 F.2d 603 (9th Cir. 1980) is also inapposite, because it stands merely for the proposition that an officer may bind a company to a settlement agreement.  (See Memo. in Opp., p. 8.)  Nor does Rule 201 of the F. Rules of Evid., which Choudhury cites (*ibid*.), provide support.  *See San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D. Cal. 2000) (court may take judicial notice of a document filed in another court *not for the truth of the matters asserted*, but rather to establish the fact of the litigation and related filings.)

The argument is sophistic, because of course a loan is a form of "investment" – the bond market is proof for the proposition. In any event, as noted in our moving papers, Choudhury did not purchase stocks, bonds, or other publicly traded, investment-grade securities with Grewal's money that he then held on Grewal's behalf in a segregated account, which would have been consistent with what a broker or institutional money-manager would do with a client's investment funds. To the contrary, *Choudhury purchased a $1 million certificate of deposit in his own name*, used it to collateralize a loan to a company he controlled, and then issued Grewal a promissory note. (Memo. in Supp., p. 3:21-5:5.) These acts, which are not disputed, are consistent with the existence of a loan. Indeed, the promissory note is written confirmation that Choudhury believed the funds he received were a loan and treated them as such.

That "Defendant invested the money in collateral to support the very business – Finexa, Inc. – in which Plaintiff herself had already invested just a few months before" (Memo. in Opp., p. 9:24) does not change the character of Grewal's loan, for the same reason that a borrower's decision to invest loan proceeds in an Indonesian oil company does not change the borrower's obligation to his lender. As we note (Memo. in Supp., p. 4:8-9), Choudhury did not disclose to Grewal that he used her money to collateralize a loan to Finexa, nor did Finexa issue Grewal stock.

The most telling evidence is a statement in Choudhury's declaration: "At the time I signed the note," he declares, "I intended to carry out my understanding with Plaintiff to return the principal amount she had transferred to me \*\*\*." (Choudhury decl. ¶ 8, p. 2:23-24.) A "return of principal" is consistent with the existence of a loan.

Grewal is entitled to judgment on the third claim of the First Amended Complaint, her common count for money lent.

**V.     The Amount Due Grewal On The Promissory Note Presents No Triable Issue.**

The interpretation of a written contract is always a question for the court. *See, e.g., Parson v. Bristol Development Co.,* (1965) 62 Cal.2d 861, 865 (interpretation of a written contract "is essentially a judicial function \*\*\* so that the purposes of the instrument may be given effect"; *County of Solano v. Handlery* (2007) 155 Cal.App.4th 566, 574 ("It is \*\*\* solely a judicial function

-7-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**                    Case No. C-07-4218 CRB

1  to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic

2  evidence") (citations omitted)); *O'Connor v. West Sacramento Co.* (1922) 189 Cal. 7, 18 ("in no

3  case can the proper construction of the contract be left to a jury").

4       Here, the promissory note, which is dated January 2, 2001, provides for the payment of

5  interest at 4% per annum on $1,000,000 in five years. The note contains no ambiguity and its

6  interpretation does not turn upon the credibility of extrinsic evidence. The amount due on the note

7  is a question for the Court to determine on this motion. No trial is necessary.

8       Plaintiff's expert, Greg Pinsonneault, calculates that the amount due on the note as of April

9  30, 2008, is $1,404,170. (Memo. in Supp., p. 13:1-15; Pinsonneault decl. *passim*.) Pinsonneault

10 explains his assumptions and methods in his declaration and supporting exhibits, which were filed

11 with our moving papers. Choudhury argues that the calculation is "flawed" because Pinsonneault

12 employs compound interest; *i.e.*, he takes 4% interest for the first year of the term – *i.e.*, $40,000 –

13 and adds this to the amount in year two on which 4% interest is applied, and continues with annual

14 compounding for the five-year term. (Memo. in Opp., pp. 10-11.)

15      If the Court accepts Choudhury's objection and were to calculate interest *without*

16 compounding – *i.e.*, using 4% per annum simple interest – the amount due at the end of the five-

17 year term on January 1, 2006, would be $1,200,000 – $1,000,000 plus $40,000 a year in interest for

18 five years.

19      Under applicable California authorities, *see, e.g.*, *Otis v. Eisner* (1935) 7 Cal.App.2d 496,

20 499, and other cases cited in our moving papers (Memo. in Supp, pp. 1, 9-10), the $120,000

21 difference between the amount loaned and the amount stated in the promissory note must be treated

22 as interest, not principal. Using simple interest, this means the *actual* annual rate of interest agreed

23 to by the parties in the promissory note was 7.27% – *i.e.,* $120,000 plus $200,000 in interest

24 divided by the amount loaned, $880,000, divided by five years.

25      Applying an annual 7.27% rate of interest to the amount due on January 1, 2006

26 ($1,200,000) results in daily interest of $239.01 and annual interest of $87,240. There are 850 days

27 in the period from January 1, 2006, to April 30, 2008, which results in interest for this period of

28 $203,162 ($239.01 x 850 days).

-8-

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**      Case No. C-07-4218 CRB

Thus, if the Court were to accept Choudhury's objection and calculate Grewal's damages using simple interest, Grewal is entitled to judgment on the promissory note as of April 30, 2008, in the amount of $1,403,162 – $1,200,000 plus $203,162.  This is a $1,008 difference from the amount owing under Mr. Pinsonneault's calculations.

## CONCLUSION

Plaintiff, Elizabeth Grewal, respectfully requests that the Court enter judgment on her behalf on the second and third claims of the First Amended Complaint.

DATED:  May 9, 2008                         KASTNER | BANCHERO LLP


By:  /S/ E. Jeffrey Banchero
       E. Jeffrey Banchero
       Scott R. Raber

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL

-9-
**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PROMISSORY NOTE AND COMMON COUNT FOR MONEY LENT**            Case No. C-07-4218 CRB