1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH GREWAL,                    No. C 07-04218 CRB

12              Plaintiff,                **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

13      v.

14   AMIT CHOUDHURY,

15              Defendant.
                                                     /
16   _____

17        The core facts of this case are relatively straightforward and undisputed: Plaintiff

18   Elizabeth Grewal transferred $880,000 to Defendant Amit Choudhury, which amount

19   remains unpaid.  Nonetheless, the parties have been unable to reach a settlement and have

20   now filed cross-motions for summary judgment.  For the reasons set forth below, the motions

21   are DENIED.

22                              **BACKGROUND**

23        Plaintiff Grewal met Defendant Choudhury in the early 1990s while both were

24   enrolled at Northwestern's Kellogg School of Management.  See First Amended Complaint

25   ("FAC") ¶ 3.  After graduating from Kellogg, Choudhury founded several companies,

26   including Finexa, Inc., a company that developed application software for portfolio-

27   management reporting.  Id.

28        In June of 2000, Choudhury hired Grewal to work for Finexa as the director of

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    marketing.  See Choudhury Depo. 83:4-84:4.   In or around September of 2000, Plaintiff

2    informed Defendant that she had inherited a substantial sum of money from her mother.

3    See Choudhury Decl. ¶ 2.  According to Defendant, he and Grewal discussed the possibility

4    that he might help invest the money on Grewal's behalf.  Id.

5           Plaintiff alleges that on September 1, 2000, Defendant promised that if she loaned him

6    money, he would repay the loan to her with interest that would come back tax free.  Id. ¶ 10.

7    Defendant Choudhury guaranteed Plaintiff 4% interest, but stated that it "could be more."  Id.

8    Choudhury told Grewal that he could legally put money offshore and stated that any money

9    "would go offshore and that it was perfectly legal."  Grewal Depo. 187:2-6.  Grewal believed

10   that any investment of her money would be placed offshore.  See id. at 191:1-3.

11          Although Choudhury asked for one million dollars, Grewal could only come up with

12   $880,000.  See Grewal Depo. 202:5-11.  On December 13, 2000, Plaintiff wired $880,000

13   from her brokerage account to a bank account in Choudhury's name.  FAC ¶ 6; Choudhury

14   Depo. Exh.1.  After receiving the money, Choudhury contends that he spoke with Grewal

15   and told her that "[t]he investment was supposed to be $1 million," but Choudhury cannot

16   recall how she responded.  See Choudhury Depo. 19:17-25.

17          After receiving the $880,000 from Grewal, Choudhury prepared, executed, and signed

18   a promissory note in which he promised to pay Grewal on demand "the sum of $1,000,000

19   USD (One Million US Dollars)."  Although Choudhury had only received $880,000, he

20   made the note out for $1 million because he believed that Grewal would eventually invest an

21   additional $120,000.  See Choudhury Depo. at 93:9-23.  In the note, Choudhury also agreed

22   to "pay interest" from the date of the note "at the rate per annum . . . which is equal to 4.0%."

23   The note provided that interest "shall be calculated and payable upon maturity of this Note

24   upon expiration of the term, which is deemed to be Five years."  According to Choudhury,

25   although the note was dated January 2, 2001, he actually signed the note in late December of

26   2000, and Grewal signed the note after January 2.  See Choudhury Decl. ¶¶ 5, 7.

27          Grewal contends that although she asked Choudhury why he made the note out for $1

28   million rather than $880,000, Choudhury refused to change it.  See Grewal Depo. 229:17-

2

230:13.  Upon signing the note, Grewal believed that she was entitled to $1 million plus 4% interest, even though she had only transferred $880,000 to Choudhury.  Id. 230:18-21.

Choudhury testified that sometime between the wire transfer on December 13 and December 31, he requested that Grewal send the additional $120,000.  See id. at 95:6-16.  According to Grewal, she told Choudhury that she would only be giving him $880,000 and Choudhury never requested or demanded any additional monies.  See Grewal Decl. ¶ 4.

On December 27, Choudhury used the $880,000 – plus $120,000 of funds from an independent source – to purchase a $1 million certificate of deposit in his own name from Golden Gate Bank.  Id. at 21:20-25.  Choudhury did not tell Grewal that he was using her money in this manner.  Id. at 23:6-9.  Choudhury did not tell Grewal because he was "embarrassed" about how her investment had been used in an unintended way.  Choudhury Depo. at 49:21-50:12. On or around December 28, Choudhury's company Finexa took out a $1 million line of credit with Golden Gate Bank, using the CD as collateral.  See Choudhury Depo. at Exhs. 2, 3.  Choudhury testified that was not responsible for taking out the line of credit, that the line of credit was taken out without his instruction, and that he only signed the promissory note on the line of credit because his CFO told him to.  See Choudhury Depo. at 27:24-29:17.

On March 31, 2001, a letter was sent on Finexa letterhead with Choudhury's signature to Golden Gate Bank, authorizing the bank to use the collateral to repay Finexa's line of credit.  See Choudhury Depo. Exh.4.  Choudhury contends that he did not write the letter and that his electronic signature must have been put on the letter by Finexa's operations manager.  See id. at 41:7-25.  Choudhury only learned that the CD had been used to pay off Finexa's debt sometime in June of 2001 from the company's CFO.  Id. at 46:13-19.

During the ensuing years, Choudhury allegedly told Grewal that her money was "sitting in a family office account in HSBC in London making 5 percent."  Grewal Depo. 252:2-6.  According to Grewal, Choudhury also told her that her money was in "Amisil Holdings" – one of Choudhury's companies – in Cyprus.  See id. 255:16-256:7.

**United States District Court**
For the Northern District of California

On January 2, 2007, Grewal sent Choudhury a letter demanding full payment on the note in the amount of $1 million plus 4% interest.  See Choudhury Depo. Exh. 11. Choudhury has been trying to earn the money to pay Grewal back, and in December of 2006, Choudhury told Grewal that he was trying to get her money together.  See Choudhury Depo. at 125:3-126:1.  To date, none of Grewal's money has been returned.

Grewal filed suit on July 19, 2007 in state court and Choudhury removed.  In her first amended complaint, Grewal alleged six causes of action, including promissory fraud, breach of contract, and four common counts for money lent, money had and received, open account, and book account.[1]  See First Amended Complaint ("FAC") at 3-6.  Plaintiff now moves for summary judgment on the claims for breach of contract and money lent.  Defendant moves for summary judgment on the breach of contract and fraud claims.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact issue is "material" only if it could affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  This can be done by either producing evidence negating an essential element of the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate burden at trial.  See Nissan Fire & Marine Ins. Co. v.

---

[1] A "common count" is a form of pleading derived from the common law.  See Jones v. Re-Mine Oil Co., 47 Cal. App. 2d 832, 843 (1941).

4

**United States District Court**
For the Northern District of California

1   Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).  Once the moving party has met

2   its initial burden, the burden shifts to the nonmoving party to establish the existence of an

3   element essential to that party's case, and on which that party will bear the burden of proof at

4   trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden,

5   the nonmoving party cannot rely on its pleadings, but instead must have evidence showing

6   that there is a genuine issue for trial.  See id. at 324.

7         Special rules of construction apply to evaluating summary judgment motions: (1) all

8   reasonable doubts as to the existence of genuine issues of material fact should be resolved

9   against the moving party; and (2) all inferences to be drawn from the underlying facts must

10  be viewed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc. v. Pac.

11  Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

12                                        **DISCUSSION**

13        I. Fraud

14        In her first cause of action, Grewal alleges that Choudhury promised to place her

15  money in an offshore account that would be returned with tax free interest.  See FAC ¶ 10.

16  Grewal alleges that at the time Choudhury made the promises, he did not intend to repay the

17  money, to pay interest, or to set up an account or other vehicle that would allow Grewal to

18  earn interest tax free.  See id. ¶ 12.  Choudhury now moves for summary judgment on the

19  fraud claim on the ground that the record contains no evidence of fraudulent intent.

20        Under California law, a claim for fraud includes five elements: (1) misrepresentation

21  (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter");

22  (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.

23  See Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004).  Choudhury contends that Grewal

24  has proffered no evidence of the third element: fraudulent intent.  Because a plaintiff rarely

25  has direct evidence of a defendant's fraudulent intent, the element may be proved by

26  circumstantial evidence and may be established by inference from the circumstances and acts

27  of the parties.  See Las Palmas Assoc. v. Las Palmas Ctr. Assoc., 235 Cal. App. 3d 1220,

28  1239 (1991); Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal. App. 3d 388,

                                              5

United States District Court
For the Northern District of California

1   428 (1989).  One circumstance that allows for an inference of fraud is immediate failure to

2   perform a promise.  See Glovatorium, Inc. v. NCR Corp., 684 F.2d 658, 661 (9th Cir. 1982).

3        Plaintiff has proffered circumstantial evidence that would allow a reasonable juror to

4   conclude that at the time Choudhury promised to put Grewal's money in an offshore vehicle

5   that would earn interest tax free, he did not intend to fulfill that promise.  Just two weeks

6   after receiving Grewal's money, Choudhury used the funds to purchase a CD in his name at

7   his bank, which was then used to collateralize a loan to Choudhury's company.  Based on the

8   temporal proximity between those two events and Choudhury's failure to even attempt to

9   place Grewal's money in an offshore vehicle, it would be reasonable to conclude that

10  Choudhury took Grewal's money with the intent of using it to bolster his business operations.

11  Accordingly, Defendant's motion for summary judgment on Count One is denied.

12       II. Count Two: Promissory Note (Breach of Contract)

13       In her second cause of action, Grewal seeks to enforce the terms of the promissory

14  note by compelling Choudhury to pay her $1 million plus interest.  See FAC ¶ 18.  Grewal

15  moves for summary judgment on the ground that the note is an enforceable written contract

16  that sets forth the terms of Choudhury's obligation to her.  See Trigg v. Arnott, 22 Cal. App.

17  2d 455, 457 (1937) ("A promissory note is a contract in writing. . . .").  Choudhury also

18  moves for summary judgment, arguing that the note fails for lack of mutual consent to the

19  stated principal of $1,000,000.

20       A party to a contract may rescind the contract if the consent of the party rescinding

21  was given by mistake.  See Cal. Civ. Code § 1689(b)(1).  In turn, "mistake," as that term is

22  used in § 1689 includes a mistake of fact, which California defines as "a mistake, not caused

23  by the neglect of a legal duty on the part of the person making the mistake, and consisting in

24  [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the

25  contract." Cal. Civ. Code § 1577.

26       Choudhury argues that his consent was obtained by mistake because he believed that

27  Grewal intended to pay an additional $120,000 into his account.  But Choudhury has

28

United States District Court
For the Northern District of California

described, at best, a unilateral mistake.[2]  There is undisputed evidence that Grewal knew Choudhury would only receive $880,000 rather than $1 million.  And whether the doctrine of unilateral mistake serves to rescind the contract cannot be determined by the Court at this stage for numerous reasons.

First, a jury must determine whether the unilateral mistake doctrine voids the contract because Choudhury's mistake was due to the fault of Grewal or was known to Grewal. See Hernandez v. Badger Constr. Equip. Co., 28 Cal. App. 4th 1791, 1814 n.18 (1994). Choudhury has proffered evidence that he asked for and expected the additional $120,000, and a reasonable juror could conclude that Grewal knew he expected $1 million.  On the other hand, Grewal has proffered evidence that she told Choudhury he should not expect more money, and if a juror believed that testimony, they could reasonably conclude that the mistake was not known to Grewal or due to her conduct.  Either way, summary judgment is inappropriate.

Further, by its own terms § 1577 does not apply where the mistake was caused by "neglect of a legal duty."  "Neglect of a legal duty" means gross negligence, "the want of even scant care or an extreme departure from the ordinary standard of conduct."  Harris v. Rudin, Richman & Appel, 95 Cal. App. 4th 1332, 1342 (2002) (quotation omitted). Choudhury drafted the note, and signed it after having received only $880,000.  Under the circumstances, a reasonable juror could conclude that the mistake in the contract of making the note out for $1 million was the result of Choudhury's gross negligence.  Again, however, the ultimate point is that a jury needs to resolve these issues and therefore the cross-motions for summary judgment are denied as to Count Two.

_____

[2] Choudhury argues that there was a mutual mistake because Grewal also was mistaken about the nature of the contract.  According to Choudhury, Grewal thought the value of the note was $880,000, not the stated $1 million.  Grewal has proffered evidence disputing that she believed the note was worth only $880,000, see Grewal Depo. at 230:18-21, but even if the Court accepts Choudhury's position as true, the mutual mistake doctrine is inapposite because the doctrine is reserved for situations where there is a mutual mistake, i.e., "the same mistake shared by all of the parties."  27 Williston on Contracts § 70:107 (4th ed. 2008).  Choudhury has merely suggested that the parties labored under different mistakes, which is insufficient to void a contract.  See CACI 331 (defining bilateral mistake to require that defendant prove that both parties were mistaken about the same thing).

United States District Court
For the Northern District of California

1    III. Count Three: Common Count for Money Lent

2         Plaintiff Grewal moves for summary judgment on the third cause of action for money

3    lent.  In Count Three, Plaintiff alleges that she lent Defendant $880,000 and requests

4    repayment of that amount plus interest.  See FAC ¶¶ 20-21.

5         Under the common law of general assumpsit, it is customary to plead an indebtedness

6    using a "common count."  See Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 460

7    (1997).  The common law of assumpsit knew a common count "for money lent," which is the

8    appropriate form in which to state a cause of action for money loaned.  See Jones v. Re-Mine

9    Oil Co., 47 Cal. App. 2d 832, 843 (1941); see also 55 Cal. Jur. 3d Restitution § 25 ("Where

10   one person lends money to another, the law implies an obligation to repay it. An action in the

11   form of a common count for money lent is recognized as an appropriate pleading to recover

12   money so advanced.").

13        Grewal moves for summary judgment, arguing that the evidence is undisputed that

14   Grewal loaned Choudhury $880,000, which remains unpaid.  Choudhury opposes, arguing

15   that there is a triable issue whether the money was a loan or an investment.  Under California

16   law, a loan of money is defined as "a contract by which one delivers a sum of money to

17   another, and the latter agrees to return at a future time a sum equivalent to that which he

18   borrowed."  Cal. Civ. Code § 1912.  The question for the Court is therefore whether there is a

19   genuine dispute that Choudhury agreed to return the $880,000 principal, or whether

20   Choudhury did not agree to repay the entire principal because he believed that pursuant to

21   their agreement, Grewal could lose her principal through an investment scheme.

22        Grewal has proffered substantial evidence establishing that the transaction was a loan

23   because Choudhury agreed to return at a future time a sum equivalent to what he borrowed.

24   This evidence includes: (1) the promissory note, which – valid and enforceable or not –

25   evidences Choudhury's intent to repay the entire principal;[3] (2) Grewal's testimony that she

26

27        [3] For purposes of this claim, the Court need not assume that the promissory note is
     enforceable.  Even if it is unenforceable – as a result of unilateral mistake or otherwise – the fact
28   that Choudhury signed the note evidences that at the time of the transaction, he intended to repay
     Grewal the entire principal sum.  And if Choudhury intended to repay and agreed to repay the

8

1  understood from conversations with Choudhury that Choudhury would return the entire

2  principal plus interest, <u>see</u> Grewal Depo. 226:2-7; and (3) Choudhury's admission that at the

3  time he signed the promissory note, he intended to repay the entire principal, Choudhury

4  Decl. ¶ 8.

5      In retort, Choudhury mostly plays word games, pointing out that sometimes Grewal

6  called the transfer of money a "loan" and sometimes an "investment."  But that observation is

7  wholly irrelevant.   Under California law, "a transaction may be a loan although called

8  something else by the parties thereto"; the Court must "look to the substance of the

9  transaction and not to its form." <u>Great Am. Ins. Co. v. Nat'l Health Servs., Inc.</u>, 62 Cal. App.

10  3d 785, 791 (1976).  What matters is not what the parties called the transaction, but what

11  kind of transaction actually took place.

12      After scouring the record, the Court has identified only one piece of evidence that

13  supports Choudhury's position that he did not agree to return the entire principal to Grewal.

14  In his deposition, Choudhury testified that when he accepted Grewal's money and signed the

15  promissory note, he only intended to repay Grewal whatever principal was left over after the

16  gains and losses of investing.  <u>See</u> Choudhury Depo. 92:21-93:8.  Thus, if Choudhury

17  invested Grewal's money and lost 20% of the principal, he only expected to pay Grewal back

18  80% of the original principal.  <u>See id.</u> 93:8.

19      Although the Court finds Choudhury's deposition testimony dubious – and somewhat

20  in contradiction of and impeachable by his own declaration – it is not for the Court to weigh

21  the evidence at the summary judgment stage.  <u>See</u> <u>Neely v. St. Paul Fire and Marine Ins. Co.</u>,

22  584 F.2d 341, 344 (9th Cir. 1978).  The Court must presume that Choudhury is willing to

23  testify in open court and under penalty of perjury that he never agreed and never intended to

24  agree to repay Grewal "a sum equivalent to that which he borrowed."  That testimony would

25  create a triable issue of fact, and therefore a judgment on Count Three must be relegated to

26  the jury.  Accordingly, Plaintiff's motion for summary judgment on the common count for

27  money lent is denied.

28

_____

entire principal sum, then the transaction was a "loan" as defined by California law.

United States District Court
For the Northern District of California

1

CONCLUSION

2          The cross-motions for summary judgment are DENIED.  The trial in this action shall

3   commence Monday, August 4, 2008 at 8:30a.m.  Pretrial will be held Friday, August 1, 2008

4   at 2:00p.m.

5          **IT IS SO ORDERED.**

6

7



8   Dated:  May 30, 2008

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28