1  E. Jeffrey Banchero (SBN 93077)
   ejb@kastnerbanchero.com
2  Scott R. Raber (SBN 194924)
   srr@kastnerbanchero.com
3  KASTNER | BANCHERO LLP
4  20 California Street, Seventh Floor
   San Francisco, California 94111
5  Telephone: (415) 398-7000
   Facsimile: (415) 616-7000
6
7  Attorneys for Plaintiff and Counter-Defendant
   ELIZABETH GREWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ELIZABETH GREWAL, | CASE NO. C-07-4218 CRB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM FOR PROMISSORY FRAUD** |
| AMIT CHOUDHURY, | |
| Defendants. | |
| | Date:        July 25, 2008<br>Time:        10:00 A.M.<br>Courtroom:  8, 19th Floor |
| AND RELATED COUNTERCLAIM | (Before Hon. Charles R. Breyer) |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The pertinent facts in this case were presented to the Court earlier this year in the parties' cross-motions for summary judgment on claims in the First Amended Complaint of the plaintiff, Elizabeth Grewal ("Grewal"). On May 30, 2008, the Court issued an order denying both parties' motions – *i.e.,* plaintiff's motion for summary judgment on her claim to enforce the promissory note and on the common count for money lent, and defendant's motion for summary judgment on plaintiff's promissory-note and fraud claims. (Order Denying Cross-Motions for Summary Judgment, dated May 30, 2008.) The instant motion is directed to defendant's "counter-claim" for "promissory fraud" – which was not subject to the earlier motion practice.

As recited in the Court's May 30, 2008, order, on December 13, 2000, Grewal transferred $880,000 to the defendant, Amit Choudhury ("Choudhury"). (5/30/08 Order, p. 2:12-13.) Choudhury then prepared, signed, and presented to Grewal a promissory note in which he promised to her Grewal $1,000,000 plus 4% annual interest in five years. (*Id*., p. 2:17-19.) Choudhury did not pay the note when it came due, nor has he returned Grewal's $880,000 to her or any amount whatsoever. (*Id*., p. 4:5.)

When Grewal had the temerity to commence this action to enforce the promissory note and recover her money, Choudhury filed a counterclaim asserting "promissory fraud." The $880,000, he alleges, "was the first installment of the total $1,000,000 that Grewal wanted Choudhury to invest for her." (Counterclaim ¶ 9, p. 3:9-11.) Choudhury agreed to the promissory note "based on Grewal's commitment to provide the balance of the $1,000,000 investment capital." (*Id.* ¶ 10, p. 3:12-14.) But, "unbeknownst to [Choudhury] at the time, Grewal did not have the additional $120,000 in investible [sic] funds and, further, [ ] she did not intend to transfer the promised additional $120,000 in investment capital to Choudhury when she asked him to sign the Note." (*Id*. ¶ 13, p. 4:1-4.) Choudhury seeks compensatory damages and "punitive and exemplary damages" "to punish and deter Grewal for her fraudulent conduct." (*Id.* ¶ 18, p. 4:19-21.)

Whatever the truth of Choudhury's allegations – the Court in its order referred to Choudhury's deposition testimony as "dubious" (5/30/08 Order, p. 9:19) – at some point shortly after Choudhury signed the promissory note in late 2000, and by his own admission no later than

-1-

sometime during the first six months of 2001, he knew Grewal had no intention of transferring an additional $120,000 to him. He knew this because she did not transfer additional monies to him, and there is no evidence to suggest that he demanded she do so. As Choudhury testified, "I think the topic just sort of disappeared." (Choudhury Dep. 107:24-108:14.) Because Choudhury knew (or should have known) of Grewal's "promissory fraud" in 2001, his counterclaim, filed in 2007, is barred by the applicable three-year statute of limitations. Calif. Code of Civil Proc. § 338(d).

An element of a claim in fraud is damages – as Witkin puts it, "loss of a specific sum." B. Witkin, *Summary of California Law* § 816, p. 1178 (10th 2005). Choudhury's sole allegation is that Grewal's fraud caused him to suffer damages "including without limitation the loss of his own capital, as well as attorneys' fees and costs incurred in defending this action." (Counterclaim, ¶ 18, p. 4:15-16.) But, attorneys' fees and costs are not compensable in damages, and Choudhury, contrary to his allegation, lost no capital in reliance on the promise he claims Grewal made to him. At deposition, Choudhury testified he "put $120,000" into a certificate of deposit "to create one million," and that he used the certificate of deposit to collateralize a loan to Finexa, Inc., a company he controlled. (5/30/08 Order, p. 3:7-23). If, as Choudhury claims, the $120,000 was "lost" three months' later because Finexa did not repay the loan (*ibid.*), the loss was caused by Finexa. It was not attributable to Grewal's alleged promise to transfer Choudhury an additional $120,000. Choudhury testified at deposition:

> Q. [A]part from this $120,000 [that was invested in the certificate of deposit], did you suffer any other financial harm because of Elizabeth Grewal's refusal to provide you with an additional $120,000 in cash?
>
> A. Not directly. Not that I know of.
>
> Q. Any indirect financial harm that you suffered as a result of Ms. Grewal's refusal to provide an additional $120,000 in investments?
>
> A. Not that I know of at this time.

(Choudhury Dep. 111:21-112:4.) Because Choudhury suffered no losses as a result of Grewal's alleged false promise, he cannot recover on his claim for promissory fraud.

For these two independent reasons, Grewal, we will show, is entitled to summary judgment in her favor on Choudhury's counterclaim.

### STATEMENT OF FACTS RELAING TO THE COUNTERCLAIM[1]

**A.  Choudhury Knew, Or Should Have Known, No Later Than 2001 That Grewal Had No Intention of Transferring An Additional $120,000 to Him.**

On December 13, 2000, Grewal wired $880,000 from her brokerage account to Choudhury's bank account.  (Choudhury Dep., Ex. 1.)  After receiving the $880,000 from Grewal, Choudhury prepared and signed a promissory note in the amount of $1 million, which he presented to Grewal.  (Choudhury Dep., Ex. 7; 5/30/08 Order, p. 2:17-19.)  The note had a five-year term, and provided that Choudhury would pay Grewal $1 million with 4% annual interest.  *Ibid.*

Choudhury used the $880,000 from Grewal to purchase from Golden Gate Bank a certificate of deposit for $1 million in Choudhury's name.  (Choudhury Dep. 21:13-22:20, 24:22-25; 5/30/08 Order, p. 2:12-14, 3:7-10.)  After purchasing the $1 million certificate of deposit, Choudhury pledged the certificate of deposit as collateral for a $1 million line of credit between Golden Gate Bank and Finexa, Inc., a company he controlled.  (Choudhury Dep. 29:18-30, 32-33, Ex. 3; 5/30/08 Order, p. 3:7-14.)  Choudhury redeemed the certificate of deposit on April 2, 2001 for $1,014,494.05 – $1 million in principal, plus interest in the amount of $14,494.05.  (Choudhury Dep. 40:3-43:1, Exs. 4, 5.)  The proceeds of the certificate of deposit were used to pay off the Finexa line of credit, with the balance of the funds remaining in Choudhury's bank account.  (Choudhury Dep. 48:4-51:3, Ex. 4; 5/30/08 Order p. 3:12-23.)

Choudhury did not inform Grewal that he used the money she lent him to pay off the loan between Finexa and Golden Gate Bank.  (Choudhury Dep. 21:13-22:20, 47:11-15, 49:21-50:1; 5/30/08 Order, p. 3:9-10.)  Choudhury testified, rather, that he was "very embarrassed" when he

---

[1]  A detailed statement of the case set is set forth in Grewal's Memorandum in Support of Motion for Summary Judgment on Promissory Note and Common Count for Money Lent, dated April 18, 2008.  Grewal incorporates herein her memorandum and the evidence cited in support of that motion.  In response to a Court order, the deposition transcripts of the plaintiff and defendant were filed with the Court on April 30, 2008.  References to those transcripts will be cited as "Choudhury Dep., p. __" and "Ex. 4".)  For convenience, evidence cited in this memorandum is attached to the declaration of E. Jeffrey Banchero, dated June 20, 2008, filed herewith.  Unless otherwise noted, all emphasis in quotations in this memorandum has been added.

-3-

1  found out the monies lent to him had been used for that purpose because "that's not what he had
2  planned to do" with Grewal's money.  (Choudhury Dep. 47:11-15, 48:4-51:3.)

3  Choudhury does not recall any discussions with Grewal when he handed her the promissory
4  note, testifying specifically that he could not remember anything that he or Grewal said.
5  (Choudhury Dep., 99:22-100:3.)  Nor did Choudhury testify that he asked Grewal for an additional
6  $120,000 when he handed her the promissory note or at any other time.  Grewal has submitted a
7  declaration stating that "Choudhury never requested or demanded that I loan him an additional
8  $120,000 or any more money at all.  He said nothing about more loan money before he handed me
9  the promissory note, at the meeting I had with him in January, 2001, when he handed me the
10 promissory note, or at any time thereafter."  (Declaration of Elizabeth Grewal in Support of
11 Plaintiff's Motion for Summary Judgment on Promissory Note and Common Count for Money
12 Lent, ¶ 4, p. 2:11-16.)  Choudhury has no recollection to the contrary.  (Choudhury Dep. at 97:24-
13 98:5; RFA no. 21.)

14 Choudhury was asked at deposition:

15 Q.  *** Did there come a time in 2001 when you realized that you were not going
    to receive the additional $120,000 from Ms. Grewal?
16

17 A.  *I guess I did*.  I mean, it's not something I gave active thought to at that time.

18 Q.  *** Did you discuss that with Ms. Grewal [in 2001]?

19 A:  I know I asked for the additional 120,000.  *I don't know what the dates were, if it
    was the end of 2000, early 2001*.  I don't remember.
20
   Q.  Did there come a time when Ms. Grewal refused to provide the additional
21 $120,000 to you?

22 A.  I think the topic just sort of disappeared.  It just wasn't discussed.

23 (Choudhury Dep., p. 107:24-108:14.)

24 **B.    Choudhury Did Not Suffer A Loss As A Result Of Grewal's Alleged Promise
           To Transfer An Additional $120,000.**
25

26 In the counterclaim, Choudhury claims that "Grewal has caused Choudhury to suffer
27 damages, including without limitation the loss of his own capital ***."  (Counterclaim, ¶ 17, p.
28 4:14-15.)  By "loss of capital," Choudhury means the $120,000 that he used to complete the

-4-

purchase of the $1 million certificate of deposit – he can point to no other loss.  Thus, at deposition, Choudhury was asked, "What harm came to you because of Ms. Grewal's refusal in 2000 to provide you with an additional $120,000 in investment monies?"  He answered, "I – in order to get to one million, I put in $120,000 to create one million [for the certificate of deposit]" (Choudhury Dep. 110:5-20.)

> Q.  Now, apart from this $120,000, did you suffer any other financial harm because of Elizabeth Grewal's refusal to provide you with an additional $120,000 in cash?
>
> A:  [N]ot directly.  Not that I know of.
>
> Q:  Any indirect financial harm that you suffered as a result of Ms. Grewal's refusal to provide an additional $120,000 in investments?
>
> A:  Not that I know of at this time.

(Choudhury Dep. 111:21-112:4.)

But, as noted, Choudhury did not lose $120,000 in reliance on Grewal's alleged false promise.  Construed in the light most favorable to Choudhury, he lost $120,000 because he secured a loan from Golden Gate Bank to Finexa with an amount that included $120,000 that he raised from "an independent source" (5/30/08 Order, p. 3:7-8) – *i.e.*, from someone other than Grewal.  The $120,000 was lost because Finexa failed to repay the loan and Golden Gate Bank executed on its collateral – not because of anything Grewal said, did, or did not do.

## ARGUMENT

Under the familiar standard, a moving party is entitled to summary judgment under Rule 56(c) of the Fed. Rules of Civ. Proc. when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *See, e.g., Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

### A.  The Promissory-Fraud Claim Is Barred By California's Three-Year Statute of Limitations.

In California, a claim in fraud is subject to a three-year statute of limitations.  Calif. Code of Civil Proc. § 338(d).  Under the statute, the limitations period begins to run once a claimant is put

-5-

1  on notice of facts that would lead a reasonable person to have suspected wrongdoing.  *See, e.g.,*

2  *Metz v. CCC Information Services, Inc.*, 149 Cal. App. 4th 402, 415-416 (2d Dist. 2007) ("[T]his

3  state's courts 'have long interpreted Code of Civil Procedure Section 338 to commence upon the

4  discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person

5  to suspect fraud") (citations omitted, emphasis in original); *Garamendi v. SDI Vendome*, 276 F.

6  Supp.2d 1030, 1038-39 (C.D. Cal. 2003) (noting that fraud cause of action accrues once the

7  plaintiff discovers, or has reason to discover, the cause of action).

8        "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she

9  must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the

10  plaintiff must go find the facts; she cannot wait for the facts to find her."  *Garamendi*, 276 F.

11  Supp.2d at 1039, *citing Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988).  This "inquiry notice"

12  rule is intended to avoid the "undue delay and opportunistic behavior that would tend to result from

13  a rule that required awareness of every fact necessary for a fraud claim."  *Metz,* 149 Cal. App. 4th at

14  415-416.  A party bringing a fraud claim more than three years after the commission of the fraud

15  must "affirmatively excuse his failure to discover the fraud within three years after it took place, by

16  establishing facts showing that he was not negligent in failing to make the discovery sooner and

17  that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry."

18  *Denholm v. Hougton Mifflin Co.*, 912 F.2d 357, 362 (9th Cir. 1990) (granting judgment on

19  pleadings where plaintiff failed to allege facts showing why discovery of fraud could not have

20  occurred sooner).

21        Choudhury claims that he signed the promissory note in late December, 2000.  (5/30/08

22  Order, p. 2:24-26.)  In the counterclaim, Choudhury alleges that "[a]fter signing the Note, he again

23  asked Grewal to provide the remaining $120,000 in investment capital, *but Grewal refused*."

24  (Counterclaim, ¶ 15, p. 4:8-9.)  Choudhury could provide no testimony at deposition as to precisely

25  when this "refusal" took place – as he put it, "I don't know what the dates were, if it was the end of

26  2000, early 2001."  (Choudhury Dep., pp. 107:24-108:14.)  The "topic," he said, "just sort of

27  disappeared."  (*Ibid.*)

28

-6-
MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PROMISSORY FRAUD
Case No. C-07-4218 CRB

This alleged *refusal* by Grewal to provide an additional $120,000 put Choudhury on notice that Grewal had no intention of performing the "promise" that forms the basis of Choudhury's fraud claim. In other words, according to Choudhury's testimony, at some point in late 2000 or early 2001, he *knew* he would not be receiving additional money from Grewal, because Grewal refused to send him additional money. There is no evidence in the record that Choudhury made *any* demand of Grewal in the period from late 2000 or early 2001 to the date of the counterclaim that she pay him an additional $120,000, and no evidence that Grewal during this period led Choudhury to believe more money would be forthcoming. Nor can Choudhury offer any excuse for waiting until December, 2007 to assert a claim in fraud. *See Bank of America National Trust & Savings Association* (1956) 140 Cal. App. 2d 120, 127-30 (failure to investigate facts purporting to constitute fraud, given ample opportunity to do so, did not toll commencement of the statute of limitations).

Under these facts, Choudhury's fraud claim was time-barred no later than at some point in early 2004. Because Choudhury filed the counterclaim on December 3, 2007, the claim is barred, and Grewal is entitled to judgment on the claim.

**B.  There Is No Evidence Choudhury Suffered Lawful Damages As A Result Of An Alleged False Promise; In The Absence Of Damages, Grewal Is Entitled To Judgment.**

California recognizes "promissory fraud" as a "subspecies of an action for fraud based on a promise made without intention to perform." *Comerica*, 2007 WL 707505, at *3, citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Damages – a "pecuniary loss," *see Hull v. Sheehan* (1952) 108 Cal.App.2d 804 – resulting from a misrepresentation is an element of the claim. *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 839 (9th Cir. 2004); *Comerica Bank v. McDonald*, 2007 WL 707505, at *3 (N.D. Cal. 2007); *Lincoln Alameda Creek v. Cooper Industries, Inc.* 829 F. Supp. 325, 330 (N.D. Cal. 1992); B. Witkin, *Summary of California Law* §816 at 1178-79 (10th ed. 2007) ("The final element in actionable fraud is *damage resulting* from reliance on the misrepresentation") (emphasis in original); *see generally* Calif. Code of Civil Proc. § 1709.

-7-
MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PROMISSORY FRAUD
Case No. C-07-4218 CRB

It is axiomatic that Choudhury bears the burden of proving that he suffered damages as a result of Grewal's alleged false promise. In the absence of such proof, Grewal is entitled to judgment as a matter of law. *See Express LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 971 (C.D. Cal. 2006) (granting summary judgment on fraud claim in the absence of damages).

Choudhury testified that the only "financial harm" he suffered was the loss of $120,000 that he used to purchase a $1 million certificate of deposit from Golden Gate Bank. (Choudhury Dep., p. 111:21-112:4.) This "loss," however, is not compensable as damages, because the loss was not *caused* by Choudhury's *reliance* on Grewal's alleged false promise to transfer an additional $120,000 to Choudhury. The loss was caused by Choudhury's decision to use the money to collateralize a loan from Golden Gate Bank to Finexa and, further, by whatever losses Finexa suffered such that Finexa was not able to repay the loan, causing Golden Gate Bank to execute on the collateral. Grewal, of course, knew nothing about any of this (5/30/08 Order, p. 3:9-11) and did not cause it to happen.

Choudhury at times has claimed that the monies Grewal transferred to him were "an investment" – for example, in the counterclaim, he refers to the $120,000 as "remaining" "investment capital." (See also 5/30/08 Order, p. 9:4-7). But, if the additional $120,000 that Choudhury claims Grewal promised to transfer to him was an investment that Choudhury had no intention of returning to her (*id.*, p. 9:5-27), then Choudhury's claim for damages in fraud takes on a surreal quality. This was Grewal's money. If Choudhury's intention was "to repay Grewal whatever principal was left over after the gains and losses of investing" (*id*, p. 9:15-16), then he could not possibly be damaged by a "loss of capital" that she transferred to him. In this light, Choudhury is akin to a broker who takes money from a client, invests it, loses it, and then sues the client for fraud because she breached a promise to provide him more money to invest. The broker (and Choudhury) have lost nothing of their own.

Because Choudhury suffered no damages resulting from Grewal's alleged false promise, Grewal is entitled to judgment on the counterclaim.

-8-

# CONCLUSION

For the foregoing reasons, plaintiff, Elizabeth Grewal, is entitled to summary judgment on the counterclaim. The counterclaim should be dismissed and judgment entered on plaintiff's behalf.

Dated: June 20, 2008                                    KASTNER | BANCHERO LLP


By: _____/S/_____
    E. Jeffrey Banchero
    Scott R. Raber

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL

-9-
MEM. OF POINTS AND AUTHORITIES IN SUP. OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PROMISSORY FRAUD
Case No. C-07-4218 CRB