Harvey L. Leiderman (SBN 55838)
HLeiderman@ReedSmith.com
David S. Reidy (SBN 225904)
DReidy@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   (415) 543-8700
Facsimile:   (415) 391-8269

Attorneys for Defendant and Counter-Claimant
AMIT CHOUDHURY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMIT CHOUDHURY, an individual,<br><br>Defendant.<br><br>———————————————<br><br>AMIT CHOUDHURY, an individual,<br><br>Counter-Claimant,<br><br>vs.<br><br>ELIZABETH GREWAL, an individual,<br><br>Counter-Defendant. | Case No.: C-07-4218 CRB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM FOR FRAUD**<br><br>Date:     July 25, 2008<br>Time:    10:00 a.m.<br>Place:    Courtroom 8, 19th Floor<br><br>Compl. Filed:   July 19, 2007<br>Trial Date:     August 4, 2008<br><br>*Honorable Charles R. Breyer* |

Defendant and Counter-Claimant Amit Choudhury ("Choudhury") submits this memorandum of points and authorities in opposition to Plaintiff's Motion for Summary Judgment on Defendant's Cross-Claim [sic] for Promissory Fraud ("Motion").

## I. INTRODUCTION

Plaintiff seeks by this action to enforce a promissory note in the amount of $1,000,000, among other things. It is undisputed, however, that Choudhury only signed the note based on the Plaintiff's representation that she would transfer that amount to him, and that she failed to do so. Plaintiff transferred only $880,000, and Choudhury put up $120,000 of his own money believing that Plaintiff would reimburse that amount. Choudhury's $120,000 was thereafter invested along with Plaintiff's funds.

In his counter-claim, Choudhury alleges that Plaintiff induced him to sign the promissory note for $1,000,000 by falsely representing that $1,000,000 would be transferred. In reliance on Plaintiff's misrepresentation, Choudhury delivered the signed note and, following the first transfer of $880,000, believed that Plaintiff would soon transfer the balance. When she failed to do so, Choudhury reasonably believed that Plaintiff would not seek to enforce the note for the larger amount. Indeed, in the years following the transfer, Plaintiff herself never treated the note as representing any obligation owed to her by Choudhury – because the note did not reflect any transaction that ever occurred, and certainly not one on which the parties reached a mutual understanding. Not until December 31, 2006, did Plaintiff reveal her true colors by tendering a demand to Choudhury – not for $880,000, but rather to enforce the note in the full amount of $1,000,000, to which she is not entitled, plus interest, plus a "penalty" of hundreds of thousands of dollars to which she also is not entitled. Choudhury did not know until December 31, 2006, that Plaintiff had intended to attempt to enforce the note she had induced him into executing, for an amount that she never gave him and apparently never intended to give him. As such, Choudhury's fraud claim is not time barred.

Plaintiff also argues that Choudhury has not been damaged by Plaintiff's fraud. But it is undisputed that Choudhury would not have placed $120,000 of his own funds at risk had Plaintiff

not mislead him, and would not have incurred substantial attorneys fees and costs as a consequence of Plaintiff's wrongful attempt after December 31, 2006 to enforce the fraudulently-induced note.

At the very least, triable issues of fact exist as to whether Plaintiff concealed from Choudhury, until December 31, 2006, the fact that she fully intended to enforce the note even though she had no intention of giving the balance of the $1 million she promised, and whether Plaintiff's concealment caused Choudhury's damages. These genuine issues of fact should be determined by a jury in this case, much like the other disputed facts that led this Court to deny the parties' previous cross-motions for summary judgment. For all these reasons, Plaintiff's Motion should be denied.

## II.  STATEMENT OF MATERIAL FACTS

Prior to December 2000, Plaintiff and Choudhury agreed that Plaintiff would transfer $1,000,000 to Choudhury. Declaration of Amit Choudhury filed in support of Choudhury's Motion for Summary Judgment, Doc. 34 ("Choudhury Decl."), at ¶3. Plaintiff also admits that the amount she discussed transferring to Choudhury in September 2000 was $1,000,000. Deposition of Elizabeth Grewal ("Grewal Depo.") at 186:6-19; 189:8-13.[1] Choudhury believed Plaintiff wanted him to invest the money (Choudhury Decl. at ¶3); for her part, Plaintiff believed that a return on the money, if any, would be determined by the results of Choudhury's investing it. *Id.* at 199:11-14.

Prior to December 13, 2000, Choudhury prepared a document entitled "Term Promissory Note." Choudhury Decl. at ¶4; Ex. A. The note recites that Choudhury would pay Plaintiff the sum of $1,000,000, plus annual interest at a rate of 4%, "for value received," upon maturity of the note in five years. *Id.* Choudhury believed that the "value" referred to in the note was the full sum of $1,000,000. *Id.* The note was dated January 2, 2001, but was not signed by either Choudhury or Plaintiff on that date; in fact, Choudhury signed the note in late December 2000, and Plaintiff signed the note after January 2, 2001. Choudhury Decl. at ¶¶5, 7.

On December 13, 2000, Plaintiff transferred to Choudhury the sum of $880,000. Grewal Depo. at 202:2-4; Choudhury Depo., Ex. 1. When he received the $880,000, Choudhury still

---

[1] On April 30, 2008, pursuant to this Court's April 28, 2008 Order (Doc. 46), the deposition transcripts of Plaintiff and Choudhury were submitted with exhibits to the Court. Citations to the transcripts are indicated as "Grewal Depo. at ---" for Plaintiff, and "Choudhury Depo. at ---" for Defendant Choudhury.

1  expected to receive an additional $120,000 to make up the sum of $1,000,000, as had been
2  discussed. Choudhury Decl. at ¶6. Plaintiff claims that she informed Choudhury, prior to December
3  13, 2000, that $880,000 was all she "came up with," and that $880,000 was what Choudhury would
4  get "and that's all." Grewal Depo. at 208:21-209:2. But when the $120,000 balance was not
5  immediately forthcoming, on December 23, 2000, Choudhury sent Plaintiff an email suggesting that
6  Plaintiff liquidate a separate investment to raise the additional $120,000 required to fully fund the
7  $1,000,000 they had discussed, and which was recited in the note as the "value received." *See*
8  Supplemental Declaration of Amit Choudhury filed in on May 2, 2008, ("Supp. Choudhury"), at ¶3,
9  Ex. A. Plaintiff did not respond to Choudhury's email in a timely manner, but when she finally did
10 respond, on January 16, 2001, she replied that the suggestion on how to get the additional money
11 "Sounds fine," indicating that she still intended to make up the full $1,000,000. *Id.*

12      In order to complete the $1,000,000 he expected to receive from Plaintiff, Choudhury
13 contributed $120,000 of his own money. Choudhury Depo. at 110:12-13. The entire $1,000,000
14 was parked in a certificate of deposit (CD) in Choudhury's name at Golden Gate Bank. *Id.* at
15 110:14-20. The CD was used to collateralize a line of credit for Finexa, Inc., the same business in
16 which Plaintiff herself was employed and had already invested just a few months before. Supp.
17 Choudhury Decl. ¶2; Grewal Depo. at 49:3-5; 154:5-22. Plaintiff was the Marketing Director of
18 Finexa: it was her job to prepare marketing materials in order to solicit investment capital for the
19 company, and she considered an investment in Finexa to be a good one. Grewal Depo. at 139:25-
20 140:22; 144:7-19; 146:17-148:9; 151:9-20; 154:5-22.

21      Later in 2001, Choudhury realized that he was not going to receive the additional $120,000
22 from Plaintiff, and the topic "disappeared." Choudhury Depo., 107:24-108:14. Five years passed
23 with no word from Plaintiff about any claim that Choudhury owed her $1,000,000 plus interest. On
24 December 31, 2006, Plaintiff and Choudhury met and discussed Choudhury's efforts to return
25 Plaintiff's investment. Choudhury Depo. at 125:17-126:1. Up until that time, Choudhury had been
26 attempting to come up with $880,000 – *not* $1,000,000 – to return to Plaintiff the "loss in her
27 investment." *Id.* at 125:8-16. As such, Choudhury did not believe prior to that time, and indeed had
28 no reason to believe, that Plaintiff would attempt to treat the note as an enforceable obligation and

recover $1,000,000. Instead, Choudhury acted at all times on the assumption that the amount at issue was $880,000.

On or about January 2, 2007, Plaintiff sent Choudhury a letter demanding full payment on the note in the amount of $1,000,000, plus interest. *See* Choudhury Depo., Ex. 11. Plaintiff also grossed up her demand to include a "default penalty/premium," which she later testified was not based on any agreement but rather on her newly acquired belief that the principal should have accrued the equivalent of "credit card interest" rates, for a total of $2 million. Grewal Depo. at 292:1-293:5. This action was initiated when Plaintiff filed a complaint in California Superior Court on July 19, 2007. Choudhury removed the case to this Court and filed his Answer and Counter-Claim for Promissory Fraud on December 3, 2007.

### III.   ARGUMENT

#### A.   Choudhury Did Not Discover Plaintiff's Intent Until She Attempted to Enforce a Note That Did Not Reflect the Parties' Transaction

Choudhury's Counter-Claim for fraud is expressly based on the allegation that Plaintiff is attempting to enforce a $1,000,000 note that was obtained under false pretenses. Choudhury alleges that Plaintiff "deliberately misrepresented her intention to provide [an] additional $120,000 in order to induce [Choudhury] *to sign the Note*." Choudhury's Counterclaim ("XC") at ¶14 (emphasis added). Choudhury also expressly alleges that, by inducing him "to sign the Note and attempting to enforce the Note, [Plaintiff] has caused Choudhury to suffer damages." XC at ¶17.

In her Motion, Plaintiff argues that Choudhury "should have known" in 2001 that Plaintiff had no intention of transferring an additional $120,000 to him. Motion at 3. But Plaintiff misses the point. Choudhury expressly alleges that Plaintiff induced him to execute a note for $1 million, based on the representation that she would transfer that amount to him. Choudhury did not know that Plaintiff both (a) never intended to transfer the full $1 million but (b) intended to attempt to enforce the note for the full amount anyway. The earliest that Choudhury discovered Plaintiff's fraudulent intent was December 31, 2006, when he discovered that Plaintiff intended to enforce the note after all those years. XC, at ¶¶14-17. *By filing this action, Plaintiff has made clear that she wants to recoup a sum that she never transferred to Choudhury.*

It is *undisputed* in this case that, prior to December 2000, Plaintiff and Choudhury discussed a transfer of $1,000,000. Grewal Depo. at 186:6-19; 189:8-13. It is also *undisputed* that Plaintiff never transferred that amount; that Choudhury understood the "value received" stated in the note to be $1,000,000 [Choudhury Decl. at ¶4]; and that Choudhury signed the note under the *specific* expectation that he would receive that sum, and not $880,000 [*id.* ¶ 6]. It is also undisputed that, once it became clear Plaintiff was not going to transfer an additional $120,000, *neither Plaintiff nor Choudhury treated the note thereafter as enforceable in the amount of $1,000,000*. See Grewal Depo. at 226:2-7 (admitting the "principal" was $880,000). In fact, Plaintiff fails to point to even one piece of evidence demonstrating that she ever communicated to Choudhury her intent to enforce the note at any time between 2001 and December 31, 2006.

Plaintiff claims that she informed Choudhury that $880,000 was the total amount she would transfer, but this testimony is clearly disputed by Choudhury's December 23, 2000, email suggesting a method for Plaintiff to raise the additional funds, and especially by Plaintiff's response that Choudhury's suggestions "sounds fine." Supp. Choudhury, at ¶3, Ex. A. At the very least, this raises triable issues of fact as to whether Choudhury believed the full $1 million was forthcoming and whether he could have discovered Plaintiff's fraudulent intent at that time. In fact, Choudhury did not discover Plaintiff's scheme until six years later, when, in January 2007, Plaintiff sent a letter demanding payment of $1,000,000, plus interest, *plus* an unspecified "default penalty/premium." Grewal Depo. at 292:1-293:5. Thus, Choudhury's fraud claim did not accrue until that time. *See Metz v. CCC Info. Svcs., Inc.*, 149 Cal. App. 4th 402, 415-416 (2007) (holding that statute of limitations on fraud commences upon the "discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person to suspect fraud").

The Motion is noteworthy for its total lack of factual support: Plaintiff offers no evidence to show that, prior to 2007, she ever intended to enforce the note or ever even treated the note as representing the parties' obligations; she offers *no explanation whatsoever* as to why Choudhury would put up $120,000 of his own funds to be invested with Plaintiff's if, as she now implausibly claims, he knew she only intended to transfer $880,000; and Plaintiff fails utterly to explain why she is entitled to a return of $1 million dollars even though she never transferred that amount and

1  Choudhury only tendered the note in the expectation that the Plaintiff would raise the full $1 million
2  and send it to him.
3        Choudhury's discovery of Plaintiff's fraud occurred on or after December 31, 2006. He filed
4  his Counter-Claim in this action on December 3, 2007, less than a year later. The applicable statute
5  of limitations in California for fraud is three years from "discovery, by the aggrieved party, of the
6  facts constituting the fraud." Cal. Code Civ. Proc. § 338(d). Accordingly, the statute of limitations
7  did not run on his Counter-Claim for Fraud. At a minimum, a triable issue of fact exists as to when
8  Choudhury "discovered" Plaintiff's fraudulent intent and, on that basis alone, Plaintiff's Motion
9  must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

     **B.**     <u>**Plaintiff Induced Choudhury to Contribute $120,000 of His Money**</u>

      Plaintiff argues that Choudhury did not lose $120,000 as a result of Plaintiff's false inducement of the note. Mot. at 5. Plaintiff confuses the elements of reliance and causation. *See OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 870 (2007) ("elements of reliance and proximate causation are distinct."). "Although reliance and proximate causation are distinguishable, the facts establishing their existence are often intertwined." *Id.* at 871. As set forth above, it is *undisputed* in this case that Choudhury signed the note *in reliance on* his agreement with Plaintiff that she would transfer $1,000,000. Plaintiff does not, and cannot dispute this basic fact. It is also undisputed that Choudhury contributed $120,000 in the belief that he would receive that amount from Plaintiff. The only question, then, is whether Plaintiff's concealment of her intent not to provide $1 million, but to induce a note in that amount anyway, proximately caused Choudhury's damages. *See Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1166 (2005).

      In *Persson*, supra, plaintiff was a shareholder of a closely held corporation who agreed to sell his shares to the other shareholder. The seller alleged that the buyer fraudulently concealed information about a new product being planned by the corporation, which would affect future profits and, consequently, could have increased the value of the shares being sold. 125 Cal. App. 4th at 1147-1151. The buyer argued, as Plaintiff does here, that the fraudulent concealment of material information did not "cause" the seller's damages. The buyer claimed that because the seller used a

method of valuing his shares that would not have taken the future product information into account, the seller's own actions had "caused" the loss. *Id.* at 1165-1167. The Court rejected this notion, holding that the seller "was deprived of information he should have had ... and from this deprivation it is reasonable to conclude the concealment was a proximate cause of the damages." *Id.* at 1167.

The same reasoning applies here. Choudhury contributed $120,000 of his own funds to an account that contained Plaintiff's contribution of $880,000. Once Choudhury placed his own funds at risk believing they were a temporary substitute for Plaintiff's investment capital, the harm was caused – even if Choudhury did not discover Plaintiff's fraudulent intent until she tried to collect on the bogus note. In addition, Choudhury has incurred the cost of defending against Plaintiff's effort to enforce the note. It is undisputed that Choudhury's money was only placed at risk as a result of Plaintiff's scheme to turn an alleged $880,000 obligation into an alleged $1,000,000 obligation, by which Choudhury was deprived of the information that Plaintiff intended to enforce the note for $1,000,000 without actually tendering that amount. Choudhury's loss therefore was proximately caused by Plaintiff's concealment. *See Presson*, 125 Cal. App. 4th at 1167. The element of damages in satisfied, therefore, and Plaintiff's Motion should be denied on this basis as well.

## IV. CONCLUSION

Defendant and Counter-Claimant Amit Choudhury respectfully requests that Plaintiff's Motion be denied in its entirety.

DATED: July 3, 2008

REED SMITH LLP

By  /s/
David S. Reidy

Attorneys for Defendant and Counter-Claimant
AMIT CHOUDHURY

DOCSSFO-12519872.4