E. Jeffrey Banchero (SBN 93077)
ejb@kastnerbanchero.com
Scott R. Raber (SBN 194924)
srr@kastnerbanchero.com
KASTNER | BANCHERO LLP
20 California Street, Seventh Floor
San Francisco, California 94111
Telephone: (415) 398-7000
Facsimile: (415) 616-7000

Attorneys for Plaintiff and Counter-Defendant
ELIZABETH GREWAL

RECEIVED JUL 2 4 2008

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL,<br><br>    Plaintiff,<br><br>    v.<br><br>AMIT CHOUDHURY,<br><br>    Defendants.<br><br>———————————————<br><br>AND RELATED COUNTERCLAIM | CASE NO. C-07-4218 CRB<br><br>**OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 4:  TO EXCLUDE EXPERT OPINION EVIDENCE OFFERED BY GREGORY A. PINSONNEAULT**<br><br>Pretrial Conf.:  August 1, 2008<br>Time:             2:00 P.M.<br>Place:            Courtroom 8, 19th Floor<br><br>Compl. Filed:  July 19, 2007<br>Trial Date:     August 4, 2008<br><br>(Before Hon. Charles R. Breyer) |

## INTRODUCTION

On June 9, 2008, plaintiff served the Expert Report of Gregory A. Pinsonneault Pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Mr. Pinsonneault, a Senior Associate at LitiNomics, Inc. of Palo Alto, California, submitted the report "to provide opinion regarding the

1    damages [plaintiff, Elizabeth Grewal] has suffered as a result of the claims outlined in the first

2    amended complaint in this case." (Pinsonneault Rep., p. 1)[1] Mr. Pinsonneault calculates the

3    effective rate of interest provided under the terms of the promissory note and the amount of

4    prejudgment interest due (i) in the period subsequent to the maturity of the promissory note and (ii)

5    under the fraud and common-count claims.

6         On June 11, 2008, defendant filed an objection to Mr. Pinsonneault's report, claiming that it

7    should have been filed more than 90 days in advance of trial. Defendant does not argue the merits

8    of the objection in the instant motion. Rather, he submits a canned *Daubert*-style motion to

9    exclude Mr. Pinsonneault's testimony as "irrelevant" and "unreliable."

10        On April 18, 2008 – four months prior to the trial date that was scheduled at that time – Mr.

11   Pinsonneault filed a declaration in support of plaintiff's motion for summary judgment that set

12   forth his conclusions on damages.[2] As a result, and because plaintiff served Mr. Pinsonneault's

13   Rule 26 report in early June, two months in advance of trial, defendant and his lawyers have had

14   ample time to consider Mr. Pinsonneault's proposed testimony. Nor does the timing of Mr.

15   Pinsonneault's report violate a CMC order issued by the Court. For these reasons, and because Mr.

16   Pinsonneault's methods and opinions are reliable, not prejudicial, and will assist the jury in

17   computing damages owed to plaintiff, this motion should be denied.

18                                    **ARGUMENT**

19   **I.    Mr. Pinsonneault's Testimony Is Admissible Under Rule 702 Of The Evidence
           Code And The Rule in _Daubert_.**

20

21        Defendant argues that Mr. Pinsonneault's damages analysis does not reflect "scientific,

22   technical, or other specialized knowledge" and will "not assist the trier of fact," because "simple

23   interest calculations fall well within the knowledge of jurors to understand and determine." (Def.'s

24   Motion in Limine No. 4, p. 2:8-14.) Defendant asserts that Mr. Pinsonneault's "expert opinion has

25   _____

26   [1] Mr. Pinsonneault's report is attached as Exhibit A hereto.
     [2] The Declaration of Gregory A. Pinsonneault in Support of Plaintiff's Motion for Summary
27   Judgment on Promissory Note and Common Count for Money Lent, filed April 18, 2008, is
     attached hereto as Exhibit B.

28   _____-2-_____

1   virtually no probative value, will confuse and mislead the jury regarding the complexity of the

2   calculations at issue, and could further confuse and mislead the jury concerning the legitimacy of

3   Plaintiff's claims under the alleged promissory note" (*id.*, p. 2:24-26). This is presented as an *ipse*

4   *dixit;* there is no explanation of why this should be so.

5        Contrary to defendant, Mr. Pinsonneault's opinion is not merely a calculation of "simple

6   interest." He has calculated, and will testify to and explain, the *effective* rate of interest on a

7   promissory note that promises 4% interest and $1,000,000 in return for a loan of $880,000. This

8   testimony is necessary, relevant, and helpful because, under California law, the Court and jury are

9   *required* to treat the amount Choudhury promised to pay in addition to what he was loaned

10  ($120,000) as *interest* on the principal amount ($880,000) of the loan. *See, e.g., Otis v. Eisner*

11  (1935) 7 Cal.App.2d 496, 499 (enforcing $450,000 promissory note although borrower received

12  $405,000 loan) ("[w]hen a bonus is paid for the making of a loan, it must be considered as interest

13  and taken out of the principal at the time of the making of the loan, and interest then computed

14  upon the remainder of the principal").[3] Although the logic of this rule is not difficult to state and

15  makes perfect sense, the arithmetic is something that even a sophisticated juror will need help

16  with.[4]

17       The rules for admitting expert testimony are well known. Generally, "[e]xpert testimony is

18  admissible pursuant to Rule 702 if it is both relevant and reliable." *Elsayed Mukhtar v. California*

19  *State University*, 299 F.3d 1053, 1063 (9th Cir. 2002). "There are four factors to consider in

20  determining if expert testimony will assist the trier of fact: (i) whether the expert is qualified; (ii)

21  whether the subject matter of the testimony is proper for the jury's consideration; (iii) whether the

22

23

24  [3]  See additional cases for this proposition set forth in Plaintiff's Memorandum In Support of
    Motion for Summary Judgment on Promissory Note and Common Count for Money Lent, pp 8-9,
25  filed April 18, 2008.
    [4]  We quote from Mr. Pinsonneault's report (Exh. A, p 4-5): "The effective rate of interest can be
26  calculated by applying a financial formula based on simple interest. The amount due on a loan can
    be calculated using the financial formula: $FV = PV \times (1 + (R \times T))$. Where FV is the future value
27  (amount due at the end of the loan), PV is the Present Value (amount loaned), R is the annual
    interest rate, and T is the duration of the loan in years. Solving this formula for the annual interest
28  rate results in the following: $R = ( (FV / Pv) - 1/ T$."

-3-

1   testimony conforms to a generally accepted explanatory theory; and (iv) whether the probative

2   value of the testimony outweighs its prejudicial effect. *Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th

3   Cir. 1998). Under *Daubert v. Merrell Dow Pharms, Inc.,* 509 U.S. 579, 594 (1993), "the inquiry

4   envisioned by Rule 702 is … a flexible one" and must be "tied to the facts of a particular case."

5   *Elsayed Mukhtar,* 299 F.3d at 1063 (citations omitted). "A trial court not only has broad latitude in

6   determining whether an expert's testimony is reliable, but also in deciding *how* to determine the

7   testimony's reliability." *Id.* at 1064 (citations omitted; emphasis in original).

8          It is simply not true that Mr. Pinsonneault's report is at once too simple to be unnecessary

9   and too complicated such that it will cause undue prejudice. There are several elements to

10  plaintiff's damages and Mr. Pinsonneault's report:  simple interest on a $1,000,000 promissory note

11  for five years; pre-judgment interest at the *effective* rate of interest for the period from the date the

12  note was due until judgment; and a calculation of pre-judgment interest due on the fraud and

13  common count claims – *i.e.,* interest on the $880,000 that Choudhury received from Grewal and did

14  not return. As noted, the effective-rate-of-interest calculation is perfectly suited to expert testimony

15  because the concept and somewhat arithmetic calculations are somewhat complex. When the

16  effective rate of interest is factored into pre-judgment interest calculations for a seven and one-half

17  years, the need for Mr. Pinsonneault's testimony becomes manifest.

18         As this Court is doubtless aware, damages experts are routinely permitted to testify in

19  commercial trials. For example, in *Zic v. The Italian Government Travel Office,* 130 F.Supp.2d

20  991, 999 (N.D. Ill. 2001), defendant argued that the opinion of plaintiff's damages expert "would

21  not be helpful to the trier of fact because it is not sophisticated enough. … The gravamen of

22  [defendant's] objection is that [the expert] report contains no more than unexplained grade school

23  arithmetic or simple number crunching" – an argument much like defendant's argument in the

24  instant motion. The court overruled the objection and permitted the damages expert to testify,

25  citing *U.S. v. Hall,* 93 F.3d 1337, 1342 (7th Cir. 1996) (courts are "not compelled to exclude the

26  expert just because the testimony may, to a greater or lesser degree, cover matters that are within

27  the average juror's comprehension"), and *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410,

28

-4-

415 (7th Cir. 1992) ("Where parties offer expert testimony on damages, the methodologies used by the expert need not be intellectually sophisticated but must not insult the intelligence") (internal quotations omitted).

As in the *Zic* case, so too here – Mr. Pinsonneault's opinions are admissible even though portions of his testimony will cover "matters within the average juror's comprehension." In exercising its "broad latitude" in determining whether Mr. Pinsonneault should be permitted to testify, *Elsayed Mukhtar,* 299 F.3d at 1064, we recommend a practical approach: Not only will Mr. Pinsonneault's testimony be helpful to the jury, it will not consume a great deal of time. The testimony will assist the Court in conducting an efficient, fair trial. This is not a case in which a great number of witnesses will testify. As we understand matters presently, there will be no more than five or six witnesses at trial, including Mr. Pinsonneault, so his appearance will not unduly prolong the trial.

For these reasons, Mr. Pinsonneault's expert opinions on damages should be admitted.

II.   **Defendant Has Had Ample Time To Consider Mr. Pinsonneault's Proposed Testimony; For This Reason, And Because The Rule 26 Report Did Not Violate A CMC Order, Mr. Pinsonneault Should Not Be Excluded From Testifying.**

The Court conducted a case management conference on November 30, 2007. At the conference, the Court referred the case to Magistrate Judge LaPorte for a settlement conference, and scheduled a further Case Management Conference for February 29, 2008. Judge LaPorte conducted a settlement conference on February 15, 2008. The parties did not reach a settlement.

On February 19, 2008, the parties submitted a Joint Supplemental Case Management Statement that referred the Court to the "proposed dates of the close of expert discovery, the last date to file dispositive motions, or the dates for trial that each party proposed in the Case Management Statement dated November 2, 2007."

At the February 29, 2008, case management conference, the Court set trial for August 18, 2008. (See Civil Minutes, dated Feb. 29, 2008.) When plaintiff's counsel inquired if the Court intended to enter the Joint Case Management Statement and Proposed Order that the parties had

OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 4: TO EXCLUDE EXPERT OPINION EVIDENCE OFFERED BY GREGORY A. PINSONNEAULT
Case No. C-07-4218 CRB

1   submitted in November, 2007, or some form of order setting pretrial deadlines, the Court indicated

2   that "the parties should work that out" or words to this effect. The Court did not enter a CMC order

3   or otherwise set deadlines for close of discovery, motion practice, or other pretrial activities, and so

4   declined to set a deadline for the submission of expert-witness reports.

5          On April 18, 2008, plaintiff filed a Motion for Summary Judgment on Promissory Note and

6   Common Count for Money Lent. At the same time, plaintiff submitted a declaration from Mr.

7   Pinsonneault in support of the motion. (Exhibit B hereto.) Mr. Pinsonneault's declaration

8   calculates an effective rate of interest on the promissory note and pre-judgment interest due. These

9   were the same calculations, with minor adjustments,[5] that appear in Mr. Pinsonneault's expert-

10  witness report, which was submitted almost two months later.

11         On May 30, 2008, the Court conducted a hearing on plaintiff's and defendant's cross-

12  motions for summary judgment, and denied both parties' motions. The order denying the motions

13  advanced the trial date from August 18 to August 4, 2008.

14         Without the pretrial deadlines imposed by a CMC order, the parties in this case have

15  conducted pretrial activity in a manner that has been practical and efficient. As the Court suggested

16  at the February 29, 2009, case management conference, by and large the parties have been able "to

17  work things out" – the exception is defendant's objection to Mr. Pinsonneault's testimony. For

18  example, plaintiff filed a motion for summary judgment on the counterclaim that was set for

19  hearing on July 25 – one week before the pretrial conference scheduled for August 1. Defendant

20  did not object. (The Court rescheduled the hearing and decided the motion on July 22.) Defendant

21  noticed depositions for July 10, July 18, a second deposition on July 18, and July 21, and conducted

22  three of the four depositions on the dates indicated, with the fourth deposition pending and to be

23  completed during the week of July 28. Plaintiff did not object. A motion for summary judgment

24  on the eve of trial and the taking of several depositions within thirty days of trial are unusual in that

25

26  _____

27  [5] Mr. Pinsonneault's declaration calculates pre-judgment interest using compound interest. In his
    report, he calculates pre-judgment interest using simple interest.

28
OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 4: TO EXCLUDE EXPERT OPINION EVIDENCE OFFERED BY
GREGORY A. PINSONNEAULT
Case No. C-07-4218 CRB

1    Federal-court CMC orders routinely prescribe deadlines for these activities months in advance of

2    trial.

3          In light this procedural record, we respectfully offer three propositions:  First, plaintiff

4    relied on the absence of an expert-disclosure deadline in a CMC order when it filed Mr.

5    Pinsonneault's Rule 26 report in early June, 2008; second, had the Court set a deadline for the

6    disclosure of expert witnesses in a CMC order, plaintiff would have met the deadline; and third,

7    because the parties have conducted significant pretrial activity within a few weeks of trial,

8    defendant's objection that Mr. Pinsonneault's report is late because it was served two months

9    before trial rings hollow.  This is true, in particular, because, as noted, the report is closely similar

10   to the declaration (Exh. B) Mr. Pinsonneault submitted four months before trial in support of

11   plaintiff's motion for summary judgment.

12         For these reasons, we respectfully request the Court to overrule the objection to Mr.

13   Pinsonneault's Rule 26 report.

## CONCLUSION

15         For all the foregoing reasons, plaintiff, Elizabeth Grewal, respectfully requests that

16   defendant's motion in limine number four be denied.

17

18   DATED:  July 22, 2008                    KASTNER | BANCHERO LLP

19

20                                           By:  E. Jeffrey Banchero

21                                                E. Jeffrey Banchero
                                                  Scott R. Raber

22

23                                           Attorneys for Plaintiff and Counter-Defendant
                                             ELIZABETH GREWAL

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 4:  TO EXCLUDE EXPERT OPINION EVIDENCE OFFERED BY
GREGORY A. PINSONNEAULT
Case No. C-07-4218 CRB

1  **PROOF OF SERVICE**

2  I am over eighteen years old, not a party in this litigation, and my business address is 20

3  California Street, 7th Floor, San Francisco, California 94111.  On July 22, 2008, I caused to be

4  served a true copy of the attached on the parties in said action as follows:

5
6  **OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 4:  TO EXCLUDE EXPERT OPINION EVIDENCE OFFERED BY GREGORY A. PINSONNEAULT**

7
8  ]  (BY REGULAR MAIL) by placing a true copy thereof enclosed in a sealed
9  envelope with postage thereon fully prepaid, for collection and mailing at my
   place of business following ordinary business practices.  Said documents will be
10  deposited with the United States Post Office mailbox at San Francisco,
   California, addressed as follows:

11  ☐  (BY OVERNIGHT DELIVERY/FEDERAL EXPRESS) by placing a true copy
12  thereof enclosed in a sealed envelope, with delivery fees prepaid, deposited with
   the authorized overnight/Federal Express carrier/box at San Francisco, California,
13  addressed as follows:

14  ☐  (BY PERSONAL SERVICE) by causing to be personally delivered by hand and
15  leaving a true copy with the person(s) named below and/or a person having
   charge of the office at the address shown below:

16  ☐  (BY FACSIMILE) by transmitting the foregoing document(s) by facsimile to the
17  party(ies) identified below by using the facsimile number(s) indicated.  Said
   transmission(s) were verified as complete and without error.

18
19  Harvey Leiderman, Esq.
   David Reidy, Esq.
20  REED SMITH LLP
   Two Embarcadero Center, Suite 2000
21  San Francisco, CA  94111-3922
   Tel: 415.543.8700
22  Fax: 415.391.8269

23  I declare under penalty of perjury that the foregoing is true and correct and that this
24  declaration was executed on July 22, 2008.

25  *Lana Nemirovsky*
26  Lana Nemirovsky

27
28
-8-

# EXHIBIT A

1    E. Jeffrey Banchero (SBN 93077)
     ejb@kastnerbanchero.com
2    Scott R. Raber (SBN 194924)
     srr@kastnerbanchero.com
3    KASTNER | BANCHERO LLP
4    20 California Street, Seventh Floor
     San Francisco, California 94111
5    Telephone: (415) 398-7000
     Facsimile: (415) 616-7000
6
7    Attorneys for Plaintiff and Counter-Defendant
     ELIZABETH GREWAL
8

9

10                   UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13   ELIZABETH GREWAL,                    CASE NO. C-07-4218 CRB

14              Plaintiff,

15       v.                               **EXPERT REPORT OF GREGORY A.
                                          PINSONNEAULT PURSUANT TO RULE
16   AMIT CHOUDHURY,                      26 OF THE FED. RULES OF CIV. P.**

17              Defendants.

18

19   AND RELATED COUNTERCLAIM

20

21

22

23

24

25

26

27

28

-1-

Case No. C-07-4218 CRB

United States District Court
Northern District of California


Elizabeth Grewal

v.

Amit Choudhury

**Expert Report of Gregory A. Pinsonneault**
June 09, 2008
Volume I

LitiNomics

# Elizabeth Grewal v. Amit Choudhury

## Table of Contents

### Expert Report of Gregory A. Pinsonneault

### Volume 1

**A**  **Expert Report of Gregory A. Pinsonneault**

| Tab # | Description | Date | Bates Range |
|---|---|---|---|

**B**  **Damages Schedules**

| Tab # | Description | Date | Bates Range |
|---|---|---|---|

**C**  **Curriculum Vitae of Gregory A. Pinsonneault**

| Tab # | Description | Date | Bates Range |
|---|---|---|---|

**D**  **List of Documents Considered**

| Tab # | Description | Date | Bates Range |
|---|---|---|---|

**E**  **Sources**

| Tab # | Description | Date | Bates Range |
|---|---|---|---|
| 1 | Exhibit # 6 to Choudhury: First Amended Complaint for Fraud and Deceit, Recovery on a Promissory Note, and Common Counts | 11/9/07 | |
| 2 | Exhibit # 49 to Grewal: Letter from Charles Schwab to Elizabeth Eilert TTEE | 12/13/00 | 100007 - 100007 |
| 3 | Exhibit # 1 to Choudhury: Golden Gate Bank: Account Statement for Amit Choudhury (12/1/00 thru 12/29/00) | 12/29/00 | AC-001 - AC-002 |
| 4 | Excerpt from Deposition of Elizabeth Grewal | 1/11/08 | |
| 5 | Exhibit # 7 to Choudhury: Term Promissory Note - Debtor: Amit Choudhury, Lender: Elizabeth Grewal | 1/2/01 | AC-018 - AC-018 |
| 6 | Exhibit # 22 to Choudhury: Email from Elizabeth Eilert to Amit Choudhury, Re: Got your v-mail | 7/17/06 | AC-071 - AC-071 |
| 7 | Exhibit # 27 to Choudhury: Email from Elizabetht to Amit Choudhury, Re: Note | 8/9/06 | 100019 - 100019 |
| 8 | Exhibit # 11 to Choudhury: Demand for Payment from Elizabeth Grewal to Amit Choudhury | 1/2/07 | AC-019 - AC-019 |

**LitiNomics**

# Tab A

United States District Court
Northern District of California


Case No. C-07-4218 CRB


Elizabeth Grewal
vs.
Amit Choudhury


Expert Report of Gregory A. Pinsonneault
June 9, 2008

I.      Introduction...............................................................................................1

II.     Summary of Opinions.............................................................................2

III.    Background...............................................................................................3

IV.     Bases for Opinions.................................................................................4

   A.   Amount Due Ms. Grewal Per the Term Promissory Note...........4

   B.   Effective Rate of Interest Provided Under the Terms of the Promissory Note...............................................................................................4

   C.   Prejudgment Interest.............................................................................5

        1.   Prejudgment Interest Due – Promissory Note.....................5

        2.   Prejudgment Interest Due – Return of Money Transferred.................5

V.      Documents, Data and Other Information Considered.................6

VI.     Qualifications...........................................................................................6

VII.    Compensation.........................................................................................7

i

## I.    Introduction

1.    I have been retained on behalf of Elizabeth Grewal to provide an opinion regarding the damages she has suffered as a result of the claims outlined in the first amended complaint in this case.[1]  In forming the opinions I express in this report, I have assumed that Ms. Grewal establishes liability on one or more of these claims. I have no opinion on any of the liability issues in this case.

2.    My opinions and comments address the following matters:

- The amount due Ms. Grewal upon the maturity of the promissory note;

- The effective rate of interest provided under the terms of the promissory note; and

- The amount of prejudgment interest due 1) in the period subsequent to the maturity of the promissory note and 2) under an alternative damages scenario.

---

[1] First Amended Complaint for Fraud and Deceit, Recovery on a Promissory Note, and Common Counts. [1.E1]  Note: References in this report are to [Volume.Tab].

1

## II.   Summary of Opinions[2]

3.    Based on the analyses that I have completed to date, I have reached the following conclusions:

- According to the terms of the promissory note, the amount due Ms. Grewal on January 1, 2006 is $1,200,000;[3]

- The effective rate of interest provided by the terms of the promissory note is 7.19%;[4]

- Applying a 7.19% prejudgment interest rate, prejudgment interest from the maturity of the promissory note through August 4, 2008 is $223,740 with prejudgment interest accruing at a rate of $237 per day after that date;[5]

- Under an alternative damages scenario in which Ms. Grewal is awarded $880,000 as of December 13, 2000, prejudgment interest is calculated as follows:

  - ➤ Applying a 7% prejudgment interest rate, prejudgment interest from December 13, 2000 through August 4, 2008 is $471,029 with prejudgment interest accruing at a rate of $169 per day after that date;[6]

  - ➤ Applying a 10% prejudgment interest rate, prejudgment interest from December 13, 2000 through August 4, 2008 is $672,899 with prejudgment interest accruing at a rate of $241 per day after that date.[7]

---

[2] I reserve the right to modify my opinions if additional information is made available to me or if I become aware of factors that were not presented to me in preparing my analysis.

[3] Schedule 1.1 [1.B].

[4] Schedule 2.1 [1.B].

[5] Schedule 3.1 [1.B].

[6] Schedule 3.2 [1.B].

[7] Schedule 3.3 [1.B].

### III.   Background

4.     The claims in this matter arise from a transfer of money from Elizabeth Grewal to Amit Choudhury.  On December 13, 2000, Ms. Grewal transferred $880,000 out of her Charles Schwab account to Mr. Choudhury's account.[8]  Approximately one month later, Ms. Grewal received a Term Promissory Note detailing the terms of a loan to Mr. Choudhury.[9]

5.     The Term Promissory Note is dated January 2nd, 2001 and is signed by both Amit Choudhury and Elizabeth Grewal.[10]  The Promissory Note states:[11]

> FOR  VALUE  RECEIVED  Amit  Choudhury  ("Debtor")
> unconditionally promises to pay to the order of Elizabeth Eilert
> Grewal, ("Lender") on demand at San Francisco, California,
> the sum of $1,000,000 USD (One Million US Dollars).  Debtor
> agrees to pay interest from the date of this Term Promissory
> Note on the said sum or the amount from time to time
> remaining unpaid at the rate per annum (calculated based on
> a 365 day year), which is equal to 4.0%.  Such interest shall
> be calculated and payable upon maturity of this Note upon
> expiration of the term, which is deemed to be Five years.
>
> The prinicpal and interest of this Term Promissory Note shall
> be paid in US dollars without set-off or counterclaim.

6.     After the maturity of the Term Promissory Note on January 1, 2006, Ms. Grewal sent several emails requesting payment of the money owed by Mr. Choudhury.[12]  On January 2, 2007, Ms. Grewal made a formal Demand for Payment to Mr. Choudhury to make full payment per the terms of the promissory note.[13]  I understand that no payments have been made by Mr. Choudhury to Ms. Grewal.

---

[8] Charles Schwab Notice dated December 13, 2000, 100007. [1.E2]; *see also* Golden State Bank Account Statement for Amit Choudhury for the period 12/01/00 through 12/29/00. AC-001. [1.E3]

[9] Deposition of Elizabeth Grewal, January 11, 2008, p. 223-224. [1.E4]

[10] Term Promissory Note, January 2, 2001, AC-018. [1.E5]

[11] Term Promissory Note, January 2, 2001, AC-018. [1.E5]

[12] Email dated July 17, 2006 from Elizabeth Eilert to Amit Choudhury, AC-071 [1.E6]; *see also* Email dated August 9, 2006 from Elizabeth to Amit Choudhury, 100019. [1.E7]

[13] Demand for Payment from Elizabeth Eilert Grewal to Amit Choudhury, January 2, 2007. AC-019. [1.E8]

## IV.  Bases for Opinions

### A.  Amount Due Ms. Grewal Per the Term Promissory Note

7.    The amount due Ms. Grewal upon the maturity of the promissory note is calculated in Schedule 1.1 at tab [1.B].  The promissory note indicates that Amit Choudhury agreed to pay interest at a rate per annum equal to 4.0%.  Counsel for Ms. Grewal has requested that I apply simple interest (i.e., no compounding) in the calculation of the amount due.    Therefore, I have calculated the amount due upon maturity of the promissory note based on simple interest.

8.    The term of the promissory note is five years.  For each of the five years of the promissory note, the interest due for that year is calculated by applying the 4.0% interest rate to $1,000,000 as specified in the note.  Therefore, total interest due according to the terms of the promissory note is $200,000.[14]  Upon maturity of the promissory note on January 1, 2006, the amount due to Ms. Grewal is $1,200,000.[15]

### B.  Effective Rate of Interest Provided Under the Terms of the Promissory Note

9.    The promissory note specifies that this promise to pay is in return for "value received."  I understand the "value received" refers to $880,000 transferred from Ms. Grewal to Mr. Choudhury on December 13, 2000.[16]  Therefore, in addition to the interest she receives under the terms of the promissory note, Ms. Grewal also receives $120,000 more than the amount she originally transferred to Mr. Choudhury.  Counsel for Ms. Grewal has requested that I treat this additional amount as interest.  Therefore, the effective rate of interest that Ms. Grewal received for the $880,000 lent to Mr. Choudhury is more than the 4.0% interest rate specified in the Term Promissory Note.

10.    The effective rate of interest provided by the terms of the promissory note is calculated in Schedule 2.1 of tab [1.B].  The effective rate of interest can be calculated by applying a financial formula based on simple interest.  The amount due on a loan can be calculated using the financial formula:

--------------------

[14] Calculated as $1,000,000 x 4% x 5 Years.
[15] Schedule 1.1 [1.B].
[16] Deposition of Elizabeth Grewal, January 11, 2008, p. 223-224. [1.E4]

$$FV = PV \times \{ 1 + (R \times T) \}$$

Where FV is the future value (amount due at the end of the loan), PV is the Present Value (amount loaned), R is the annual interest rate, and T is the duration of the loan in years. Solving this formula for the annual interest rate results in the following:

$$R = \{ (FV / PV) - 1 \} / T$$

11.    To calculate the effective rate of interest, the formula requires the amount loaned, the amount due at the end of the loan, and the duration of the loan. Here, the amount loaned is the $880,000 transferred on December 13, 2000, the ending amount is the $1,200,000 due upon maturity of the promissory note on January 1, 2006, and the duration is approximately 5.05 years (the time between December 13, 2000 and January 1, 2006).[17] Applying the formula results in an effective rate of interest of 7.19%.

### C. Prejudgment Interest

#### 1. Prejudgment Interest Due – Promissory Note

12.    The Term Promissory Note is dated January 2, 2001 and has a duration of five years;[18] therefore the maturity date of the promissory note is January 1, 2006.

13.    I understand that trial is scheduled to begin on August 4, 2008.[19] I have calculated prejudgment interest from the maturity of the Term Promissory Note (January 1, 2006) through the start of trial (August 4, 2008) in Schedule 3.1 of tab [1.B]. The effective rate of interest of 7.19% is used as the prejudgment interest rate and prejudgment interest is calculated using simple interest.

14.    Prejudgment interest due through August 4, 2008 is $223,740. Therefore, the total amount due Ms. Grewal through August 4, 2008 including prejudgment interest is $1,423,740. Prejudgment interest accrues at a rate of $237 per day after that date.[20]

#### 2. Prejudgment Interest Due – Return of Money Transferred

---

[17] Schedule 2.1 [1.B].
[18] Term Promissory Note, January 2, 2001, AC-018 [1.E5].
[19] Discussion with Counsel.
[20] Schedule 3.1 [1.B].

15.    Counsel for Ms. Grewal has asked me to calculate prejudgment interest under an alternative scenario in which damages are based on the $880,000 Ms. Grewal transferred to Mr. Choudhury on December 13, 2000. I was informed by counsel that under Ms. Grewal's fraud claim and the common counts in the first amended complaint, the jury may decide she is entitled to a judgment that awards her $880,000 as of the date of the original transfer, December 13, 2000. On this assumption, counsel has requested that I calculate prejudgment interest for the period December 13, 2000 through August 4, 2008, the start of trial. In this alternative scenario, counsel has asked me to calculate prejudgment interest using two alternative statutory rates, 7% and 10%.

16.    Applying a 7% prejudgment interest rate results in prejudgment interest due of $471,029. Therefore, the total amount due Ms. Grewal in this alternative damages scenario as of August 4, 2008 (including prejudgment interest) is $1,351,029. Prejudgment interest accrues at a rate of $169 per day after that date.[21]

17.    Applying a 10% prejudgment interest rate results in prejudgment interest due of $672,899. Therefore, the total amount due Ms. Grewal in this alternative damages scenario as of August 4, 2008 (including prejudgment interest) is $1,552,899. Prejudgment interest accrues at a rate of $241 per day after that date.[22]

## V. Documents, Data and Other Information Considered

18.    A list of the documents and data that I considered in forming my opinions is contained in this report at tab [1.D].

## VI. Qualifications

19.    My qualifications, including a list of cases in which I have provided consulting services, are set forth in my curriculum vitae, which is included at tab [1.C] of this report. I have not provided expert testimony at trial or deposition.

---

[21] Schedule 3.2 [1.B].
[22] Schedule 3.3 [1.B].

6

## VII.    Compensation

20.    LitiNomics is being compensated for my time spent on this matter at a rate of $325 per hour.


Gregory A. Pinsonneault