1   E. Jeffrey Banchero (SBN 93077)
    ejb@kastnerbanchero.com
2   Scott R. Raber (SBN 194924)
    srr@kastnerbanchero.com
3   KASTNER | BANCHERO LLP
    20 California Street, Seventh Floor
4   San Francisco, California 94111
    Telephone: (415) 398-7000
5   Facsimile: (415) 616-7000
6
7   Attorneys for Plaintiff and Counter-Defendant
    ELIZABETH GREWAL
8
9
10                    UNITED STATES DISTRICT COURT
11                  NORTHERN DISTRICT OF CALIFORNIA
12
13  ELIZABETH GREWAL,                    CASE NO. C-07-4218 CRB
14          Plaintiff,
15      v.                               **PLAINTIFF'S MOTION IN LIMINE
                                         NO. 2 TO EXCLUDE BELATEDLY
16  AMIT CHOUDHURY,                      PRODUCED DOCUMENTS AND ALL
                                         REFERENCES THERETO AT TRIAL**
17          Defendants.
18                                       Trail Date:    August 4, 2008
                                         Time:          9:30 A.M.
19                                       Courtroom:     8, 19th Floor
20                                       (Before Hon. Charles R. Breyer)
21  AND RELATED COUNTERCLAIM
22
23
24
25
26
27
28

1

## I.    INTRODUCTION AND FACTUAL BACKGROUND

2       Plaintiff, Elizabeth Grewal, moves this Court *in limine* to exclude from trial two documents

3  suddenly – and belatedly – produced by defendant Amit Choudhury on July 29, 2008.  One of the

4  documents – an October 17, 2008 email message – may be a forgery.  The second document is a

5  promissory note issued in April, 2001 obligating Finexa, Inc. to pay Choudhury $1 million.

6       Both documents relate to key issues in this litigation and both fall squarely within plaintiff's

7  multiple requests for documents, served months ago, during the discovery phase of this litigation.

8  Choudhury, however, did not produce the documents in response to plaintiff's discovery requests

9  much less identify them as required by Rule 26 of the Federal Rules of Civil Procedure.  Rather,

10  Choudhury hand-picked the documents for production and inclusion on his exhibit list a few days

11  before trial in the course of responding to a subpoena that Grewal served on one of his companies,

12  Pinnacle Partners, Inc. ("PPI").

13       Even as Choudhury has improperly produced the above documents on the eve of trial, he

14  has simultaneously failed to produce *all* documents in response to valid subpoenas seeking Finexa

15  records issued to his various companies.  Although Choudhury has now produced purported Finexa

16  records only days before trial, just two weeks ago he refused to accept service of a subpoena on

17  Finexa (and several of his other companies, as explained below).  Choudhury has also pointedly

18  refused to produce *any* Finexa bank records and virtually no email communications, although this

19  week he produced *boxes* of irrelevant Finexa records in response to the PPI subpoena.  The record

20  establishes that Choudhury has had complete control over Finexa documents since the inception of

21  this litigation but has not made a complete production.

22       Choudhury's belated production of the purported October 17, 2000 email and the

23  promissory note prejudices plaintiff.  Federal Rules of Civil Procedure 26 and 37 bar this sort of

24  unfair surprise on the eve of trial.  At best, defendant failed to timely or diligently search for the

25  documents without justification; at worst, he has deliberately withheld them until he perceived a

26  tactical advantage for producing them.  Accordingly, the defendant should be barred from

27

28

PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE BELATEDLY PRODUCED DOCUMENTS
AND ALL REFERENCES THERETO AT TRIAL
Case No. C-07-4218 CRB

1    introducing the documents into evidence and from making any reference to matters concerning

2    their substance or existence.

3        **A.        The Belatedly Produced Documents**

4        On the afternoon of July 29, 2008 (five days before the August 4, 2008 commencement of

5    trial), defendant's counsel provided two documents responsive to multiple document requests

6    issued by plaintiff months ago.  *See* Declaration of Scott R. Raber, dated July 31, 2008 ("Raber

7    Decl."), Ex. A (correspondence from D. Reidy attaching two documents.)  Mr. Reidy indicated that

8    the "documents were located [July 28, 2008] among documents maintained by Pinnacle Partners,

9    Inc." ("PPI") – one of Choudhury's companies – in response to a subpoena plaintiff issued to PPI

10    on July 14, 2008.

11            1.        The October 17, 2000 Email

12        The first of these documents purports to be an email from plaintiff to Choudhury, dated

13    October 17, 2000 (hereafter, the "October 17, 2000 email"), and references a "big investment with

14    [Choudhury]," and other statements attributed to Grewal regarding her portfolio as of mid-October

15    2000.  *See* Raber Decl., Ex. A.  As demonstrated by the original document Choudhury produced,

16    which has perforations from a three-hole punch, the October 17, 2000 was culled from a three-ring

17    binder of documents.  The defendant, however, did not produce the binder itself or any adjoining

18    documents from the binder.  According to PPI's representative and purported custodian of records,

19    Karen Choudhury (Mr. Choudhury's spouse), the document was found only in hard-copy.  She

20    could not explain any aspect of the email's provenance, including what computer was used to

21    create it, where it had been kept, or where the electronic version of the email had been stored,

22    reviewed, or printed.

23        Plaintiff has serious doubts as to the authenticity of this document.  As an offer of proof,

24    plaintiff will testify:

25        1)  That she has no recollection of sending the email;

26        2)  The email does not accurately reflect the substance of any conversations between

27            plaintiff and Choudhury;

28

-2-

3) Ms. Grewal, whose professional life has included copy editing and publishing, would also testify that the email's inclusion of four ellipses, as opposed to three, and its use of the numeral "5" rather than the spelled word "five" are each wholly uncharacteristic of her writing.

4) At the inception of this litigation, plaintiff and a Kastner Banchero paralegal searched the two computers Grewal used at that time (a Mac and PC) – and found no evidence of the email on either computer.

5) In addition, Julie Pearl – an investor in Mr. Choudhury's Pinnacle Partners hedge fund who previously sued Mr. Choudhury in state court for failure to provide information to Pinnacle Partners investors – has no evidence or recollection suggesting that she ever received the email preceding Ms. Grewal's purported response to Mr. Choudhury. (Ms. Pearl, like Ms. Grewal, was a similarly situated investor in Pinnacle Partners L.P.)

6) Lastly, as noted in plaintiff's trial brief, plaintiff intends to introduce testimony at trial from one of her witnesses that Mr. Choudhury, apart from this issue, has made material misrepresentations under oath on key facts in this litigation in his deposition.

In short, defendant's tardy production of an inauthentic document on the eve of trial is, based on the facts of this case, hardly an accident or belated "discovery."

2.     The Convertible Secured Promissory Note From Finexa to Choudhury

The second belatedly-produced document is a Convertible Secured Promissory Note from Finexa, Inc. to Amit Choudhury, in the amount of $1,000,000, dated April 1, 2001.  The document is a note from Finexa, Inc. (the company which Choudhury founded, and at which he and plaintiff both worked), signed by its then-CFO, David Hayford, promising to repay the sum that Choudhury used to retire Finexa's debt at Golden Gate Bank, as Finexa wound down its operations in March 2001.

3.     PPI (Through Choudhury) Produces Incomplete Records In Response To Plaintiff's Subpoena

On July 30, 2008, one day after providing the October 17, 2000 email and the promissory note, PPI produced *eight boxes* of documents related to Finexa in response to a subpoena.  Karen Choudhury testified on behalf of PPI as its designated "custodian of records"; however, Ms. Choudhury hardly possessed the sort of basic knowledge required of a records custodian.[1]  Thus, she could not affirmatively state whether the Finexa documents were true and correct copies, or business records prepared in the ordinary course, as she admittedly had never worked for Finexa and had not been involved in their initial storage or compilation.

Ms. Choudhury acknowledged that Mr. Choudhury, as PPI's managing officer, located the two documents from a storage unit in San Francisco leased by PPI, and personally pulled them out to be added to his own exhibit list two days before the return date on PPI's subpoena.  Ms. Choudhury testified that Mr. Choudhury has control of the rented storage space (and, in fact, gave his permission on July 20, 2008 for Ms. Choudhury to be added to the PPI storage space account).  Mrs. Choudhury testified that Mr. Choudhury had also specially culled the October 17, 2000 email and the Convertible Secured Promissory Note from the eight boxes produced one day later at PPI's deposition.

Plaintiff is plainly prejudiced by the late production of these documents.  Had she received them in the normal course of discovery, it would have certainly required additional discovery and allowed her to pursue other relevant factual issues implicated by each of the documents.

**B.     Plaintiff Issued Multiple Document Requests Over Several Months Seeking These Belatedly Produced Documents, Only To Be Sandbagged With An Incomplete Production Days Before Trial**

The discovery record establishes that throughout this litigation plaintiff has repeatedly sought information bearing on Choudhury's conduct and communications in connection with Grewal's loan, and has repeatedly tried to ascertain what happened to the proceeds of that loan.  The following discovery requests expressly called for the belatedly-produced Finexa documents:

---

[1]   If the Court so requests, plaintiff is prepared to provide transcript excerpts of the July 30, 2008 deposition once it has been completed and made available to counsel (on an expedited basis).

PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE BELATEDLY PRODUCED DOCUMENTS
AND ALL REFERENCES THERETO AT TRIAL
Case No. C-07-4218 CRB

August 10, 2007 (Plaintiff's Doc. Req. No. 1):  This set of requests sought all documents that relate to any agreements, oral or written, between Choudhury and Grewal; all documents relating to the $880,000 that Choudhury's account at Golden Gate Bank received on December 13, 2000; all communications between Grewal and Choudhury relating to the term promissory note or that relate to the $880,000 that he received in his account on Dec. 13, 2000.  At a minimum, the request pertaining to communications covered the email produced.  These requests also related to the April 2001 Convertible Secured Promissory Note from Finexa to Choudhury, inasmuch as the document relates to what Choudhury did with plaintiff's money. Raber Decl., Ex. C.

December 21, 2007 (Plaintiff's Doc. Req. No. 2):  Plaintiff's second set of document requests likewise covered the two documents produced.  In particular, the requests sought all manner of documents and communications relating to (i) Grewal's decision to invest in Finexa, FXI Investments, and Pinnacle Partners Capital L.P.; (ii) her requests for informal advice on financial planning; and (iii) any investments of money on her behalf; and (iv) Choudhury's use of the money Grewal transferred to him.   Raber Decl., Ex. D.

The October 17, 2000 email falls within each of these requests.  The convertible secured promissory note falls within the scope of Request No. 16.

January 2, 2008 (Document Request No. 3):   Plaintiff's entire third set sought financial documents (balance sheets and capitalization tables) from Finexa for the period from 2000 to the present.  It also sought balance sheets and capitalization tables for FXI investments.  The requests also sought documents relating to any loans by Grewal to Finexa and any investments by Grewal in Finexa. Raber Decl., Ex. E.

January 15, 2008 (Document Request No. 4):   Plaintiff's Fourth Request for Production of Documents again sought documents similar to those requested in Set No. 3 – including financial statements for Finexa and FXI Investments from July 2000 to September 2001.   Raber Decl. F.

On February 7, 2008, Choudhury offered boilerplate objections to Document Request Nos. 3 and 4, and produced nothing.  On March 11, 2008, plaintiff's counsel then sent a meet and confer letter regarding the insufficiency of Choudhury's responses.  Raber Decl., Exs. C-F, H.

1    Defendant then served "Supplemental Responses to Certain of Plaintiff's Requests For

2    Production of Documents, Sets Three and Four" on March 24, 2008.  With respect to Finexa

3    financials, capitalization tables, investments by Grewal in Finexa, Inc., loans, capitalization tables

4    for FXI Investments LLC, contributions of capital to Finexa, and the Finexa, Inc. promissory note,

5    Choudhury indicated that he was not in possession, custody, or control of any documents

6    responsive to this request, *and did not believe that such documents existed* (even though such

7    documents were part of what he produced on July 30, 2008 pursuant to the PPI subpoena.)  Raber

8    Decl., Ex. G.

9    In mid-June 2008, plaintiff's counsel interviewed Ana Ramirez, who previously worked for

10    Pinnacle Partners Systems, Inc. and Pinnacle Partners, Inc.  In the course of that interview, Ms.

11    Ramirez stated that she believed relevant records for Finexa were in a storage facility south of

12    Market.  On July 9, 2008, Mr. Banchero interviewed Mr. Hayford, who indicated that Choudhury

13    stored business-related documents in the garage of his apartment on Leavenworth Street.

14    **C.    Choudhury Improperly Rejects Service of Subpoenas Issued To His Companies**

15    Based upon this newly-received information as to the whereabouts of Finexa's documents,

16    plaintiff, in an abundance of caution, diligently issued subpoenas on July 14, 2008 to *all* entities

17    known to be controlled by Choudhury, namely, Pinnacle Partners Capital L.P., Pinnacle Partners

18    Systems, Inc., Finexa Inc., FXI Investments LLC, Pinnacle Partners Capital Management LLC, and

19    Pinnacle Partners, Inc.   Service was effected on the entities' offices at 2000 Van Ness, San

20    Francisco.  Initially, Ms. Choudhury said she would accept service for Finexa, Inc., Pinnacle

21    Partners Capital Management LLC and Pinnacle Partners, Inc., and refused to accept the others.

22    However, before accepting the subpoenas, she called Mr. Choudhury and afterwards stated that she

23    would only accept two subpoenas – for Pinnacle Partners Capital Management LLC and Pinnacle

24    Partners, Inc., but *not* Finexa.

25    Plaintiff's counsel next attempted to serve the remaining subpoenas on Choudhury

26    personally (as an executive, officer, agent of the companies) at the conclusion of the settlement

27    conference on July 16, 2008.  Choudhury and his counsel refused to accept service.  On July 25,

28

PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE BELATEDLY PRODUCED DOCUMENTS
AND ALL REFERENCES THERETO AT TRIAL
Case No. C-07-4218 CRB

2008, Mr. Leiderman returned the remaining subpoenas, stating that his firm did not represent Choudhury in any other capacity, and did not represent any of the entities identified in the subject subpoenas. Raber Decl., Ex. I.

It was not until the July 14, 2008 subpoena of PPI that Choudhury finally produced two hand-selected documents *through his counsel, Reed Smith*, who, in turn, apparently believe they are important to Choudhury's case. PPI's production of Finexa documents only underscores the ongoing evasiveness of Choudhury's responses to legitimate discovery: although Grewal has asked for all manner of Finexa's banking records in her subpoenas to the Finexa and Pinnacle entities, defendant still has *not* produced any such records.

## II. THE BELATEDLY PRODUCED DOCUMENTS SHOULD HAVE BEEN PROVIDED IN RESPONSE TO PLAINTIFF'S VALID DOCUMENT REQUESTS; FED. R. CIV. P. 26 AND 37 NOW PRECLUDE THEIR INTRODUCTION AT TRIAL

A party who has responded to discovery demands is under a duty to provide full and accurate responses in the first instance, and to supplement his discovery responses "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Fed. R. Civ. P. 37(c)(1) provides that "[if] a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In addition to or instead of this sanction, the court may also order payment of reasonable expenses caused by the party's failure to provide information; may inform the jury of the party's failure; and may impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(A-C). This rule "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) without need" for a motion to compel disclosure under Fed. R. Civ. P. 37(a)(2)(A). *See* Advisory Committee Notes to Fed. R. Civ. P. 37 (1993 Amendments); *see also Yeti By Molly, Ltd. v. Deckers Outdoor Corp.* 259 F.3d 1101, 1106 (9th Cir. 2001) (acknowledging that the sanction under Fed. R. Civ. P. 37(c)(1) is "self-executing" and "automatic"); *ATD Corp. v. Lydall*, 159 F.3d 534, 550-551 (Fed. Cir. 1998) (purpose of the federal

1  rules is to prevent unfair and prejudicial surprise).  The burden is on the party facing sanctions to

2  prove harmlessness.  *Yeti By Molly, Ltd.*, 259 F.3d at 1107.

3      Here, the evidence demonstrates that Choudhury, without any justification, failed to

4  produce the October 17, 2000 email and the Convertible Secured Promissory Note for months –

5  even though he undoubtedly had reason to know the whereabouts of such documents.  Choudhury

6  has had sole control over the documents in PPI's possession at all times in this case.  Instead, he

7  waited until days after plaintiff had submitted her trial brief to produce new evidence relating to

8  David Hayford (whose affidavit accompanied plaintiff's trial brief.)  Moreover, Choudhury has

9  known throughout this litigation – *or easily had the ability to know* – exactly where Finexa-related

10  documents were held, and how to search for them.  His timing and selective production in response

11  to subpoenas only compels the conclusion that he has deliberately sought to ambush plaintiff with

12  "evidence" now that trial has arrived.  Plaintiff has been prejudiced, and the conduct is plainly

13  sanctionable under Rule 37(c).

14  **III.    CONCLUSION**

15      For the foregoing reasons, plaintiff respectfully requests that the Court grant her motion *in*

16  *limine* to exclude the documents belatedly produced by Choudhury on July 29, 2008, as well as all

17  references to such documents at trial.

18

19  Dated:  July 31, 2008                     KASTNER | BANCHERO LLP

20

21                                    By:  _____/S/_____

22                                        E. Jeffrey Banchero
                                        Scott R. Raber

23                                    Attorneys for Plaintiff and Counter-Defendant

24                                    ELIZABETH GREWAL

25

26

27

28