Harvey L. Leiderman (SBN 55838)
HLeiderman@ReedSmith.com
David S. Reidy (SBN 225904)
DReidy@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   (415) 543-8700
Facsimile:    (415) 391-8269

Attorneys for Defendant
AMIT CHOUDHURY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMIT CHOUDHURY, an individual,<br><br>Defendant. | Case No.: C-07-4218 CRB<br><br>**DEFENDANT'S [CORRECTED] OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 – EXHIBIT ATTACHED**<br><br>Pretrial Conf.:   August 1, 2008<br>Time:              9:00 a.m.<br>Place:             Courtroom 8, 19th Floor<br><br>Compl. Filed:    July 19, 2007<br>Trial Date:       August 4, 2008<br><br>***Honorable Charles R. Breyer*** |

1  Defendant Amit Choudhury ("Defendant") hereby opposes Plaintiff's Motion in Limine
2  No. 2 to exclude "belatedly" produced documents ("Motion").

## I. INTRODUCTION

Plaintiff attempts by this Motion to exclude documents she admits are relevant "to key issues in this litigation." While Plaintiff questions the authenticity of one of the documents, her principal objection seems to be that the documents were located late in discovery. Plaintiff's Motion should be denied for at least the following reasons:

- The documents at issue were located by non-party <u>Pinnacle Partners, Inc.</u> ("PPI"), and timely produced by that entity on July 30, 2008, pursuant to a subpoena. That is when Plaintiff requested the documents, and that is when they were produced. *See* Declaration of Scott R. Raber ("Raber Decl."), Ex. B. Thus, Plaintiff, and not Defendant, caused the delay in locating the documents, by not subpoenaing them until three weeks before trial.

- Defendant Amit Choudhury, an individual, had previously produced all documents in <u>his</u> possession, but did not come into possession of the new documents until they were located by PPI on July 29, 2009. *See* Raber Decl., Ex. A.

- Plaintiff has suffered no prejudice from the production of two documents comprising a total of five pages. Plaintiff found time to prepare an eight page motion plus a supporting declaration concerning the documents, and also has ample time to review the documents themselves. In fact, Plaintiff questioned PPI's custodian about the documents in a four hour deposition conducted on July 30, 2008.

- Issues concerning the weight to be given the evidence are not appropriate for consideration by the Court on a motion in limine. Plaintiff's accusation that one of the documents "may be a forgery," is demonstrably absurd, and is a crude effort to prejudice the Court against Defendant, as we amply demonstrate in Section II.C, below.

OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE No. 2                    Case No. C-07-4218 CRB

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II. ARGUMENT

### A. The Documents At Issue Were Not in Defendant's Possession

Plaintiff alleges that Defendant "hand-picked the documents for production … a few days before trial in the course of responding to a subpoena that Grewal served on one of his companies, Pinnacle Partners, Inc. ("PPI")." This statement is false. Defendant was not the subject of the PPI supboena, did not prepare documents in response to the PPI subpoena, and did not have possession of the documents at issue. Rather, the documents relate to Plaintiff's former employer, Finexa, Inc. ("Finexa"), and were located in a storage unit owned by PPI, *not* Defendant. *See* Raber Decl., Ex. A. Indeed, Defendant has complied fully with his discovery obligations in this action.

#### 1. Defendant Produced All Finexa Documents In His Possession

When an action is against a corporate officer individually, and not also against the corporation, production of documents by the individual may be denied unless there is evidence that the officer is the "alter ego" of the corporation. Moore's Federal Practice § 34.14(2)(c), citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D.Kan. 2001) (in lawsuit against president of corporation individually, and not against corporation itself, plaintiff was not permitted to use Rule 34 document request to compel defendant president to produce records of corporation when there was no evidence that president was "alter ego" of corporation). Thus, "control" of a document is defined as the *legal* right, rather than simply the ability, to obtain the document. *See In re Citric Acid Litig.*, 191 F. 3d 1090, 1107 (9th Cir. 1999) (court cannot order production of documents held by a separate legal entity), citing *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

Defendant is sued in this action not as a corporate officer, but as an individual. On November 19, 2007, Defendant produced all Finexa-related documents in his personal possession, custody and control, in response to written discovery propounded on him by Plaintiff. These documents will be used at trial. *See, e.g.*, Tr. Ex. 2 (Docs. AC004-009). In that discovery, Plaintiff propounded its requests on Amit Choudhury, as an individual, and not in any other capacity. *See* Raber Decl., Ex. E at 2 ("Definitions… E. 'You,' 'Your' or 'Defendant' means defendant, Amit Choudhury.")

1  On January 2, 2008, Plaintiff propounded further discovery on Defendant seeking Finexa documents, as well as Finexa "capitalization tables," "balance sheets" and documents related to "loans by Grewal to Finexa." *See* Raber Ex. E. This discovery *was expressly directed at Defendant personally*. *See, id*. Defendant objected to the discovery to the extent that the requests did not seek documents in his personal possession, among other grounds. *Id*. On January 15, 2008, Plaintiff propounded yet more discovery on Defendant seeking FXI and Finexa documents from Defendant personally, and Defendant again objected. *Id.* at Ex. F. On March 24, 2008, following meet and confer in which Plaintiff's counsel Jeff Banchero indicated he would subpoena the documents directly from Finexa, Defendant supplemented his responses to these document requests and, without waiving any objections, confirmed that he had produced all Finexa documents in his *personal* possession, custody or control. *See* Raber Decl., Ex. G.

Plaintiff offers no credible evidence that Defendant personally maintained files of the entity Finexa, Inc. that he chose to withhold and, indeed, Defendant's prior production of Finexa-related documents he happened to have in his possession puts the lie to Plaintiff's hysterical claims. The Finexa documents at issue here were found by a third party, PPI, not Defendant, and were produced by PPI on July 30, 2008, which was when Plaintiff asked for them.

### 2. Defendant Timely Produced all Emails He Received from Plaintiff

Plaintiff contends that Defendant improperly withheld a single October 17, 2000, email from Plaintiff. The record simply does not support such an accusation. Defendant has produced *dozens* of emails in response to discovery in this case, many of which – like the newly discovered October 17, 2000, email – bolster his version of events.[1]

Besides a groundless suggestion of foul play, Plaintiff offers no credible evidence whatsoever that the October 17, 2000, email was deliberately withheld by Defendant, while all other emails – whether beneficial to Defendant's case or not – were produced last year. Without such evidence, this Court should not indulge a presumption of bad faith simply because Plaintiff does not like the evidence adduced in this case through Plaintiff's own discovery efforts.

---

[1] For example, the December 23, 2000, email to Plaintiff, which confirms that Defendant was waiting for an additional $120,000 from Plaintiff to make up the full $1 million they discussed, has been extensively briefed and discussed in connection with motions for summary judgment in this case. *See* Tr. Ex. 10 (Doc. AC039-040).

**B.    Plaintiff Caused, and Is Not Prejudiced by, the Delay**

In November 2007, and certainly no later than March 2008, Plaintiff was aware that Defendant had produced all Finexa documents in his possession, and had also taken the firm and clear position (justified by the scope of Plaintiff's own discovery requests) that he would only produce documents in his personal possession.  Plaintiff did not serve, or attempt to serve at that time a subpoena on Finexa, or upon any other entity, seeking those documents.  Nor did she file a timely motion to compel further production from Defendant.  It was not until July 14, 2008 – just three weeks before trial – that subpoenas were finally served on certain third party entities (but not Finexa itself) seeking production of documents on July 30, 2008.  Plaintiff was fully aware that she would only have two days to review any documents obtained through those subpoenas.

Plaintiff complains that she is prejudiced because Defendant would not accept service of a subpoena directed to Finexa, but Plaintiff fails to explain either why he should have accepted service of the subpoena, or how PPI's locating the documents would have been affected by the Finexa subpoena.  Since documents responsive to all the corporate entity subpoenas were all due on July 30, 2008, Plaintiff has not shown how Defendant's conduct caused her prejudice.  Moreover, and contrary to Plaintiff's somewhat shrill claim, *Defendant* did not produce the Finexa documents on July 30, 2008 – PPI did.  As set forth above, Plaintiff had ample opportunity to depose PPI's custodian of records, and indeed did so for over four hours.  Accordingly, her claims of prejudice ring hollow.

Plaintiff cannot now complain that corporate entities produced documents she wishes she could have had earlier, because the timing of the subpoenas was her choice, and hers alone.

**C.    Plaintiff's Claim That the October 17 Email "May be a Forgery," Is Absurd**

Plaintiff states that the October 17 email "may be a forgery," but none of the reasons for this gross speculation are founded in fact:

1.    Plaintiff claims that she has "no recollection of sending the email."  While Plaintiff is free to testify to this fact, it does not follow that the document is a forgery simply because she does not recall sending it eight years ago.

2.  Oddly, Plaintiff contends that "the email does not accurately reflect the substance of any conversations between plaintiff and Choudhury." The email *is* a communication between Plaintiff and Mr. Choudhury, however, and Plaintiff offers no explanation for why it would need to reflect the substance of any *other* discussion. The email speaks for itself.

3.  Plaintiff is apparently prepared to "testify that the email's inclusion of four ellipses, as opposed to three, and its use of the numeral '5' rather than the spelled word 'five' are each wholly uncharacteristic of her writing." Such testimony is absurd in light of all the other email traffic Plaintiff herself produced in this case, *viz*:

- Attached hereto as **Exhibit A** are true and correct copies of emails *produced by Plaintiff in this action*, which contain what she now claims are badges of forgery. As the emails demonstrate, Plaintiff routinely included ellipses in her emails that contained more than three periods. *See* Pl's Docs. 200066, 200077, 200087, 200099 and 200128 (four ellipses); 200108 (five ellipses); and 200048, 200116 and 200100 (six ellipses).
- Plaintiff's emails also routinely use digits instead of spelled out words for numbers. *See, e.g.*, Docs. 200115 ("9 nights" as opposed to "nine nights"), and 200131 ("10 days" as opposed to "ten days").

4.  Plaintiff claims the October 17 email must be a forgery because she did not find it on her computer. But Defendant has produced other emails between Plaintiff and Defendant, that also should have been on Plaintiff's computer but were never located by her (presuming her good faith, because they were not produced). *See, e.g.*, Tr. Ex. 10 (AC039-040).

5.  Plaintiff claims that an individual named Julie Pearl never received a similar email. Defendant is at a loss as to the relevance of this point. Apart from being hearsay, Ms. Pearl's statements or her receipt of a similar email is completely irrelevant to the question of whether the October 17, 2000, email is authentic. It simply makes no difference what emails Ms. Pearl may or may not have received from Defendant.

6.  Finally, Plaintiff "intends to introduce testimony at trial from one of her witnesses that Mr. Choudhury … has made material misrepresentations under oath on key facts in this

–5–

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

litigation in his deposition." Presumably, Plaintiff's point here is that Defendant is a liar and, therefore, it follows that the document must be a forgery. This Court should not dignify such accusations.

### III. CONCLUSION

For the foregoing reasons, Defendant requests that Plaintiff's Motion be denied.

DATED: August 2, 2008           REED SMITH LLP


By____/s/_____
    David S. Reidy
    Attorneys for Defendant
    AMIT CHOUDHURY