Harvey L. Leiderman (SBN 55838)
HLeiderman@ReedSmith.com
David S. Reidy (SBN 225904)
DReidy@ReedSmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:   (415) 543-8700
Facsimile:   (415) 391-8269

Attorneys for Defendant
AMIT CHOUDHURY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>AMIT CHOUDHURY, an individual,<br><br>Defendant. | Case No.: C-07-4218 CRB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR REMITTITUR, OR IN THE ALTERNATIVE FOR NEW TRIAL ON PUNITIVE DAMAGES**<br><br>[Fed. R. Civ. Proc. § 59(a)]<br><br>Compl. Filed:  July 19, 2007<br>Trial Date:     August 4, 2008<br><br>Hearing Date:  October 3, 2008<br>Time:               10:00 a.m.<br>Courtroom:      8<br><br>*Honorable Charles R. Breyer* |

## I.   INTRODUCTION

On August 8, 2008, the jury in this action entered a verdict against Defendant on Plaintiff's common counts for money lent and money had and received, and on Plaintiff's claims for fraud and breach of promissory note. The jury awarded Plaintiff $1,423,740.00 in compensatory damages. Doc. 143.

In addition to compensatory damages, the jury was instructed that it could consider punitive damages not to exceed Defendant's ability to pay, only if Plaintiff proved by clear and convincing evidence Defendant engaged in the wrongful conduct. The jury heard testimony regarding Defendant's net worth and ability to pay to evaluate whether or not to award punitive damages to Plaintiff. Evidence was presented to the Court, that, among other information, Defendant has not received a salary in seven to 10 years (Trial Transcript ("TT") 832:22-23), has been living on credit card debt since 2001 (TT 844:22-23), has a negative net worth (TT 855:4-5), and has no source of funds available to pay the judgment in this matter (TT 857:2-9). No contrary evidence was presented. The jury's subsequent award of $500,000.00 in punitive damages therefore clearly surpasses Defendant's ability to pay, in violation of California law. As such, the punitive damages award should be reduced via remittitur to zero in light of Defendant's negative net worth and ability to pay or, in the alternative, the Court should order a new trial on this issue.

## II. ARGUMENT

### A. Motion for New Trial.

Under Federal Rule of Civil Procedure 59(a), the Court has the power to grant a new trial "to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. Proc. § 59(a). A new trial may be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001). Under this standard, a new trial may be ordered even if substantial evidence supports the jury's verdict. *Id.* A partial new trial solely on damages may be ordered so long as it does not involve a tangled or complex fact situation that makes it unfair to determine damages apart from liability. *Wharf v. Burlington Northern R.R. Co.*, 60 F.3d 631, 638 (9th Cir. 1995) (no injustice resulting from retrial on damages only without reopening liability issues).

The Court has broad discretion in deciding whether a verdict is against the weight of the evidence, and may weigh the evidence and reach a conclusion opposite to the jury's to prevent a

miscarriage of justice. As the Ninth Circuit stated in *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957), "having permitted the jury to come to its conclusion on the facts, the trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice" (emphasis added). In considering a motion for a new trial, the Court "is free to weigh the evidence [itself] and need not view it in the light most favorable to the verdict winner." *United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998).

B.   **Defendant is Entitled to New Trial On Punitive Damages.**

The jury's punitive damages award is contrary to the clear weight of evidence regarding Defendant's net worth and ability to pay. A court should determine whether a punitive damage award exceeds the amount necessary to accomplish the goals of punishment and deterrence in deciding whether it is grossly excessive. *Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. Cal. 1993). When faced with a challenge to the amount of a punitive damages award, the court's traditional function has been to determine whether the award is excessive as a matter of law or raises a presumption that it is the product of passion or prejudice. *Adams v. Murakami*, 54 Cal. 3d 105, 109-110 (1991), citing *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 928 (1978). Because the quintessence of punitive damages is to deter future misconduct by the defendant, the key question before the reviewing court is whether the amount of damages "exceeds the level necessary to properly punish and deter." *Murakami*, 54 Cal. 3d at 110, citing *Neal, supra*, 21 Cal.3d at 928; *Merlo v. Standard Life & Acc. Ins. Co.*, 59 Cal.App.3d 5, 18 (1976).

A punitive damage award can be so disproportionate to the defendant's ability to pay that the award is excessive for that reason alone. *Murakami*, 54 Cal. 3d at 111-112; *see also Burnett v. National Enquirer, Inc.*, 144 Cal. App. 3d 991, 1012 (1983) (holding that, although the defendant's misconduct was "reprehensible," the punitive damages award had to be reduced solely because it constituted too great a portion of the defendant's net worth and income); *Zhadan v. Downtown L.A. Motors*, 66 Cal. App. 3d 481, 497-500 (1976) (reversing judgment where the punitive damages

exceeded one-third of defendant's net worth); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 824 (1979) (punitive damages award reversed because it exceeded more than two and one-half months of defendant's annual net income); *Merlo v. Standard Life & Acc. Ins. Co.*, 59 Cal. App. 3d 5, 18 (1976) (award of punitive damages excessive because it was more than 30 percent of defendant's net worth); *Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 469-470 (1977) (award greater than 15 percent of net worth reversed).

  For this reason, the Court here appropriately instructed the jury regarding the requirement that punitive damages should not be excessive, and expressly instructed the jury that "[a]ny award you may impose may not exceed defendant's ability to pay." TT 866:12-13; Doc. 134.

  At trial, Defendant testified that he has not received income for at least seven years. TT 832:22-23. Defendant explained that his company, Pinnacle Partners, Inc. ("PPI"), could not pay him beginning sometime in the late 1990s, due to the need to make payroll obligations. TT 833:10-17. And although Plaintiff attempted to infer Defendant's ties to PPI and its' related entities showed he had other assets available, the evidence showed that PPI's current estimated value is $25,000 (TT 822:13-15), that PPI Canada is valued at $10,000 (TT 822:20-22), and that Pinnacle Partner's Capital Management is estimated to be valued at $1,000 (TT 823:3-10). Plaintiff also attempted by innuendo to suggest that cash flows in businesses associated with Defendant might somehow indicate that he had a greater ability to pay than was apparent from his net worth statement, but absent both an allegation and proof of alter ego, cash flows of those businesses cannot be attributed to the individual defendant. Defendant's professionally-prepared personal tax returns for the 2005 and 2006 calendar years, which Plaintiff introduced at trial, prove his lack of income. TT 831:7-12, Trial Ex. 211; TT 832:6-23, Trial Ex. 210. As Defendant testified to, and as the trial exhibits clearly document, Defendant presently has a negative net worth and no access to money to pay the judgment. TT 855:4-5; 857:2-9. Innuendo is not sufficient to counter the uncontradicted evidence of Defendant's inability to pay any amount of punitive damages. The jury's award of $500,000 in punitive damages is clearly excessive in light of Defendant's ability to pay and, as a matter of law, must be reduced on that basis alone. *Murakami*, 54 Cal. 3d at 111-112

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL

## III. CONCLUSION

The jury's verdict awarding Plaintiff $500,000 in punitive damages is plainly contrary to the clear weight of the evidence of Defendant's ability to pay. Defendant respectfully requests that this Court reduce the punitive damage award via remittitur to zero in light of Defendant's negative net worth and ability to pay or, in the alternative, order a new trial on this issue pursuant to Federal Rule of Civil Procedure 59(a).

DATED: August 25, 2008

REED SMITH LLP

By   /s/
David S. Reidy
Attorneys for Defendant
AMIT CHOUDHURY