E. Jeffrey Banchero (SBN 93077)
ejb@kastnerbanchero.com
Scott R. Raber (SBN 194924)
srr@kastnerbanchero.com
KASTNER | BANCHERO LLP
20 California Street, Seventh Floor
San Francisco, California 94111
Telephone: (415) 398-7000
Facsimile: (415) 616-7000

Attorneys for Plaintiff
ELIZABETH GREWAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GREWAL,<br><br>           Plaintiff,<br><br>     v.<br><br>AMIT CHOUDHURY,<br><br>           Defendants. | CASE NO. C-07-4218 CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, FOR NEW TRIAL ON PUNITIVE DAMAGES**<br><br>Hearing Date: October 3, 2008<br>Time:         10:00 A.M.<br>Courtroom:    8, 19th Floor<br><br>(Before Hon. Charles R. Breyer) |

-1-
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, FOR NEW TRIAL ON PUNITIVE DAMAGES
Case No. C-07-4218 CRB

Following a trial and a jury verdict against defendant Amit Choudhury on plaintiff Elizabeth Grewal's claim for promissory fraud (as well as her three other claims), the jury awarded her compensatory damages of $1,423,740. The following court day, having heard additional evidence concerning Choudhury's net worth, the jury found him "guilty of fraud by clear and convincing evidence" and awarded punitive damages of $500,000. (Doc. 135)  Defendant now moves under Fed. R. Civ. Proc. 59(a) for a remittitur of the punitive damages to zero or, alternatively, a new trial on the issue of punitive damages. The jury's punitive-damage award, however, is fully warranted by the evidence, and defendant's motion should be denied.

Defendant contends that the award of punitive damages is contrary to the clear weight of the evidence which, he says, shows he has a negative net worth and lacks the ability to pay. But, we will show, the evidence on which defendant relies is his own testimony, which the jury was entitled to, and did, disbelieve. The jury had found, after all, that defendant committed promissory fraud: he lied about what he intended to do with the funds plaintiff loaned to him and lied repeatedly, over a five-year period, about what he had done with her funds.

Moreover, the jury was presented with other evidence, which it was entitled to credit, showing defendant to be a successful, international entrepreneur with holdings in the U. S. and other countries. Among other things, he owns two operating companies, one a software R&D laboratory and the other directed to marketing functions. He has business relationships with companies in Europe to market the software developed in North America. He travels by jet airplane almost continuously and boasts of a lifestyle that belies a negative net worth. The jury, we will show, was entitled to infer from this evidence that defendant possesses significant wealth which he seeks to conceal—wealth sufficient to pay a $500,000 award.

It is well-settled, of course, that "[i]n reviewing a defendant's alternative motions for remittitur or a new trial, the court must view the evidence concerning damages in a light most favorable to the prevailing party." *Buritica v. U.S.*, 8 F.Supp.2d 1188, 1191 (N.D.Cal. 1998); *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 819-820 ("[I]n assessing propriety of a

punitive damages award … the evidence must be viewed in the light most favorable to the judgment").

### 1. The Jury, With Good Reason, Disbelieved Choudhury's Testimony on Which This Motion Is Based.

Defendant's motion is based almost entirely on Choudhury's testimony in the punitive–damage phase asserting a negative net worth. (Def. Mem. at 4:7-27.)[1] But the jury was instructed by the Court that "[y]ou may believe everything a witness says, or part of it, or none of it." (Doc. 123 at 7.) Plainly, the jury disbelieved Choudhury's testimony. On this record, it had ample reason to doubt his credibility and to reject his testimony.

Most importantly, the jury had deliberated on plaintiff's claim of promissory fraud and found Choudhury guilty of fraud. The category of fraud was false promise: it found that Choudhury obtained plaintiff's money under a false promise. In so finding, the jury necessarily disbelieved his testimony as to the circumstances of the transaction, particularly whether the parties contemplated that plaintiff would transfer an additional $120,000. And the jury found that he repeatedly, over several years, gave plaintiff false explanations when she inquired concerning the whereabouts of her funds.

The jury's disbelief when Choudhury claimed a negative net worth may also have been influenced by the seemingly-conflicting picture he painted of himself when he testified during the liability phase of the trial. On direct examination by Mr. Leiderman, he testified:

Q   Do you have employees?

A   We do, yes.

Q   Can you tell us how many and where they are located?

A   We have – in the U.S. we have six full-time employees and two contractors.
    In Canada we have 11.
    In the U.S. ours [sic] employees are across the country.

---

[1] The only pieces of documentary evidence defendant cites are Trial Exhibits 210 and 211, his 2005 and 2006 federal income tax returns.

-3-
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR REMITTITUR OR, IN THE ALTERNATIVE, FOR NEW TRIAL ON PUNITIVE DAMAGES
Case No. C-07-4218 CRB

> One of our work values is to let people reside wherever they are at the time. So we have people in Atlanta, New York, Santa Cruz, San Francisco, Chicago.
>
> Q   All right. You're the CEO of Pinnacle Partners, Inc.?
>
> A   I am, yes.
>
> Q   Are you also an owner of the business?
>
> A   I own Pinnacle Partners, Inc. a hundred percent.
>
> Q   Do you travel quite a bit in your work?
>
> A   Very intensively.
>
> Q   Why is that?
>
> A   Two reasons: the first is because we have people across the country and in Canada, so I try to work with them so they don't have to travel as much. But perhaps the more important reason is our clients are across North America, as well as the globe, so on average I travel 22 to 25 days a month, and sometimes 30 days a month.
>
> Q   Has that been true for quite awhile?
>
> A   For about 14 years.

(TTr. 505:3-506:2.)

His testimony at the punitive-damage phase, contradictory in emphasis and disbelieved by the jury, is not, we submit, entitled to weight in determining the clear weight of the evidence. California law, to be sure, makes ability to pay an essential factor in awarding punitive damages. *Adams v. Murikami*, 54 Cal.3d 105 (1991). But it does not follow that a defendant can evade an otherwise reasonable punitive-damage award (as defendant seeks to do here) by refusing to produce evidence bearing on his net worth until the trial on liability is completed and then falsely asserting (so the jury found) an inability to pay.[2]

---

[2] Net worth, "which is subject to easy manipulation," *Rufo v. Simpson*, 81 Cal.App.4th 573, 621, is, of course, not the only measure of ability to pay, and the jury may properly consider evidence of likely future income, *id.* at 621-22, or evidence of an available credit line. *Zaxis Wireless Communications, Inc. v. Motor Sound Corp.*, 89 Cal.App.4th 577, 583 (2001).

-4-

Moreover, the jury disbelieved Choudhury's testimony because it conflicted with substantial evidence concerning his business activities that indicates he has considerable wealth—as we now show.

### 2. The Jury's Award of Punitive Damages Is Reasonable in Amount and Supported by Substantial Evidence Showing That Defendant Possesses Significant Wealth Enabling Him to Pay the Award.

The jury's punitive-damage award, rendered in the context of the Court's instruction that it must first consider "the defendant's financial condition" (Doc. 131 at 3), was reasonable in amount, by no means a product of passion or bias. $500,000 is not a multiple of the compensatory-damage award but rather only 35% of it. Nor can $500,000 be deemed remotely excessive in view of the following evidence of defendant's business activities and assets and the inferences properly drawn by the jury from it:

- Choudhury is the sole owner of Pinnacle Partners, Inc., a company he founded in 1997. It is an operating company with six employees in the U. S. and is the sales and marketing arm in the U. S. for software being developed by its affiliated companies. (TTr. 759-60, 764.) Its gross income in 2007 was $907,000. (Trial Ex. 202.)

- Choudhury is also the sole owner of Pinnacle Partners Inc. Canada, an R&D company with ten employees in Toronto. (TTr. 759-60, 764.) This company is the R&D laboratory for software that Pinnacle Partners Systems, Inc. is developing. (*Id.* at 763-64.)

- Choudhury is a founder, a shareholder, and, until a few days before the trial, the CEO of Pinnacle Partners Systems, Inc. (*Id.* at 761-62.) The new CEO, Bernard Wasem, resides in Switzerland. "Pinnacle Partners Systems, Inc.," Choudhury testified, "contracts with Pinnacle Partners, Inc. Canada to build the software." (*Id.* at 764.) In the past eighteen months, it has raised about $3,000,000 from investors. (*Id.* at 765.)

- although Choudhury says he receives no salary, the three companies from time to time transfer money to him. Pinnacle Partners, Inc, he testified, "returns money to me that I have loaned it" (*id.* at 765-66), and the company's balance sheet as of August 9, 2008 shows "Shareholder

-5-

Loans " of $1,229,487.  (Trial Ex. 200 at 2.)  Pinnacle Partners, Inc. Canada has loaned him $180,000.  (TTr. 766.)

- in June 2008 Choudhury formed a Swiss company, PP Blue Licensing Gmbh, capitalized at 20,000 Swiss francs, which he says he borrowed.  (*Id.* at 766.)  It is a wholly-owned subsidiary of Pinnacle Partners AG, a Swiss company with a capitalization of 250,000 Swiss francs; the latter company has two other Swiss subsidiaries, both named PP Grey Licensing.  All of the Swiss companies are headed by Bernard Wasem, and all were organized a few months ago "to help," Choudhury said, "with our European expansion"—that is, to market in Europe the software Pinnacle Partners Systems, Inc. is developing in North America.  (*Id.* at 767-70.)

- Choudhury performs consulting work as "leader" of a four-to-six-person "team" from Pinnacle Partners, Inc., from which his wholly-owned company derives substantial revenues— $276,000 in 2007.  (*Id.* at 797-98.)

- as a consequence of its lawsuit against Aliante Corporation, Choudhury's wholly-owned Pinnacle Partners, Inc. will receive $40,000 in November 2008 and "seven more payments due over the next three years for a total of 310,000."  (*Id.* at 807.)  The total amount that Aliante is paying to Pinnacle Partners, Inc. for the period December 2007 through 2011, "including the purchase of shares," is $500,000.  (*Id.* at 808.)

- Choudhury is a self-described "agent" for Amisil Holdings, Limited, a corporation organized in Cyprus and registered to do business in Bermuda.  In that capacity, he "help[s] them make investments in the United States" and prosecute a lawsuit in San Francisco in which Amisil seeks $18 million in damages, according to a press release approved by Choudhury.  (*Id.* at 770-79; Trial Ex. 241.)  Choudhury spent "maybe a few hundred hours" working on this lawsuit prior to its filing and has told Amisil, "I would like to be considered to receive some payment."  (TTr. at 773.)  While Choudhury disclaims any ownership interest in Amisil, witness David Hayford testified that Choudhury told him the company's name was derived from "Amit," Choudhury's first name, and "Sylvia," the name of a woman Choudhury "was dating" in Italy.  (*Id.* at 325.)  Hayford further testified that some years earlier Choudhury was paid "in excess of $600,000" for consulting work

he (and others) performed for Bway, a U.S. company for which Hayford then worked, and that Choudhury requested "we would make out the checks to Amisil Holdings" and "deposit them in offshore accounts at Amisil." (*Id.* at 324-25.) The identity of Amisil's shareholders, Choudhury testified, are confidential. (*Id.* at 778.)

- about 2000, Hayford testified, Choudhury stated that "he had two to three million dollars available to him" and "that it was offshore …" (*Id.* at 334.)

The jury was entitled to draw appropriate inferences from this evidence, most of it extracted from Choudhury on cross-examination in the face of his determined effort to conceal his wealth. This evidence shows that Choudhury has worldwide and substantial business interests and assets (the precise contours of which are difficult to define given the scope of the inquiry permitted by this lawsuit) and that his prospects for income in the future are extremely bright. The jury could (and did) properly conclude that he is well able to pay the punitive-damage award.

**Conclusion**

For the foregoing reasons, defendant's motion should be denied in its entirety.

DATED: September 12, 2008            Respectfully submitted,

KASTNER | BANCHERO LLP


By: _____/S/_____
    E. Jeffrey Banchero
    Scott R. Raber

Attorneys for Plaintiff
ELIZABETH GREWAL