**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15

ELIZABETH GREWAL,                           No. C  07-4218 CRB (JL)

        Plaintiff,

    v.                                            **ORDER FOR DEFENDANT TO APPEAR**
                                                 **BEFORE THE DISTRICT COURT AND**
                                                 **SHOW CAUSE WHY HE SHOULD NOT**
AMIT CHOUDHURY,                             **BE HELD IN CONTEMPT**

        Defendants.                        **(Denying Docket # 203)**
_____/

16

**Introduction**

17
18
19
20
21
22
23
24
25
26
27

    This matter has been referred by the district court (Hon. Charles R. Breyer),

pursuant to 28 U.S.C. §636 (b) for post-judgment proceedings, most recently a hearing on

Defendant debtor's objections to this Court's Amended Turnover Order issued December

23, 2008 (Docket # 201). Appearing for Judgment Creditor was E. Jeffrey Banchero, THE

BANCHERO LAW FIRM LP. Appearing for Judgment Debtor was Kevin W. Coleman,

SHADER, HARRISON, SEGAL & LEWIS LP. The Court carefully considered the pleadings

and supporting declarations filed by counsel and arguments at the hearing and hereby

overrules Debtor's objections and issues an Order pursuant to 28 U.S.C. §636(e) for

Defendant to appear before the district court on February 27, 2009 at 10:00 a.m., in

Courtroom # 8, 19th Floor of the federal courthouse at 450 Golden Gate Avenue, San

Francisco, California, to show cause why he should not be held in contempt of court.

28

**United States District Court**
For the Northern District of California

1

**Magistrate Judge Jurisdiction to Certify Contempt**

2          Magistrate Judges' contempt authority is spelled out in 28 U.S.C. § 636(e)(6).

3   Absent action in the presence of the Magistrate Judge, in a civil consent action, or a

4   criminal misdemeanor case, a Magistrate Judge must certify contempt to the district court.

5   The statute provides:

6
7          the magistrate judge shall forthwith certify the facts to a district judge and may serve
           or cause to be served, upon any person whose behavior is brought into question
           under this paragraph, an order requiring such person to appear before a district
8          judge upon a day certain to show cause why that person should not be adjudged in
           contempt by reason of the facts so certified. The district judge shall thereupon hear
9          the evidence as to the act or conduct complained of and, if it is such as to warrant
           punishment, punish such person in the same manner and to the same extent as for
10         a contempt committed before a district judge.

11
12  28 U.S.C. § 636(e)(6).

13                    **Factual Findings and Recommendation**

14         Some of the pertinent facts are these:

15  1.     The jury at the trial of this matter found that Choudhury in 2000 defrauded Ms.

16         Grewal of $880,000 by false promise, and awarded Ms. Grewal damages and

17         interest in this amount.  Finding that Choudhury's fraud was demonstrated by clear

18         and convincing evidence, the jury awarded Ms. Grewal an additional $500,000 in

19         punitive damages.  This apparently has had little deterrent effect.

20  2.     On November 20, 2008, this Court issued an Order Following Judgment Debtor's

21         Failure to Appear at the Scheduled Judgment Debtor's Examination on November

22         12, 2008, which, among other provisions, ordered that "Choudhury is further

23         prohibited from transferring or assigning the settlement or any proceeds of the

24         settlement between Pinnacle Partners, Inc. and Allante Corporation … ."  (11/20/08

25         Order, 4.)   Yet, Choudhury did just that in violation of the order.

26  3.     At the judgment debtor's examination, which was conducted on December 17 and

27         19, 2008, Choudhury testified that "Pinnacle Partners has pledged the settlement

28         agreement [with Allante] to try and monetize it."  A "$40,000 payment … went

1  directly to [a] fund. …" that Choudhury created to advance his interests in a lawsuit.

2  Choudhury signed the pledge agreement on behalf of Pinnacle Partners, testifying,

3  "I'm the only person at Pinnacle Partners.  There's nobody else."  These monies

4  from the settlement, and the settlement agreement itself, were ordered by this Court

5  to be turned over to the U.S. Marshall's office.  (See Excerpts of Choudhury's

6  Testimony at Judgment Debtor's Examination, attached as Exh. B to the Declaration

7  of Devon Warner in Support of Judgment Creditor's Response to Choudhury's

8  Objections to Levy, ¶. 81-85, 86, 91-93.)

9  4.    Choudhury is prosecuting a multi-million dollar lawsuit in San Francisco through his

10  alleged alter-ego, Amisil Holdings, Ltd.  Choudhury founded Amisil Holdings, Ltd. in

11  Cyprus, set up its sole bank account in Bermuda, and capitalized the company - to

12  the extent it is capitalized; it has never had any employees - by transferring funds he

13  earned in the United States to Amisil's Bermuda bank account.  Rather than paying

14  the judgment in the instant case or complying with this Court's order of November

15  20, 2008 and the Amended Turnover Order, Choudhury caused $200,000 to be

16  transferred to the Manatt, Phelps firm, which represents Amisil Holdings, Ltd. in

17  the lawsuit Choudhury is prosecuting.

18  5.    In addition, Choudhury testified that an "escrow account" maintained in Chicago

19  contains an additional $300,000 - presumably for use by him or by his lawyers -

20  again which, contrary to the Amended Turnover Order, he did not transfer to the

21  U.S. Marshall's office.  Choudhury does not mention any of this in his "Limited

22  Objection to Levy."  (Id., ¶. 21-22, 24, 35-36, 40-42, 45, 68, 97-99, 150-152, 157,

23  161-163.)  At the judgment debtor's examination, Choudhury feigned ignorance of

24  Amisil Holdings Ltds.'s structure, hid behind vague confidentiality concerns, and at

25  other times simply refused to testify about his international currency transactions.

26  (Id., ¶. 88-91, 150-152, 157.)  For example (id., p. 157:8-18):

27

28

**United States District Court**
For the Northern District of California

1    Q:  What was the source of the $300,000 that Amisil Holdings used to

2    purchase the interest in the Clarium Capital Fund?  Where did that

3    money come from?

4    A:  From Amisil Holdings.

5    Q:  Where did Amisil Holdings get it?

6    A:  From its various sources of income.

7    Q:  What were those sources?

8    A:  That's Amisil Holdings' business.

9    Q:  Are you refusing to answer my question?

10   A:  Yes.

11   6.   On December 23, 2008, this Court issued its Amended Turnover Order in Aid of

12   Execution Following Judgment Debtor's Examination.  The Amended Turnover

13   Order was served personally on the judgment debtor on January 1, 2009.

14   7.   The order provides that "Choudhury shall transfer the property described in this

15   order to the United States Marshall" at this courthouse "not later than January 5,

16   2009."  (Am. Turnover Order,  2, p. 1:19-22.)  The property to be turned over to the

17   U.S. Marshall included stock certificates or other documents representing

18   Choudhury's interests in ten domestic and foreign companies (Am. Turnover Order,

19   5a); "[a]ny and all certificates, assignments or other documents representing the

20   interest of Choudhury or any" of these ten companies "to the settlement or proceeds

21   of settlement between Pinnacle Partners, Inc. and Allante Corporation" (Am.

22   Turnover Order, 5c); "[a]ny and all monies held in trust by law firms representing

23   Choudhury" or any of the ten companies, "including but not limited to" monies held

24   by Schnader Harrison Segal & Lewis LLP; Manatt Phelps & Philips; Sideman and

25   Bancroft" (Am. Turnover Order,  5d); and "any and all documents of title to the

26   Mercedes Benz, vehicle registration no. WDBHM36E9SF240755" (Am. Turnover

27   Order, 6).

28

**United States District Court**
For the Northern District of California

8.  The order also provides that "Choudhury, his agents, servants, employees, attorneys, and those active in concert or participation with them, shall be restrained and enjoined from transferring, disposing of, or otherwise encumbering any of the property described in this Order …"  (Am. Turnover Order  4, p. 2:2-5.)

9.  According to the U.S. Marshall, Choudhury has turned over to the Marshall's office an expired registration statement from 2006 for the Mercedes automobile and $27.00 in cash (Am. Turnover Order, . 7), and no other property.  (Declaration of Devon Warner in Support of Judgment Creditor's Response to Choudhury's Objections to Levy,  2-3, filed herewith.)  This is not in compliance with the order, which provides that the "property described in the order" - that is, all of the property described in the order -  "shall" be transferred to the U.S. Marshall's office - in effect, transferred subject to Choudhury's filing "objections to levy," which this Court heard on February 11, 2009 (Order,  2-3).

10. Rather than comply with the order, Choudhury filed an unsworn document prepared by his lawyers entitled "Limited Objection to Levy."  In this document, Choudhury contends "he has no direct or indirect ownership interest" in six of the corporations listed in the Amended Turnover Order (Ltd. Obj. to Levy, p. 1:21-28); that certain stock certificates are "held in [a] Roth/IRA and therefore exempt" (id., p. 2:4-6); that he "is not, directly or indirectly, in possession of, nor does he have control over, any proceeds of the settlement between Pinnacle Partners, Inc. and Allante Corporation described in 5.b and 5.c of the Amended Turnover Order" (id., p. 2:7-3:2); that "he has no legal, equitable, or residual interest in any retainers paid to Schnader Harrison Segal & Lewis LLP, Manatt Phelps & Philips, or Sideman  & Bancroft" (id., p. 3:3-7); and that he objects to levy upon his Mercedes because the value of the vehicle is below an amount that California law permits him to exempt (id., p. 3:8-13).

United States District Court

For the Northern District of California

11.   The day before the hearing on his objections to the Turnover Order, Choudhury filed the declaration under penalty of perjury of Mr. Xenios L. Xenopoulos in support of limited objection to Levy. Mr. Xenopoulos testified that he is the nominee of Amisil Holdings, Ltd., a Cyprus based corporation. He states that under Cyprus law, the identities of the beneficial owners are confidential, that he knows who the owners of Amisil Holdings are, and that 'Amit Choudhury is not an owner, either directly or indirectly, of any legal, beneficial, or equity interest in Amisil Holdings, Ltd." (Decl. At 1:18-24). The Court finds this Declaration to be suspect, at best, since there is no way to confirm its veracity.

12.   At the hearing on Choudhury's objections to the Turnover Order, counsel for Elizabeth Grewal argued that Choudhury transferred money subject to the Turnover Order after the Order was issued, in direct violation of the Order. The Court granted Creditor's ex parte application to depose the Manatt Phelps law firm to determine when $200,000 was transferred to the law firm's trust account, on behalf of or from the assets of Amisil Holdings. That examination is scheduled for February 25.

13.   On the same day, this Court will hear argument on Creditor's motion to amend the Judgment in this case to add Amisil Holdings, Ltd. as a judgment debtor, on the basis that it is the alter ego of Defendant/Debtor Choudhury. The Court in deciding this motion will consider a number of confidential documents filed by Plaintiff/Creditor, as exhibits to the Banchero Declaration In Support of the Motion to Amend the Judgment to Add Amisil Holdings, Ltd. As Defendant/Judgment Debtor's Alter Ego. The Court recommends that the district court also consider those documents in rendering its decision on contempt.

### Conclusion and Order

This Court entertains none of Choudhury's objections, because none is supported by evidence.  Evidence, and not a lawyer's document, is required under law to support claims of exemption and other objections in a proceeding to levy upon assets.  See, e.g., Calif.

United States District Court
For the Northern District of California

1   Code of Civil Proc. § 703.520 (b) ("The claim of exemption shall be executed under oath

2   and shall include all of the following …")(emphasis added);  Calif. Code of Civil Proc. §

3   703.580 (b) & (c) ("At a hearing under this section, the exemption claimant has the burden

4   of proof")(claim of exemption must be "received in evidence").  The Court reviewed the

5   late-filed Declarations submitted on Mr. Choudhury's behalf and finds them to be

6   masterpieces of obfuscation, which in no way justify his failure to comply with the Turnover

7   Order.

8           For example, Bernard Wasem, Chief Executive Office of Pinnacle Partners AW, a

9   Switzerland-based corporation, in support of Choudhury's objections to the Turnover Order

10  submitted a late-filed declaration under penalty of perjury, but also on knowledge and

11  belief, that Mr. Choudhury "is not in possession, directly or indirectly, of any issued share

12  certificates of Pinnacle Partners AG, P.P. DE GmbH, P.P. CH GmbH, P.P. Grey Licensing

13  GmbH, or P.P. Blue Licensing GmbH, nor was he in possession of any issued share

14  certificates on or about December 21, 2008. . ."

15          This Declaration is meaningless. Mr. Choudhury could have constructive

16  possession, custody, and control of the share certificates without actual possession. The

17  mere fact that he did not have the share certificates of one of these entities at the time of

18  the Turnover Order does not mean he had no power to turn them over. Wasem's

19  declaration also directly contradicts Choudhury's own statement,  "I'm the only person at

20  Pinnacle Partners.  There's nobody else." (See Excerpts of Choudhury's Testimony at

21  Judgment Debtor's Examination, attached as Exh. B to the Declaration of Devon Warner in

22  Support of Judgment Creditor's Response to Choudhury's Objections to Levy, ¶. 81-85, 86,

23  91-93.)

24          Sultan Issa, the trustee of Bougainvillea Capital, LLC, an Illinois trust, also belatedly

25  filed a declaration under penalty of perjury in support of Choudhury's objections to the

26  Turnover Order. He avers that Bougainvillea Capital entered into a business agreement

27  with Pinnacle Partners, Inc., related to the *Pinnacle Partners, Inc. et al. v. Allante*

28  *Corporation, et al.* Settlement Agreement and Release. He further avers that Choudhury

    holds no legal or beneficial interest in Bougainvillea Capital, LLC.  The Court finds this

1  document provides no justification for Choudhury's failure both to turn over the assets listed

2  in the Turnover Order, and to refrain from transferring assets subject to the judgment

3  against him in favor of Creditor Grewal.

4      Choudhury's decision to submit neither a statement by himself "under oath," nor any

5  other evidence sufficient to explain his refusal to comply with the Amended Turnover Order,

6  his transfer of assets in violation of the Court's previous order, or his failure to support his

7  objections with evidence should not be taken for mere carelessness or neglect.  It appears

8  to be part of a continuing effort to conceal assets from the reach of Elizabeth Grewal, the

9  judgment-creditor.

10     For these reasons, the Court overrules each of Choudhury's objections to levy and

11  certifies the above facts of this case to the district court to conduct further proceedings  on

12  February 27, 2009 at 10:00 a.m., to compel Choudhury to comply with the Amended

13  Turnover Order and redress his violations of the Order and the Court's order of November

14  20, 2008, and for potential findings of contempt and appropriate civil or criminal sanctions.

15     IT IS SO ORDERED.

16  DATED: February      2009

18                                                JAMES LARSON
                                                 Chief Magistrate Judge

24  G:\JLALL\CHAMBERS\CASES\CIV-REF\07-4218\CERTIFY CONTEMPT.wpd