1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH GREWAL,                                    No. C 07-4218 CRB (JL)

        Plaintiff,

        v.                                               **ORDER OVERRULING OBJECTIONS
                                                     TO TURNOVER ORDER (Docket # 356)**

AMIT CHOUDHURY,

        Defendants.
_____/

     Post-judgment proceedings in this case have been referred by the district court (Hon. Charles R. Breyer) under 28 U.S.C. §636(b).

     Judgment Debtor Amit Choudhury's objections to this Court's Turnover Order issued September 30, 2009, came on for hearing. E. Jeffrey Banchero appeared for Judgment Creditor Elizabeth Grewal. Kevin Coleman appeared for Judgment Debtor Amit Choudhury. The Court carefully considered the moving and opposing papers and the arguments of counsel and hereby overrules the objections.

     Choudhury's objections have already been rejected by Judge Breyer, including his objection to seizure of the pink slip for his Mercedes and Karen Choudhury's objection to levy on his bank account at First Republic Bank, San Francisco, on the basis that she is a resident of Illinois, not a community property state, and therefore she has some interest in his bank account that can't be attached. Choudhury can't trade a defunct personal exemption in the car for the proceeds of the bank accounts in India, for which he has no

**United States District Court**
For the Northern District of California

1  basis to object. As for any interest that Karen Choudhury may have had in the First

2  Republic Bank account in San Francisco, This Court finds that she also failed to follow the

3  proper procedure for filing a third-party claim, and therefore her claim has been

4  extinguished, whether or not Judge Breyer expressly rejected it at the Show Cause

5  hearing.

6  **FACTUAL AND PROCEDURAL BACKGROUND**

7  On August 12, 2008, the following Judgment was entered against Judgment Debtor

8  by Judge Charles Breyer:

9  "The jury having found in favor of Plaintiff and against Defendant on Counts One

10 through Four, and having awarded $1,423,740.00 in compensatory damages and

11 $500,000.00 in punitive damages, judgment is now entered in favor of Plaintiff Elizabeth

12 Grewal and against Defendant Amit Choudhury." (Judgment at Docket # 143)

13 Choudhury has resisted paying this judgment.

14 This Court entered a Turnover Order on September 30, 2009, (Docket # 355) that

15 Choudhury turn over his interest in two bank accounts at HDFC Bank in New Delhi, India:

16 one in the amount of 13,824.63 rupees, and one in the amount of 170,650.31 rupees. The

17 value in dollars of both accounts is about $4,000 US.

18 **The Judgment**

19 Amit Choudhury's version of what happened that led to the Judgment against him is

20 that he  lost his entire personal fortune in the Silicon Valley tech bust of 2001. His losses

21 "included Ms. Grewal's $880,000.00." See Transcript of Trial ("TT") at 525:21-526:11;

22 558:20-561:10, 19-25; 562:23-563:11, appended to Judgment Debtor's Objections as

23 Exhibit A. On September 10, 2001, he started a new company to earn his way out of his

24 personal losses. This company, Pinnacle Partners Systems, Inc. ("PPS"), was incorporated

25 in November 2002 and is a technology company in the financial investment services sector.

26 TT 564:11-19 Choudhury gave Ms. Grewal 70,000 shares of the new company, priced at

27 $0.01 per share ($70 in total) as a good faith gesture. TT564:20-565:3 Ms. Grewal owns

28 those shares today. Choudhury also owns a small percentage of PPS shares.

1    During this time period, Choudhury also owned 100% of a consulting company

2    Pinnacle Partners, Inc. ("PPI") and a research and development company Pinnacle

3    Partners, Inc. (Canada) ("PPI (Canada)"). PPS had many investors which have invested

4    several million dollars. With the investor money and agreement, PPS hired PPI (Canada) to

5    build the technology and PPI to market and sell the product. The money paid was used to

6    pay salaries for the employees and business overhead such as business travel expenses,

7    office rent and equipment. Although it was required to lay off nearly all of its regular

8    employees, PPS survived the 2008 financial crisis and is still in existence today. Choudhury

9    remains employed by PPS as a sales agent, to sell the software built by PPS so as to make

10   the business a success and, he claims, to earn the money to repay Ms. Grewal. TT

11   558:7-22.

12       **Choudhury's Objections to levy on First Republic Bank account**

13   On October 15, 2008, Ms. Grewal's counsel caused to be issued a Levy and Writ of

14   Execution to First Republic bank with the following declaration: "During the course of

15   litigation, the judgment debtor, Amit Choudhury, identified Karen H. Choudhury as his

16   spouse. Pursuant to California Code of Civil Procedure §695.020, bank accounts held in

17   the name of Karen H. Choudhury, whether individually or jointly with Amit Choudhury,

18   constitute community property subject to judgment in this action." See Exhibit B attached

19   hereto. As a result, the funds in an account held solely in the name of Karen Choudhury

20   were seized.

21   •    On December 10, 2008, Karen Choudhury filed a Declaration Regarding

22        Wrongful Levy on First Republic Bank Account. (Doc. No.197)

23   •    On December 23, 2008, this Court entered its Amended Turnover Order.

24        (Doc. No. 201).

25   •    On January 20, 2009, Mr. Choudhury filed a Limited Objection to Levy. (Doc.

26        No. 203).

27   •    On February 20, 2009, this Court issued an Order to Show Cause Re

28        Contempt based inter alia upon its determination that he caused Pinnacle

**United States District Court**
For the Northern District of California

1   Partners, Inc., a company he owned controlled, to pledge rights to recoveries

2   under a settlement agreement in violation of its prior orders, and that he was

3   concealing assets held in the name of Amisil Holdings, Ltd. Based thereon,

4   the Court stated that "[t]his Court entertains none of Choudhury's objections

5   [to levy]" and transferred this matter to Judge Breyer to determine whether

6   Choudhury had violated the subject orders. (Doc. No. 247).  This Court also

7   concluded that Mr. Choudhury had not submitted a declaration in support of

8   his objection to levy. Read in context, however, the order suggests that the

9   evidentiary deficiencies with which the Court was concerned related to Mr.

10  Choudhury's claims that he was not the owner of property that was not turned

11  over to the U.S. Marshal.

12  • On February 26, 2009, Mr. Choudhury filed a Response to Order to Show

13  Cause. (Doc. Nos. 270, 271).

14  • On August 11, 2009, the District Court issued orders attached as Exhibit C

15  and Exhibit D. The order attached as Exhibit C determined that the settlement

16  agreement pledge had not violated any prior orders of the Court, that the

17  pledge was not a fraudulent transfer because "[b]y  funding the Clarium

18  litigation, PPI was preserving its ability to recover on its loan to Amisil, as well

19  as creating an opportunity for an additional gain". The order attached as

20  Exhibit D determined that Ms. Grewal was not a creditor of Amisil and was not

21  entitled to assert an interest in the proceeds of a settlement paid to Amisil.

22  (Doc. No. 347 and Doc. No. 348).

23  To date, Ms. Grewal has not executed on any of the turned over assets.

24  **DEBTOR'S OBJECTIONS**

25  The law of a judgment debtor's domicile controls what exemptions the judgment

26  debtor may claim. See *In re Arrol*, 170 F.3d 934 (9th Cir. 1999) (California exemption law

27  applies to a debtor domiciled in California, regardless of where the property claimed as

28  exempt was located). This is consistent with conflict of laws principles, which provide that

**United States District Court**
For the Northern District of California

1   the law of the state with the most significant interest in the thing and the parties should

2   supply the rule of decision. Rest.2d, Conflict of Laws, §§ 6(2), 91 & 222. California courts

3   have adopted the principles articulated in the Restatement. *ABF Capital Corp. v. Berglass*,

4   30 Cal.Rptr.3d 588, 597 (2005) (following the Restatement 2d, Conflict of Laws §6(2)). ( § 9

5   Limitations on Choice of Law - A court may not apply the local law of its own state to

6   determine a particular issue unless such application of this law would be reasonable in the

7   light of the relationship of the state and of other states to the person, thing or occurrence

8   involved.)

9        The State of Illinois has enacted its exemption laws in order to provide judgment

10  debtors with necessary shelter and a minimum level of support required for his or her

11  welfare during difficult economic circumstances. *State Bank of Antioch v. Nelson*, 132

12  Ill.App.3d 120, 123, 477 N.E.2d 77, 79 (1985). Those exemptions are to be liberally

13  construed in the judgment debtor's favor. *Bank of Illmo v. Simmons*, 142 Ill. App. 3d 741,

14  744 (1986). Since a judgment debtor's domiciliary state is best equipped to determine what

15  is necessary under local conditions to provide a minimal standard of living, and since the

16  judgment debtor's domiciliary state will also experience the negative impacts of depriving

17  its citizens of the property it has determined is necessary to maintain a minimum standard

18  of living, the State of Illinois has a greater interest than California in defining what property

19  should be exempt from execution of the judgment in this case.  The point is perhaps best

20  illustrated by considering the converse situation. Compared to many states (including

21  Illinois), California has a generous exemption for homesteads – $50,000 for individuals and

22  $75,000 for a married couple. Cal. Code Civ. Proc. §704.730. This presumably reflects the

23  higher cost of housing in this State because the purpose of the exemption is to ensure that

24  its citizens can maintain a roof over their heads despite the fact that they owe money to

25  their creditors.  *Strangman v. Duke*, 140 Cal.App.2d 185, 295 P.2d 12 (1956) (California

26  enacted its homestead exemption laws in order to 'to provide a place for the family and its

27  surviving members, where they may reside and enjoy the comforts of a home, freed from

28  any anxiety that it may be taken from them against their will, either by reason of their own

United States District Court

For the Northern District of California

1   necessity or improvidence, or from the importunity of their creditors,' and to this end a

2   liberal construction of the law and facts will be adopted by the courts.') citing *Estate of*

3   *Kachigian,* 20 Cal.2d 787, 791, 128 P.2d 865, 867. Permitting Illinois' homestead

4   exemption laws (which allow only $7,500 to $10,000) to govern the rights of judgment

5   debtors who are California citizens would make it far more difficult for those individuals to

6   retain shelter, and therefore, would significantly undermine California's policy objective in

7   enacting its homestead exemption laws.

8       Amit Choudhury argues that  allowing the alternative claimed exemption would

9   further, rather than hamper his ability to repay the judgment. He has no assets and so can

10   only repay the judgment if he can earn income. As the only salesperson for Pinnacle

11   Partners Systems, Inc. having the use of the 1995 Mercedes is necessary, Choudhury

12   claims, for Choudhury to make sales calls in locations where public transportation is not

13   accessible. Choudhury filed timely objections asserting statutory exemptions for the 1995

14   Mercedes and is willing to waive any exemption in the HDFC Bank funds to obtain the car.

15   Accordingly, he is respectfully requesting that he be permitted to apply the personal

16   property and automobile exemptions to the 1995 Mercedes, in exchange for which he will

17   waive any exemption in the HDFC Bank funds so that those funds ($4,017.65) can be paid

18   to Ms. Grewal. The Choudhurys also respectfully request that this Court consider the

19   allegedly improper circumstances in which Karen Choudhury's First Republic assets were

20   seized and issue an order that Karen Choudhury's is entitled to a return of the First

21   Republic funds of $2,078.69.

22       **CREDITOR'S RESPONSE**

23       Debtor may not "reassert" his claim of exemption for the 1995 Mercedes. Judge

24   Breyer already ruled that his objections to levy on the Mercedes is not supported by

25   evidence. (2/20/09 Order to Cause , at p. 6:-25-28) Judge Breyer at the Show Cause

26   hearing already overruled all of Choudhury's objections to levy. (*Id.* at 8:10-11). Choudhury

27   also attempts to assert a claim on the Mercedes in exchange for not asserting a claim on

28

United States District Court

For the Northern District of California

1   the money from the bank in New Delhi, India - $4,017.65. He bases this trade-off on his

2   assertion that he is domiciled in Illinois and that Illinois law supports this claim. Grewal

3   disputes his claim of Illinois domicile, since he was born in India, is a citizen of Canada, and

4   last year applied for a permit to reside in Switzerland. Domicile is determined by where one

5   intends to stay. "Residence" in Switzerland implies staying in Switzerland.

6       Choudhury's claim of domicile in Illinois  is highly questionable and he should not be

7   able to play hide-the-asset by claiming whatever domicile is most convenient. His wife may

8   have an apartment in Chicago, but that does not necessarily determine where he intends to

9   stay. His claim that he needs the Mercedes to make sales calls, or otherwise he is going to

10  be on the bus  is laughable. Where is he getting the money to pay all these high-priced

11  attorneys who keep appearing on his behalf?

12      Grewal says that if Choudhury wants to claim either the Mercedes or the monies,

13  she would prefer that he take the car and give her the monies. Grewal offers to accept

14  Choudhury's representation that the Mercedes is worth $5,850. She will give him the pink

15  slip in exchange for this amount in cash. Then he will have his car and will have paid down

16  the judgment by ths amount.

17  **Account at First Republic Bank, San Francisco**

18      On November 19, 2008, Grewal notified Karen Choudhury by serving a Notice of

19  Levy, that Grewal was levying on these assets. (Ex. D. to Grewal's Response) This Court

20  may decline to rule on this objection, since there is nothing in the Turnover Order about

21  these funds, so they are not properly the subject of objections to the Turnover Order.

22  Grewal obtained the $2,237.08 in this account by obtaining a writ of execution for "All

23  personal property in which Amit Choudhury, the judgment debtor, has any interest,

24  including the community property of Karen H. Choudhury. . ." The U.S. Marshall turned

25  over the funds to Grewal in mid-January 2009, by check in the amount of $2,237.08, and a

26  Memorandum of Garnishee, executed on October 16, 2008, by an officer of First Republic

27  Bank (Id. at Ex. E). In its Memorandum the Bank is required to describe "any claims and

28  rights of other persons to the property or obligation levied upon that are known to you and

the names and addresses of the other persons." The bank responded, "Pran Kumar

1  Choudhury," but made no mention of Karen Choudhury or any interest Karen Choudhury

2  may have had in these monies. (*Id.*) It was revealed at the hearing that Pran Kumar

3  Choudhury was Amit Choudhury's father, now deceased.

4        California law provides a "quick and effective procedure" to determine whether a

5  third person, such as Karen Choudhury, has "rights in property levied upon by a judgment

6  creditor" - third-party claims and related procedures. Cal. Code of Civ. Pro. §720.010 et

7  seq.) If Karen Choudhury had believed she had an interest in the funds that First Republic

8  Bank turned over to the Marshall, then she could have filed a third-party claim asserting

9  that interest, but she didn't. Had she filed such a claim, the Marshall would not have

10  delivered the funds to Grewal. Now that the funds have been turned over, any claim if she

11  had one, has been extinguished. Cal. Code of Civil pro. §720.101.

12  **CONCLUSION**

13        Judge Breyer rejected all Choudhury's objections that he had asserted at the time of

14  the Show Cause hearing, including the claim of exemption for the Mercedes, and arguably

15  including Karen Choudhury's claim. In any event, Karen Choudhury fails to show that she

16  has filed a valid and timely third party claim pursuant to the California Code of Civil

17  Procedure. Her Declaration filed before the Show Cause hearing supports that Judge

18  Breyer already rejected her claim, since he ruled that none of Choudhury's objections were

19  valid, since they were not supported by evidence. That's the law of the case. This Court

20  accordingly overrules both objections to the Turnover Order (in fact the money in the Old

21  Republic Bank account was not part of the Turnover Order so not even properly part of

22  Choudhury's motion) and suggests that Choudhury accept Grewal's offer to give him the

23  pink slip to the car in exchange for its cash value, and thereby demonstrate his good faith

24  intent to pay this Judgment

25        IT IS SO ORDERED.

26   DATED: March 22,  2010

27

28                                _____
                                   JAMES LARSON
                             U.S. Magistrate Judge

United States District Court

For the Northern District of California

G:\JLALL\CASES\CIV-REF\07-4218\Order Deny 356.wpd